IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| BUFFETS RESTAURANTS HOLDINGS, INC., et al., | : | Case No. 12-10237 (MFW) |
| | : | |
| | : | |
| Debtors. | : | |
| | : | **Objections Due: March 8, 2012** |
| | : | **Hearing Date: March 15, 2012 at 11:00 a.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION FOR ORDER AUTHORIZING PAYMENTS UNDER KEY EMPLOYEE INCENTIVE PLAN**

In support of her objection (the "Objection") to the Motion for Order Authorizing Payments Under Key Employee Incentive Plan (the "Motion"), Roberta A. DeAngelis, the United States Trustee for Region 3 ("United States Trustee"), by and through her undersigned counsel, states as follows:

1. This Court has jurisdiction to hear the above-referenced Objection.

2. Pursuant to 28 U.S.C. § 586, the United States Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the United States Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

3. Pursuant to 11 U.S.C. § 307, the United States Trustee has standing to be heard with regard to the above-referenced Objection.

## BACKGROUND

4. On January 18, 2012 (the "Petition Date"), the Debtors[1] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

5. On January 27, 2012, the U.S. Trustee appointed a statutory committee of unsecured creditors in these cases.

6. Pursuant to an order entered on February 14, 2012, the Debtors retained Moelis & Company LLC ("Moelis") as their financial advisor and investment banker. In addition to a monthly fee of $150,000, in the event of a sale of the Debtors, Moelis is entitled to a Sale Transaction Fee of 1.1% of Sale Transaction Value up to and including $325,000,000, plus 4% of Sale Transaction Value in excess of $325,000,000.

7. On February 23, 2012, the Debtors filed the Motion, seeking approval of a key employee incentive plan (the "KEIP") for seventeen executives.

8. The Motion seeks approval of KEIP that is comprised of two tiers. Tier 1 is based on the Debtors achieving specific milestones related to the Debtors' overall financial and operations performance. Tier 2 is based on a sale of the Debtors. A bonus is payable regardless of the amount realized from the sale. The total amount payable under Tier 1 is approximately $2.3 million and the total amount payable under Tier 2 is approximately $2.6 million.[2] The Motion indicates that bonus amounts paid under Tier 2 would be "net" of any amounts paid under Tier 1.

---

1/ All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

2/ The Executive Vice President of Marketing is not eligible for the Tier 1 bonus.

## SUMMARY OF ARGUMENT

9. The U.S. Trustee objects to the Motion on the grounds that the Debtors have not satisfied their burden under 11 U.S.C. §§ 503(b)(1)(A) and 503(c) to demonstrate, *inter alia*, that (i) payments under Tier 2 of the KEIP are not retention payments to insiders, (ii) Tier 2 of the KEIP is justified by the facts and circumstances of these cases, and (iii) Tier 2 of the KEIP represents the "actual, necessary cost of preserving the estate[s]." Second, the U.S. Trustee objects to the Debtors' assertions that section 503(c)(3) simply subjects the KEIP to review under the business judgment rule. The U.S. Trustee does not object to the Motion to the extent that it seeks approval of Tier 1 of the KEIP.

## GROUNDS/BASIS FOR RELIEF

Tier 2 of the Proposed KEIP Violates Section 503(c)(1) of the Bankruptcy Code

10. The Debtors state that they believe that section 503(c)(1) is not applicable to the KEIP as the KEIP is a performance based incentive plan. However, the Debtors have not demonstrated that Tier 2 of the proposed KEIP, which provides for bonuses to be payable upon closing of a sale of the Debtors, is appropriate under section 503(c) of the Bankruptcy Code. The terms of Tier 2 of the KEIP do not establish any minimum trigger for the payment of the proposed bonus. As a result, it appears to have retention as its primary purpose. The Debtors have essentially guaranteed a payment to the executives based on any amount received as proceeds from a sale of the Debtors.

11. The Motion indicates that no bonus will be payable unless a sale of the Debtors closes. However, a bonus will be payable upon consummation of any sale of the Debtors, regardless of sale price, meaning that the executives are guaranteed a bonus of ranging from 20% -120% of their salary (net of amounts received under Tier 1) no matter what the ultimate sale price is.

12. The Motion does not contain adequate information to support the Debtors' assertion that Tier 2 of the KEIP is performance based. In particular, the Motion does not disclose performance objectives that the executives must meet with respect to Tier 2 or whether such objectives require them to perform at an objectively higher level than in the past. The Motion also does not disclose any information about the sales and marketing process, such as how long and what efforts have been made to market the Debtors for sale.

13. Although the Motion characterizes the bonus payments as an "Incentive Plan," Tier 2 is primarily structured as a retention plan, with only a limited incentive component. Under section 503(c)(1) of the Bankruptcy Code, the Debtors must, "based on evidence in the record," demonstrate all three of the required elements set forth in section 503(c)(1). Section 503(c)(1), provides, in pertinent part, as follows:

> (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—
>
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
> (B) the services provided by the person are essential to the survival of the business; and
> (C) either—
>
> > (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
> > (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of

such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

14. The terms of Tier 2 of the KEIP suggests that it is not intended to induce a particular level of performance by the executives, but instead to induce them to remain employed until consummation of a sale. If the only incentive created by Tier 2 is to induce the executives to remain with the Debtors until a sale is consummated, approval of Tier 2 must be denied because it does not comply with section 503(c)(1) of the Bankruptcy Code.

15. The lack of any benchmarks for performance under Tier 2 of the KEIP makes it impossible to determine whether the efforts of the executives will result in a higher sale price. It cannot be a true incentive plan unless there is some objective performance benchmark to meet, such as amount and/or timing of a sale. Tier 2 as currently contemplated does not provide any incentive to achieve a higher sales price, as the Tier 2 bonus is payable upon any sale of the Debtors, regardless of price. By contrast, Moelis, the Debtors' financial advisors, have retention terms that provide for a Sale Transaction Fee of 4% of any amount over $325 million, plus 1.1% of amounts up to $325 million.

16. The lack of performance benchmarks suggests that the Tier 2 of the KEIP is intended as a disguised retention bonus instead of a true incentive plan. There are no goals to meet under Tier 2 other than to achieve a sale. Because there is no minimum sales target or increased percentages based on a higher sales price, the executives will be guaranteed payment of a bonus so long as a sale closes.

<u>Bankruptcy Code §503(c)(3) does not Incorporate the Business Judgment Standard</u>

17. With respect to Bankruptcy Code section 503(c)(3), the Motion asserts that the

business judgment rule is the proper standard for determining whether the bonus payments, to be made outside of the ordinary course of business, are justified by the facts and circumstances of the case. In this regard, the Motion fails to accord proper meaning to the restrictions imposed by section 503(c)(3). Section 503(c) states that "notwithstanding subsection (b), there shall neither be allowed nor paid--" In enacting section 503(c), Congress clarified and specifically limited what might otherwise be allowed as an administrative expense under section 503(b).

18. Section 503(b) of the Bankruptcy Code provides that:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate including—
> (i) wages, salaries, and commissions for services rendered after the commencement of the case;

Administrative expenses may not be allowed unless they are actual and necessary to preserve the estate. *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D.Del. 2001). The Debtors must demonstrate that the bonus payments are necessary to preserve the value of the estate and "justified by the facts and circumstances of the case."

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion as written and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ROBERTA A. DEANGELIS**
**UNITED STATES TRUSTEE**

**By:** /s/ Jane M. Leamy
Jane M. Leamy (#4113)
Trial Attorney
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)

Dated: March 8, 2012