**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BUFFETS RESTAURANTS HOLDINGS, INC., a | ) Case No. 12-10237 (MFW) |
| Delaware Corporation, *et al.*,[1] | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) |

**FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER UNDER SECTION 1129 OF
THE BANKRUPTCY CODE AND RULE 3020 OF THE BANKRUPTCY
RULES CONFIRMING DEBTORS' SECOND AMENDED JOINT PLAN
OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**RECITALS**

A.　　On January 18, 2012, Buffets Restaurants Holdings, Inc. ("BRHI"), Buffets Holdings, Inc. ("Buffets Holdings"), Buffets, Inc. ("Buffets"), HomeTown Buffet, Inc., OCB Purchasing Co., OCB Restaurant Company, LLC, Buffets Franchise Holdings, LLC, Buffets Leasing Company, LLC, Ryan's Restaurant Group, Inc., Ryan's Restaurant Leasing Company, LLC, HomeTown Leasing Company, LLC, OCB Leasing Company, LLC, Fire Mountain Restaurants, LLC, Fire Mountain Leasing Company, LLC, Tahoe Joe's, Inc. ("Tahoe Joe's") and Tahoe Joe's Leasing Company, LLC (each a "Debtor," and collectively, the "Debtors") filed their Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as amended and modified, the "Plan") [Docket No. 26], and the Disclosure Statement for Debtors' Joint Plan of

---

[1]　　The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Buffets Restaurants Holdings, Inc. (9569), Buffets Holdings, Inc. (4018), Buffets, Inc. (2294), HomeTown Buffet, Inc. (3002), OCB Purchasing Co. (7610), OCB Restaurant Company, LLC (7607), Buffets Franchise Holdings, LLC (8749), Buffets Leasing Company, LLC (8138), Ryan's Restaurant Group, Inc., (7895), Ryan's Restaurant Leasing Company, LLC (7405), HomeTown Leasing Company, LLC (8142), OCB Leasing Company, LLC (8147), Fire Mountain Restaurants, LLC (8003), Fire Mountain Leasing Company, LLC (7452), Tahoe Joe's, Inc. (7129) and Tahoe Joe's Leasing Company, LLC (8145). The address for all of the Debtors is 1020 Discovery Road, Suite 100, Eagan, MN 55121.

01:12233545.1

Reorganization Under Chapter 11 of the Bankruptcy Code (as amended and modified, the "Disclosure Statement") [Docket No. 27].[2]

B.      On March 19, 2012, the Debtors filed the Notice of Hearing to Consider the Adequacy of Disclosure Statement (the "Disclosure Statement Notice") [Docket No. 388]. The Disclosure Statement Notice was served by first class mail or hand delivery on the Office of the United States Trustee for the District of Delaware and all of the Debtors' Creditors and Equity Interest holders. An affidavit confirming service was filed with the Court on March 27, 2012 [Docket No. 406].

C.      On April 13, 2012, the Debtors filed the Motion for Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving the Form and Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots; and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to (A) Confirmation of the Plan, and (B) Proposed Cure Amounts Related to Contracts and Leases Assumed Under the Plan; and (IV) Granting Related Relief (the "Solicitation Procedures Motion") [Docket No. 468]. The Solicitation Procedures Motion was

---

[2]   Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan, a copy of which is attached hereto as Exhibit A, or, if not defined in the Plan, in the Memorandum of Law in Support of Confirmation of Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Memorandum"). Any capitalized term used in the Plan or in the Confirmation Memorandum that is not defined in the Plan, the Confirmation Memorandum, or this Confirmation Order, but that is used in title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), or in the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Citations to the Bankruptcy Code and Bankruptcy Rules are to the sections and rules as numbered and in effect on the Petition Date or as otherwise applicable to these Chapter 11 Cases.

2

served by first class mail or hand delivery to the persons listed on the service list attached to the affidavit confirming service, filed with the Court on April 20, 2012 [Docket No. 486].

D. On April 30, 2012, the Debtors filed their first amended Plan and Disclosure Statement for the first amended Plan [Docket Nos. 512 and 513].

E. On April 30, 2012, this Court entered its Order approving the Solicitation Procedures Motion (the "Solicitation Procedures Order") [Docket No. 511].

F. As required by the Solicitation Procedures Order, the Debtors, through their noticing and voting agent, Epiq Bankruptcy Solutions, LLC ("Epiq"), timely mailed to all holders of Claims entitled to vote on the Plan solicitation packages (the "Solicitation Packages") containing copies of (a) written notice of (i) the Court's approval of the Disclosure Statement for the Plan, (ii) the deadline for voting on the Plan, (iii) the date of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), and (iv) the deadline and procedures for filing objections to confirmation of Plan; (b) the Plan, (c) the Disclosure Statement; (d) Ballots, as applicable, to vote to accept or reject the Plan and a ballot return envelope to be used to return a completed Ballot; and (e) a letter from the Creditors Committee in support of the Plan (the "Plan Support Letter"). As further required by the Solicitation Procedures Order, the Debtors, through Epiq, timely mailed to all Claim or Equity Interest holders not entitled to vote on the Plan written notice of (i) the Court's approval of the Disclosure Statement, (ii) a summary of the terms of the Plan, (iii) the date of the Confirmation Hearing, and (iv) the deadline and procedures for filing objections to confirmation of the Plan (the "Non-Voting Party Notice"). In addition, notice of the Confirmation Hearing was published in the Wall Street Journal on May 10, 2012. Affidavits of service and publication confirming such actual and publication notice were filed with the Court on May 14, 2012 and June 20, 2012, respectively. [Docket Nos. 560 and 716].

01:12233545.1

G.    The notice issued to creditors, which was approved by the Solicitation Procedures Order, provides in part that:

all Persons who (a) directly or indirectly, have held, hold, or may hold Claims, (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Reorganized Debtors and the Released Parties not to (y) sue or otherwise seek recovery from any of the Reorganized Debtors or any Released Party on account of any Claim in any way related to the Debtors or their business and affairs, including but not limited to any Claim based upon tort, breach of contract, violations of federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (z) assert against any of the Reorganized Debtors or any Released Party any claim, obligation, right, cause of action or liability that any holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, provided, however, (i) none of the Released Parties shall be released from any claim primarily based on any act or omission that constitutes gross negligence or willful misconduct as determined by a court of competent jurisdiction, (ii) the foregoing release shall not apply to obligations arising under the Plan, and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan.

H.    In accordance with the Solicitation Procedures Order, the Ballots allowed holders of Claims in Classes 2, 4 and 5 to opt out of the releases of the Reorganized Debtors and Released Parties set forth in Article VIII.K of the Plan by checking the appropriate box on the Ballots. The Ballots included the following statements:

OPTIONAL RELEASE ELECTION. Check this box if you elect not to grant the releases contained in Article VIII. K. of the Plan and elect not to consent to the related injunction. Election to withhold consent is at your option. If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Article VIII. K. of the Plan and the related injunction to the fullest extent permitted by applicable law.

4

I.      As further required by the Solicitation Procedures Order, the Debtors, through Epiq, on May 7, 2012 mailed the Notice of (I) Possible Assumption of Executory Contracts and Unexpired Leases (II) Fixing of Cure Amounts and (III) Deadline to Object Thereto (the "Cure Notice") [Docket No. 543], and the Notice of (I) Possible Assumption of Unexpired Leases of Non-Residential Real Property and Related Agreements (II) Fixing of Cure Amounts and (III) Deadline to Object Thereto (the "Unexpired Leases Notice") [Docket No. 542]. An affidavit of service confirming mailing of the Cure Notice and the Unexpired Leases Notice was filed with the Court on May 17, 2012 [Docket No. 580]. Numerous objections to the Cure Notice and Unexpired Leases Notice were filed within the time prescribed by the Solicitation Procedures Order, each of which has been consensually resolved with the objecting party.

J.      Pursuant to the Solicitation Procedures Order, the deadline for filing objections to the Plan and the voting deadline for holders of Claims entitled to vote on the Plan was June 4, 2012.

K.      On June 25, 2012, the Debtors filed the Declaration of Christina Pullo on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 724] attesting to, and certifying the method and results of, the ballot tabulation for holders of Claims in Classes 2, 4 and 5 voting to accept or reject the Plan (the "Voting Report").

01:12233545.1

L.    The voting results, as certified in the Voting Report, are reflected in the chart below:

| Class | Number of Creditors Voting | | Amount of Claims Held by Voting Creditors | Amount of Claims Voted | | Percentage of Voting Claims | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Accept | Reject | | Accept | Reject | % $ Accept | %$ Reject | % # Accept | % # Reject |
| 2 First Lien Pre-Petition Secured Credit Facility Claims | 42 | 0 | $185,705,911.01 | $185,705,911.01 | $0.00 | 100% | 0% | 100% | 0% |
| 4 Second Lien Pre-Petition Secured Credit Facility Lenders holding Claims | 18 | 0 | $1,563,551.38 | $1,563,551.38 | $0 | 100% | 0% | 100% | 0% |
| 5 General Unsecured Claims | 645 | 39 | $18,413,615.99 | $15,066,162.99 | $3,347,453.07 | 81.82% | 18.18% | 94.30% | 5.70% |

M.    On June 20, 2012, the Debtors filed the Plan Supplement [Docket No. 720] which included, as exhibits, substantially final forms of the following documents:

Exhibit A:  Exit Facility Term Sheet;

Exhibit B:  Shareholders Agreement Term Sheet;

Exhibit C:  Amendments to Certificates of Incorporation, Operating Agreements and Bylaws;

Exhibit D:  Schedule of Additional Rejected Contracts and Leases;

Exhibit E:  Schedule of Additional Assumed Leases;

Exhibit F:  Excluded Avoidance Actions;

Exhibit G:  Alternative Dispute Resolution Procedures;

Exhibit H:  Litigation Trust Agreement;

6

Exhibit I: Identity of Litigation Trustee and Trust Advisory Board Members

N.      The Plan Supplement was amended on June 22, 2012 [Docket No. 722] and on June 27, 2012 [Docket Nos. 741 and 742 ].

O.      The Debtors received a total of eight objections to confirmation of the Plan from: (i) The Macerich Company, Watt Management Company, and the Prudential Insurance Company of America [Docket No. 592]; (ii) Alexander Mickles (the "Mickles Objection") [Docket No. 633]; (iii) Commonwealth of Pennsylvania Department of Revenue [Docket No. 648]; (iv) Tennessee Department of Revenue [Docket No. 654]; (v) Leo Kahn as Trustee of Seekonk Square Realty Trust [Docket No. 655]; (vi) Los Angeles County Treasurer [Docket No. 656]; (vii) the Office of the United States Trustee (the "U.S. Trustee") [Docket No. 657]; and (viii) Realty Income Corp., DDR Corp., Labrador Group, LLC, Weingarten Realty Investors, and STRS Ohio CA Real Estate Investments II, LLC [informal response] (collectively, the "Plan Objections"). Each of the Plan Objections, with the exception of Mickles Objection, has been resolved consensually by the Debtors agreeing to insert language in this Order or by modifying the Plan, addressing such objecting parties' concerns. The only remaining objection is the Mickles Objection which, for the reasons set forth in the Debtors' Confirmation Memorandum and on the record at the Confirmation Hearing, are overruled.

P.      In addition to the Voting Report, on June 25, 2012, the Debtors filed the Confirmation Memorandum [Docket No. 725], and on June 25, 2012, the Debtors filed (i) the Declaration of A. Keith Wall (the "Wall Declaration") in support of confirmation of the Plan [Docket No 726].

Q.      On June 26, 2012, the Debtors also filed their second amended Plan [Docket No. 733].

R.      The Confirmation Hearing was held on June 27, 2012 at 1:00 p.m.

7

01:12233545.1

NOW, THEREFORE, based upon the Court's review of the Confirmation Memorandum, the Wall Declaration, the Voting Report and upon (i) all of the evidence proffered or adduced and arguments of counsel made at the Confirmation Hearing and (ii) the entire record of these Chapter 11 Cases, and after due deliberation thereon and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

## IT IS HEREBY FOUND AND DETERMINED THAT:

1. <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408 and 1409)</u>. The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2. <u>Judicial Notice</u>. This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the Chapter 11 Cases.

3. <u>Burden of Proof</u>. The Debtors, as proponents of the Plan, have the burden of proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

---

[3]   These Findings of Fact and Conclusions of Law constitute the Bankruptcy Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is referred to as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is referred to as a finding of fact.

8

4.      <u>Transmittal and Mailing of Materials; Notice</u>. The Solicitation Packages and Non-Voting Party Notice were transmitted and served in compliance with the Solicitation Procedures Order and the Bankruptcy Rules, and such transmittal and service was adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other dates and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and Solicitation Procedures Order, and no other or further notice is or shall be required.

5.      <u>Voting Results</u>. As described more fully in the Voting Report, each Impaired Class that was entitled to vote to accept or reject the Plan voted to accept the Plan. <u>See</u> Voting Report, Exhibit A.

6.      <u>Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)      <u>Proper Classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Claims (including Fee Claims), Priority Tax Claims, and DIP Financing Claims, which need not be classified, the Plan designates six (6) Classes of Claims and Equity Interests. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in such Class. Valid business, factual and/or legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and, therefore, the Plan does not unfairly discriminate among holders of Claims or Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article IV of the Plan specifies that Classes 1 and 3 are not Impaired, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)    <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article IV of the Plan designates Classes 2, 4, 5 and 6 as Impaired and specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

01:12233545.1

(iv)    Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in a particular Class unless the holder of a particular Claim or Equity Interest in such Class has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)    Implementation of Plan (11 U.S.C. § 1123(a)(5)). In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan, including Article VII of the Plan, provides adequate and proper means for its implementation, including, without limitation: (1) the continued existence of the Debtors under Article VIII.A of the Plan, except as otherwise provided under the Plan, (2) the adoption of the amendments to the certificates of incorporation, charters and by-laws of Reorganized BRHI and each Reorganized Debtor, and such other amended and restated governing documents as set forth in the Plan Supplement that will govern the Reorganized Debtors, as the case may be, as provided in Article V.A of the Plan, (3) the entry by the Debtors into the Exit Facility, (4) the issuance of the New BRHI Common Stock and New Subsidiary Equity Interests, as provided in Article V.A.3 of the Plan, and (5) the establishment of the Litigation Trust under Article VII.D.

(vi)    Charter Provisions (11 U.S.C. § 1123(a)(6)). Pursuant to Article V.A of the Plan and the documents included in the Plan Supplement, the amended certificates of incorporation of BRHI and each Reorganized Debtor prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code and provide for an appropriate distribution of voting power, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(vii)    Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)). Pursuant to Article V.B of the Plan, the identities, affiliations and the amount of compensation of all individuals proposed to serve as the initial board members and initial officers of each Reorganized Debtor as of the Effective Date, will be disclosed at or prior to the Confirmation Hearing. The officers of the Reorganized Debtors shall be substantially the same as the officers of the Debtors on the Effective Date. The initial boards of directors of Reorganized BRHI, Buffets and Buffets Holdings shall be seven-member boards comprised of: (i) six directors jointly designated by the Debtors and the Ad Hoc First Lien Committee; and (ii) one other director who shall be the Chief Executive Officer of Buffets. The initial boards of directors of the Reorganized Subsidiaries, other than Buffets and Buffets Holdings, shall be comprised of three members, each of whom also shall be a member of the New Board. The foregoing provisions of the Plan for the selection of directors and officers are consistent with the interests of creditors and equity holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

01:12233545.1

(viii)    Rule 3016(a) of the Bankruptcy Rules. The Plan is dated and identifies the entities submitting it, thereby satisfying Rule 3016(a) of the Bankruptcy Rules.

7.    Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(i)    the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

(ii)    the Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Orders of the Court; and

(iii)    the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Solicitation Packages and in soliciting and tabulating votes on the Plan.

8.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors, the Committee, the DIP Lenders, the First Lien Pre-Petition Secured Credit Facility Lenders, the Ad Hoc First Lien Committee, the DIP Administrative Agent, the First Lien Pre-Petition Administrative Agent, and their respective counsel and advisors as applicable, participated in good faith in negotiating, at arms' length, the Plan and the contracts, instruments, releases, agreements and documents related to or necessary to implement, effectuate and consummate the Plan. Each of the Debtors, the Committee, the DIP Lenders, the First Lien Pre-Petition Secured Credit Facility Lenders, the Ad Hoc First Lien Committee, the DIP Administrative Agent, the First Lien Pre-Petition Administrative Agent, and their respective counsel and advisors as applicable also participated in good faith in each of the actions taken to bring about, and in satisfying each of the conditions precedent to, confirmation and consummation of the Plan, except to the extent only the participation of certain parties was

11

provided for in the selection of directors of the Reorganized Debtors. In so determining, the Court has examined, among other things, the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the record of the Confirmation Hearing, the formulation of the Plan and all related pleadings, exhibits, statements and comments regarding confirmation of the Plan and the approval of the Plan by the creditors that voted on the Plan. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purposes of effecting a reorganization of the Debtors.

9.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Except for payments to be paid under Article VIII.I of the Plan (governing payment of Administrative Claims incurred after the Effective Date), the fees and expenses of the Ad Hoc First Lien Committee Advisors, and the professionals of the DIP Administrative Agent and the First Lien Pre-Petition Administrative Agent, any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

10.      Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The Debtors disclosed, at or prior to the Confirmation Hearing, the identities and affiliations of the individuals initially proposed to serve, after confirmation of the Plan, as directors or officers of Reorganized Debtors, as well as the compensation to be paid to any insiders that will be employed or retained, to the extent known, on or after the Effective Date. The appointment of such individuals to such positions is consistent with the interests of creditors, Equity Interest holders, and public policy, thereby satisfying section 1129(a)(5) of the Bankruptcy Code.

12

01:12233545.1

11.     No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtors' businesses are not subject to rate regulation by any governmental regulatory commission; therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

12.     Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The evidence proffered or adduced at the Confirmation Hearing and the Wall Declaration, (i) are persuasive and credible, (ii) have not been controverted by other evidence or challenged, and (iii) establishes that each holder of a Claim or Equity Interest in an Impaired Class either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

13.     Acceptance By the Requisite Classes of Creditors and Equity Interest Holders (11 U.S.C.§ 1129(a)(8)). Classes 2, 4 and 5 are the only Impaired Classes entitled to vote on the Plan, and each such Class voted in sufficient number and amount to accept the Plan. Classes 1 and 3 are unimpaired under the Plan and, therefore, are deemed to have accepted the Plan. See Plan Article IV. The Plan provides that holders of Equity Interests in Class 6 will not receive any distribution or retain any property on account of such Equity Interests, and this Class is therefore deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (the "Deemed Rejecting Class"). Notwithstanding that section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to all Classes of Claims and Equity Interests, the plan may be confirmed over the nonacceptance of the Deemed Rejecting Class pursuant to Section 1129(b) of the Bankruptcy Code.

14.     Treatment of Priority Claims (11 U.S.C. § 1129(a)(9)). The Plan's treatment of Allowed Administrative Claims (including Fee Claims), Allowed Priority Tax

13

Claims, DIP Financing Claims, and Other Priority Claims satisfies the requirements of sections 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code.

15.     Acceptance By at Least One Impaired Class (11 U.S.C. § 1129(a)(10)). Classes 2, 4 and 5, each of which is Impaired under the Plan, have voted to accept the Plan in requisite numbers and amounts, without the need to include any acceptance of the Plan by any insider.  Consequently, section 1129(a)(10) of the Bankruptcy Code is satisfied.

16.     Feasibility (11 U.S.C. § 1129(a)(11)). The Debtors have established, by a preponderance of the evidence, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors.  To satisfy their burden under section 1129(a)(11) of the Bankruptcy Code, the Debtors prepared and included as Exhibit C to the Disclosure Statement projections of their financial performance for reporting periods ending at year-end 2017.  These financial projections along with the Wall Declaration support the finding that the Debtors will have adequate capital to meet their obligations arising under the Plan or otherwise.  The Court finds that the financial projections, the Wall Declaration and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence or challenged, and (iii) establish that the Plan is feasible, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

17.     Payment of Certain Fees (11 U.S.C. § 1129(a)(12)). All fees payable on or before the Effective Date under 28 U.S.C. § 1930 either have been paid or will be paid on the Effective Date pursuant to Article X.A of the Plan.  Moreover, each of the Reorganized Debtors will be responsible for paying post-Effective Date quarterly fees under 28 U.S.C. § 1930(a)(6). Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

01:12233545.1

18.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Article XII of the Plan provides that as of and subject to the Effective Date, all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, including agreements and programs subject to section 1114 of the Bankruptcy Code, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, incentive plans, and life, accidental death, and dismemberment insurance plans, but excluding any employment and severance agreements, plans or policies, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and the Debtors' obligations under such agreements and programs shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtors' rights under applicable non bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans specifically rejected pursuant to the Plan, including on the Schedule of Additional Rejected Contracts and Leases (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, contracts, or programs. Thus, the Plan satisfies each of the requirements of section 1129(a)(13) of the Bankruptcy Code.

19.    Classification of Claims and Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. §1129(b)). The classification and treatment of Claims in the Plan is proper pursuant to section 1122 of the Bankruptcy Code and does not discriminate unfairly pursuant to section 1129(b)(1) of the Bankruptcy Code. Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan, if all of the requirements of section 1129(a) of the

15

Bankruptcy Code other than section 1129(a)(8) have been met. All Impaired Classes, other than the Deemed Rejecting Class, voted to accept the Plan.

20. The requirements of 1129(b)(1) and (b)(2) of the Bankruptcy Code are satisfied because no holders of Equity Interests junior to the holders of Equity Interests in the Deemed Rejecting Class will receive distributions under the Plan on account of such Equity Interests, and no holder of a Claim or Equity Interest in a Class senior to the holders of Equity Interests in the Deemed Rejecting Class shall receive more than full recovery on account of its Allowed Claim or Equity Interest. Accordingly, the requirements of section 1129(b) of the Bankruptcy Code are satisfied with respect to the Deemed Rejecting Class, and the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to such Class. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129(b) of the Bankruptcy Code.

21. <u>Only One Plan (11 U.S.C. §1129(c)).</u> Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases. As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

22. <u>Purpose of the Plan (11 U.S.C. §1129(d)).</u> The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, as amended, and there has been no filing by any governmental unit asserting any such attempted avoidance.

23. <u>Good Faith Solicitation and Participation (11 U.S.C. § 1125(e)).</u> Based upon the record before the Court, the Debtors and the Released Parties, and their respective counsel, advisors and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the provisions of the Bankruptcy Code and Bankruptcy Rules in connection with the solicitation of acceptances of the Plan and the offer, issuance, sale

16

or purchase of securities in connection with the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunctive and exculpatory provisions set forth in Articles VIII.F and VIII.L of the Plan.

24. <u>Releases by the Debtors</u>. In connection with the Releases by the Debtors contained in Article VIII.J of the Plan, the evidence proffered or adduced at the Confirmation Hearing, and the Wall Declaration satisfy the Debtors' burden of proof in support of such releases and establish that (i) neither the Debtors nor any other party in interest has identified any causes of action against any of the Released Parties, and (ii) such releases are an essential component of the consensual Plan negotiated among all of the Debtors' key constituencies. The Releases by the Debtors set forth in the Plan constitute good faith compromises and settlements of the matters thereby and are consensual. Such compromises and settlements are made in exchange for adequate consideration and are in the best interests of holders of Claims, are fair, necessary, equitable, and reasonable, and are integral elements of the resolution of these Chapter 11 Cases in accordance with the Plan. The Releases by the Debtors are: (i) within the jurisdiction of this Court to authorize under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated into the Plan; (iv) conferring material benefit on, and is in the best interests of, the Debtors, their estates and their creditors; (v) important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and (vi) consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

01:12233545.1

25.     Non-Debtor Releases.  In connection with the releases by non-debtors of the Released Parties (the "Non-Debtor Releases") contained in Article VIII.K. of the Plan, based on the evidence adduced at the Confirmation Hearing and the Wall Declaration, the Court finds:

(i)     The Non-Debtor Releases shall not be binding on any party electing not to accept the Non-Debtor Releases to the extent affirmatively elected on such party's ballot as identified in the Voting Report filed with this Court.  Nothing herein shall be construed to create or revive any claim or right of action against a Released Party that has expired or does not otherwise exist under applicable non-bankruptcy law.

(ii)     Any holder of a Claim that voted to accept the Plan and did not mark their Ballot to indicate their refusal to grant the Non-Debtor Releases has affirmatively agreed to be bound by the Non-Debtor Releases.

(iii)     In addition to the foregoing, the Non-Debtor Releases are appropriate in these Chapter 11 Cases because they are fair and reasonable to all parties in interest, essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, and integral elements of the transactions incorporated in the Plan that are important to the overall objectives of the Plan.

26.     Satisfaction of Confirmation Requirements.  The Plan satisfies each of the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

27.     Retention of Jurisdiction.  This Court may properly retain jurisdiction over the matters set forth in Article IX of the Plan and herein.

28.     Substantive Consolidation.   Solely in connection with Distributions to be made to the holders of Allowed Claims, Article VI of the Plan provides for the substantive consolidation of the Estates of the Debtors into a single Estate for purposes of the Plan and the Distributions thereunder.  Based on the Confirmation Memorandum and the Wall Declaration and in the absence of any objections to such request, the Court finds that such deemed substantive consolidation of the Debtors' estates is justified and appropriate in these Chapter 11 Cases for purposes of the Plan and the Distributions thereunder.

18

## DECREES

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:**

29.      <u>Confirmation</u>. The Plan satisfies each of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. Therefore, the Plan is approved and confirmed under section 1129 of the Bankruptcy Code and all objections thereto not previously resolved or withdrawn are hereby overruled.

30.      <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

31.      <u>Plan Classification Controlling</u>. The classification of Claims and Equity Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the holders of Claims entitled to vote on the Plan (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes, and (iii) shall not be binding on the Debtors, their estates, or the Reorganized Debtors.

32.      <u>Binding Effect</u>. Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and this Order shall be binding on (i) the Debtors, (ii) the Reorganized Debtors, (iii) all holders of Claims against and Equity Interests in the Debtors, whether or not Impaired under the Plan and whether

19

or not, if Impaired, such holders accepted the Plan, and (iv) each person acquiring property under the Plan.

33.     Vesting of Assets.  Pursuant to Article VIII.D of the Plan, on the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors shall be vested with all of the property of the Estates free and clear of all Claims, Liens, encumbrances, charges and other interests of creditors and equity security holders, except as otherwise expressly provided in the Plan (including with respect to the Litigation Trust Cash Component and the Transferred Avoidance Actions) or any document entered into in connection with the transactions described in the Plan and this Order.

34.     Injunction.  Except as otherwise expressly provided in the Plan, this Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Reorganized Debtors or the Litigation Trustee, with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors or the Litigation Trustee on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors or the Litigation Trustee or against the property or interests in property of the Debtors or the Litigation Trustee on account of any such Claim, and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from the Debtors, the Reorganized Debtors or the Litigation Trustee or against the property or interests in property of the Debtors on account of any such Claim.  Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtors) or the Litigation Trustee and their respective properties and interests in

20

01:12233545.1

property. Such injunction shall not apply in respect of Ordinary Course Administrative Claims, the First Lien Pre-Petition Administrative Agent's and DIP Administrative Agent's fees and their professionals' fees and expenses, and the Ad Hoc First Lien Committee Fee Claims.

35.     Continuation of the Automatic Stay. All injunctions or stays, whether imposed by operation of law or by Order of this Court, provided for in the Chapter 11 Cases, pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise, that are in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. As of the Effective Date, the stay imposed pursuant to section 362(a) of the Bankruptcy Code shall be dissolved and of no further force and effect, subject to the injunction set forth herein and/or sections 524 and 1141 of the Bankruptcy Code, except that nothing herein shall bar the filing of documents in connection with the Exit Facility, or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan, the Exhibits to the Plan, the Plan Supplement Documents or this Order.

36.     Exit Facility. The terms of the Exit Facility disclosed in the Plan Supplement and on the record of the Confirmation Hearing are authorized and approved. The Reorganized Debtors are authorized and empowered to enter into and consummate definite documentation embodying the terms of the Exit Facility, and such other terms and provisions necessary to consummate the Exit Facility, without the need for further Board, shareholder or Court approval.

37.     Insurance. Pursuant to Article VIII.N of the Plan, the Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with the Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors (including, without limitation, its officers and current and former directors) or any other person or entity. The Debtors shall obtain tail

21

01:12233545.1

coverage under their existing directors and officers liability insurance policy covering their officers and current directors for any and all Claims brought against them, which coverage shall extend for a period of not less than six (6) years after the Effective Date.

38.     Pre-Funded Deductibles or Self-Insured Retentions.  Notwithstanding Section VII.G.3 or G.4 of the Plan, the Litigation Trust shall have no obligation to reimburse the ACE Companies or any other insurers for pre-funded deductibles or self-insured retentions, if any, and shall be responsible solely for making Distributions under the Plan pursuant to Section IV.E.1 (Class 5 - General Unsecured Claims); provided, however, that the Reorganized Debtors are liable to the ACE Companies for all amounts arising under the Ace Insurance Program including, but not limited to, all amounts within any applicable deductible amounts to the extent provided under the ACE Insurance Program.

39.     Provisions regarding USF&G Insurance Program. For the policy period beginning February 23, 2000, USF&G issued to the Debtors certain insurance policies (the "Policies"). The period of insurance coverage under the Policies terminated on February 23, 2004. The Debtors and USF&G entered into various Indemnity Agreements and Premium Loan Plan Agreements, (both as amended and together, "Indemnity Agreements", and together with the Policies, the "USF&G Insurance Program"), which prescribe the calculation and payment of the Debtors' ongoing premium and reimbursement obligations in connection with the Insurance Program.  USF&G is obligated to provide coverage and services to the Debtors subject to the terms and conditions set forth in the USF&G Insurance Program. For certain coverage provided under the Policies, the Debtors' payment obligations have been and remain calculated based on actual loss experience of the Debtors as insured, together with related fees and expenses as described in the USF&G Insurance Program.   Pursuant to (i) the USF&G Insurance Program, and (ii) the terms of that certain Stipulation Regarding Allowance and Treatment of the Claim of

22

01:12233545.1

United States Fidelity & Guaranty Company Concerning the Insurance Program, USF&G through Discover Property & Casualty Insurance Co. is the beneficiary of a certain letter of credit number TS-07005367, as amended, in the amount of $4,000,000, issued by Credit Suisse AG which backs the Debtors' obligations in connection with the USF&G Insurance Program (the "LC"). Upon entry of this Order, USF&G will consent to a reduction in the LC to $3,200,000.00. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the USF&G Insurance Program and the LC will remain in full force and effect, and the USF&G Insurance Program will remain the valid and binding obligation of the Debtors and USF&G, enforceable in accordance with its terms. In connection therewith, the Debtors are authorized to undertake and effect the transition of claims management services under the Insurance Program or otherwise from SRS/Sedgwick to Gallagher Bassett Services (the "TPA Transition"). The Debtors will continue to perform and pay any and all obligations under the Insurance Program, whether now existing or hereafter arising, including any fees and costs associated with the TPA Transition, in accordance with the terms thereof, and USF&G will continue to bill the Debtors for such obligations.

40.    Provisions Regarding Chartis. Notwithstanding anything to the contrary in the Plan, nothing in the Plan, Confirmation Order or otherwise will modify (i) Chartis' (as defined below) obligations or rights in connection with the Chartis Program (as defined below), including the right to pay and be reimbursed for amounts related to Insured Claims, Workers' Compensation Claims, or Automobile Liability Claims (the "Chartis Claims") to the extent there are such covered claims from dollar one within any deductible or self-insured retention under the Chartis Program, or (ii) Chartis' rights to assert Claims against the Debtors or Chartis' collateral in connection with the Chartis Program. Further, in connection therewith, the Debtors are authorized to undertake and effect the transition of claims management services for claims

23

managed by SRS/Sedgwick under the Chartis Program from SRS/Sedgwick to Gallagher Bassett Services (the "TPA Transition"), and the Debtor shall pay any fees and costs associated with the TPA Transition. Chartis' rights to setoff and arbitration, if any, and the Debtors' rights to object thereto will be preserved and will be unaffected by the Plan, Confirmation Order or otherwise. The "Chartis Program" is defined as any policy of insurance issued to any of the Debtors or its affiliates, or their predecessors by any subsidiary or affiliate of Chartis, Inc. (collectively, "Chartis"), as well as all rights and obligations (including but not limited to any deductible or self-insured retention obligations) that any of the Debtors or the Reorganized Debtors have under, or related to, any policy of insurance issued by Chartis whether as a named insured or as an additional insured

41.    Securities to be Issued Pursuant to the Plan. Reorganized BRHI shall issue the New BRHI Common Stock and, in the event Equity Interests in the Subsidiaries are being cancelled, the Reorganized Debtors other than Reorganized BRHI shall issue the New Subsidiary Equity Interests. Pursuant to section 1142(b) of the Bankruptcy Code and without further action by this Court or by the shareholders or directors of any of the Reorganized Debtors, the Reorganized Debtors are authorized to perform all tasks necessary and to execute and deliver all documents, agreements and instruments necessary or appropriate to issue the New BRHI Common Stock  and the Equity Interests in the Subsidiaries.

42.    Cancelation and Surrender of Existing Securities and Agreements. Notwithstanding any other provision of the Plan, as a condition precedent to receiving any distribution under the Plan, each holder of a promissory note, or other instrument or security evidencing a Claim (other than First Lien Pre-Petition Secured Credit Facility Claims, Second Lien Pre-Petition Secured Credit Facility Claims and DIP Financing Claims) must tender such promissory note or other instrument or security to the Reorganized Debtors or their designee or

24

must execute and deliver an affidavit of loss and furnish an indemnity or bond in substance and amount reasonably satisfactory to the Reorganized Debtors.

43.      Any holder of a Claim (other than First Lien Pre-Petition Secured Credit Facility Claims, Second Lien Pre-Petition Secured Credit Facility Claims and DIP Financing Claims) that fails to surrender such instrument or to provide the affidavit and indemnity or bond within six months of the date such holder would have been entitled to receive a distribution under the Plan shall be deemed to have forfeited all rights and/or Claims and may not receive or participate in any distribution under the Plan.

44.      Unclaimed Distributions of Cash.  Any distribution of Cash under the Plan that is unclaimed after six months after it has been delivered (or attempted to be delivered) shall become the property of the Reorganized Debtor or the Litigation Trustee, as applicable, against which such Claim was Allowed notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder such unclaimed Allowed Claim to such distribution or any subsequent distribution on account of such Allowed Claim shall be extinguished and forever barred.

45.      Assumed and Rejected Contracts and Leases.  Other than executory contracts or unexpired leases that have expired or terminated pursuant to their own terms during the pendency of the Chapter 11 Cases or been assumed or rejected earlier in the Chapter 11 Cases, benefit plans, which are specifically dealt with in Article XII of the Plan, or insurance policies, which are specifically dealt with in Article VII.G. and/or VIII.N. of the Plan, all of the executory contracts and unexpired leases that exist between the Debtors and any Person are specifically assumed as of and subject to the occurrence of the Effective Date pursuant to the Plan.  To the extent any such executory contracts or unexpired leases have been amended prior to the Confirmation Date, such contracts or leases shall be assumed as so amended.

01:12233545.1

46.    <u>Discharges, Injunctions, Releases, Exculpations and Indemnifications Approved</u>. In light of all of the circumstances and the record in these Chapter 11 Cases, including the evidenced proffered or addressed at the Confirmation Hearing and the Wall Declaration, each of the discharges, releases, injunctions, indemnifications and exculpations provided under the Plan, including those, without limitation, set forth in Articles VIII.F, VIII.J, VIII.K, and VIII.L of the Plan, is hereby approved as being (i) within the jurisdiction of the Bankruptcy Court to approve under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated in the Plan; (iv) beneficial to, and in the best interests of, the Debtors, their Estates and their Creditors; (v) critical to the overall objectives of the Plan; and (vi) consistent with sections 105, 1123, 1129 and all applicable provisions of the Bankruptcy Code. Only Persons who (a) directly or indirectly, have held, hold, or may hold Claims, (b) voted to accept the Plan as set forth on the relevant Ballot, and (c) did not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Reorganized Debtors and the Released Parties to grant the Non-Debtor Releases set forth in Article VIII.K. of the Plan.

47.    <u>Designation of Directors Approved</u>. As of the Effective Date, the existing directors of BRHI, Buffets and Buffets Holdings shall be removed and the individuals proposed to serve as directors identified prior to or at the Confirmation Hearing shall be authorized to serve as directors of Reorganized BRHI, Buffets and Buffets Holdings until such time as their successors are duly elected and qualified. The initial boards of directors of the Reorganized Subsidiaries, other than Buffets and Buffets Holdings, shall have the composition and membership as identified prior to or at the Confirmation Hearing. Such appointment and

26

01:12233545.1

designation is approved and ratified as being in the best interests of the Debtors and Creditors and consistent with public policy. Such directors hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of the Court, the Reorganized Debtors or their Equity Interest holders.

48. <u>Designation or Continuation in Office of Officers Approved</u>. The designation or continuation in office as officers of the Reorganized Debtors of each of the individuals identified by the Debtors at or prior to the Confirmation Hearing hereby are approved and ratified as being in the best interests of the Debtors and Creditors and consistent with public policy. Such officers hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date.

49. <u>Substantive Consolidation Approved</u>. The substantive consolidation of all of the Debtors for purposes of the Plan and the Distributions to be made pursuant to the Plan is approved such that (i) all assets and liabilities of the substantively consolidated Debtors will be deemed to be merged solely for purposes of the Plan and Distributions to be made thereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the substantively consolidated Debtors solely for purposes of the Plan and Distributions thereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the substantively consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and distributions made by any Debtor under the Plan will be deemed to be made by the substantively consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability

27

of any of the Debtors shall be deemed to be one obligation of the substantively consolidated Debtors, provided, however, that holders of Allowed Claims in each Class shall be entitled to their share of assets available for distribution to such Class without regard to which Debtor was originally liable for such Claim and such substantive consolidation shall not affect (a) the legal and corporate structure of the Reorganized Debtors, (b) guarantees that are required to be maintained post-Effective Date (i) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed, (ii) pursuant to the express terms of the Plan, or (iii) in connection with the Exit Facility, or (c) the Liens and security interests securing the First Lien Pre-Petition Secured Credit Facility Claims.

50.     General Authorizations; Future Plan Modifications.  Pursuant to section 1142(b) of the Bankruptcy Code, the Debtors, the Reorganized Debtors, and all other necessary parties are authorized and empowered to (x) execute and deliver any instrument, agreement or document and (y) perform any act that is necessary, desirable, or required to comply with the terms and conditions of the Plan and this Order and consummation of the Plan, and are authorized and empowered, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, and other agreements or documents created in connection with the Plan, including, without limitation, entering into each of the Plan Supplement Documents.  After entry of this Order and prior to the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, may, with the consent of the Requisite Consenting Parties (in consultation with the Trust Advisory Board with respect to the treatment of holders of General Unsecured Claims and matters pertaining to the Litigation Trust or any other matter affecting the rights of the holders of General Unsecured Claims, and, to the extent such amendments or modifications affect the rights of the DIP Administrative Agent, the DIP

28

Lenders, the First Lien Pre-Petition Administrative Agent or the First Lien Pre-Petition Secured Credit Facility Lenders, with the consent of the DIP Administrative Agent and/or First Lien Pre-Petition Administrative Agent, as applicable, depending upon the affected party) and upon order of the Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code.

51.     Plan Supplement Documents Approved. The forms, terms and provisions of each of the Plan Supplement Documents filed with this Court are hereby approved. The Debtors are hereby authorized to amend any of the Plan Supplement Documents through and including the Effective Date in a manner consistent with the Plan and with the prior written consent of the Requisite Consenting Parties, the DIP Administrative Agent and the First Lien Pre-Petition Administrative Agent, and, solely with regards to the Litigation Trust Agreement, the schedule setting forth the identity of the Trust Advisory Board members and any other document relating to the treatment of holders of General Unsecured Claims and matters pertaining to the Litigation Trust, the alternative dispute resolution procedures or any other matter affecting the rights of the holders of General Unsecured Claims, the Creditors Committee. Each of the Plan Supplement Documents shall constitute a legal, valid, binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms (except as enforceability may be limited by any bankruptcy or insolvency proceeding filed by any party thereto subsequent to the date of the execution of such document).

52.     Authorizations. The Debtors are authorized, empowered, and directed to take any and all actions necessary or desirable to implement the transactions contemplated by the Plan and this Order, all without further corporate action or action of the Debtors' directors or stockholders, including the removal on the Effective Date of the board of directors or other similar governing body of BRHI, Buffets and Buffets Holdings and the appointment, on the

29

01:12233545.1

Effective Date, of the directors and officers of Reorganized BRHI, Buffets and Buffets Holdings disclosed prior to or at the Confirmation Hearing, the adoption of the Amended and Restated Certificates of Incorporation, Amended and Restated By-Laws and other amended and restated governing documents. In accordance with the adoption of the Amended and Restated Certificates of Incorporation, the Debtors and Reorganized Debtors are hereby authorized (i) to take all actions necessary to cause to be legended all shares of stock in accordance with restrictions set forth in the Amended and Restated Certificates of Incorporation, in such manner as the Reorganized Debtors deem necessary and appropriate.

53.     Exemption From Transfer Taxes. Pursuant to, and to the fullest extent permitted by, section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange under the Plan of New BRHI Common Stock and the security interests in favor of the lenders under the Exit Facility, (b) the making or assignment of any lease or sublease, or (c) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan shall not be subject to any stamp tax or other similar tax. All recording and filing officers and clerks wherever located are hereby directed to accept for filing or recording, and to file or record immediately upon presentation thereof, any mortgage, deed of trust or other instrument of transfer described in (a), (b) or (c) above without payment of any stamp tax or similar tax. The Debtors are hereby authorized to deliver a notice or short form of this Confirmation Order to any state recording officer to the effect that such officer must accept for filing such security interests without charging any stamp tax or other similar tax or fee within the scope of Section 1146(a).

54.     Bar Date for Administrative Claims. All holders of asserted Administrative Claims (except for (i) Fee Claims, (ii) Ordinary Course Administrative Claims, (iii) the post-petition claims of the First Lien Pre-Petition Administrative Agent under the First Lien Pre-Petition Secured Credit Facility, (iv) the post-petition claims of the DIP Administrative

30

01:12233545.1

Agent under the DIP Credit Facility, (v) the fees and expenses of the professionals of the First Lien Pre-Petition Administrative Agent under the First Lien Pre-Petition Secured Credit Facility and the DIP Administrative Agent under the DIP Credit Facility, (vi) the Ad Hoc First Lien Committee Fee Claims, (vii) DIP Financing Claims, (viii) First Lien Pre-Petition Administrative Agent Indemnity Claims, and (ix) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code) not paid prior to the Confirmation Date shall submit proofs of such Administrative Claims on or before the first business day that is thirty (30) days after the Confirmation Date (the "Administrative Claims Bar Date") or forever be barred from doing so and from receiving payment thereof.  The Reorganized Debtors shall have 120 days (or such longer period as may be allowed by order of the Court, which may be entered without notice or a hearing) following the Administrative Claims Bar Date to review and object to all Administrative Claims.

55.     Bar Date for Rejected Contracts.  The Debtors shall serve notice of the rejection of any executory contract or unexpired lease pursuant to the Plan and the deadline for filing claims arising from or related to the rejection of such executory contracts and unexpired leases within one (1) business day of the effective date of rejection.  Non-Debtor parties to executory contracts and unexpired leases that have been rejected by the Debtors pursuant to the Plan shall be permitted to file a proof of claim with regards to alleged damages resulting from such rejection until the date that is thirty (30) days after the effective date of such rejection.

56.     Fee Claims.  As provided in Article III.C of the Plan, all requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, counsel to the Ad Hoc First Lien Committee and counsel to the Creditors Committee

31

and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than forty-five (45) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the requesting party no later than seventy-five (75) days after the Effective Date.

57.    <u>Payment of Administrative Claims</u>. Except with respect to Administrative Claims that are Fee Claims, each holder of an Allowed Administrative Claim shall receive from the Debtors (a) Cash in an amount equal to the amount of such Allowed Administrative Claim on the later of the Effective Date and the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or (b) such other treatment as the Debtors and such holder shall have agreed upon in writing; <u>provided</u>, <u>however</u>, that Allowed Ordinary Course Administrative Claims shall be paid in full in the ordinary course of business of the Reorganized Debtors in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions; and <u>provided</u>, <u>further</u>, that Ad Hoc First Lien Committee Fee Claims and First Lien Pre-Petition Administrative Agent Fee Claims shall be paid in full in Cash on the Effective Date, without any requirement for the filing of fee applications with the Court, but in accordance with the Final DIP Order.

58.    In addition, the Debtors shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the confirmation hearing in

32

01:12233545.1

conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the Chapter 11 cases. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an administrative expense claim against the Debtors and their estates.

59.     DIP Financing Claims. As provided in Article III.E of the Plan, on or before the Effective Date, holders of DIP Financing Claims shall receive payment in full in Cash of all DIP Financing Claims and such Claims otherwise shall be treated in accordance with the terms of the DIP Credit Facility, except to the extent that the holders of DIP Financing Claims agree to a different treatment. Notwithstanding anything to the contrary contained herein, the liens and security interests securing the DIP Financing Claims shall continue in full force and effect until the DIP Financing Claims have been paid in full in Cash, unless the holders of the DIP Financing Claims agree to a different treatment.

60.     Payment of Fees. All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date. Each Reorganized Debtor shall pay such fees payable after the Effective Date until such time as a final decree is entered closing the applicable Chapter 11 Case or the Court orders otherwise.

61.     Continued Corporate Existence. The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed

33

by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement.

62.    Dissolution of Creditors Committee. The Creditors Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code. Thereafter, the Creditors Committee shall continue in existence until the latest of: (1) the Effective Date; and (2) the conclusion of any appeals or other challenges or matters with respect to this Order. On the latest of such dates, the Creditors Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors Committee's attorneys, financial advisors, and other agents shall terminate; provided, however, such attorneys and financial advisors shall be entitled to pursue their own Fee Claims and represent the Creditors Committee in connection with the review of and the right to be heard in connection with all Fee Claims. Following the Confirmation Date, in accordance with the foregoing, (x) the attorneys and financial advisors to the Creditors Committee shall be entitled to request any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Confirmation Date through and including the dissolution of the Committee in connection with the services to the Creditors Committee and (y) the members of the Creditors Committee shall be entitled to reimbursement of their reasonable expenses incurred in connection with their exercise of the foregoing duties and responsibilities. The Reorganized Debtors shall pay, within ten (10) Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable claims for compensation or reimbursement of expenses incurred by the professionals

34

of the Creditors Committee. If the Reorganized Debtors dispute the reasonableness of any such invoice, the Reorganized Debtors or the affected professional may submit such dispute to the Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

63.     Preservation of Causes of Action. The Reorganized Debtors and the Litigation Trustee, as applicable, shall retain all Causes of Action, other than as expressly provided below. Except as expressly provided in this Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Causes of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date that is not specifically waived or relinquished by the Plan. The Reorganized Debtors and the Litigation Trustee, as applicable, shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date by the Reorganized Debtors or the Litigation Trustee, as applicable, to the same extent as if the Chapter 11 Cases had not been commenced.

64.     Administrative Claims Incurred After the Effective Date. Obligations incurred by the Reorganized Debtors after the Effective Date including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with any claim holders.

35

01:12233545.1

65.    <u>Failure to Consummate Plan</u>. In accordance with Article XIII.D of the Plan, in the event that the Effective Date does not occur on or before ninety (90) days after the Confirmation Date, or such later date as may be agreed by the Debtors and the Requisite Consenting Parties, the DIP Administrative Agent and the First Lien Pre-Petition Administrative Agent, in consultation with the Creditors Committee, upon notification submitted by the Debtors to the Court:  (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors unless extended by Court order.

66.    <u>Revocation, Withdrawal, or Non-Consummation</u>. Subject to the terms of, and without prejudice to the rights of any party under, the Plan Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts, unexpired leases, or benefit plans effected by the Plan, any release, exculpation or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void.  In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Interests in the Debtors

01:12233545.1

or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

67. <u>Retention of Jurisdiction</u>. The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom;

(ii) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date;

(iii) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(iv) to resolve disputes as to the ownership of any Claim or Equity Interest;

(v) to hear and determine objections to Claims and to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(vi) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(vii) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(viii) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(ix) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(x) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan;

01:12233545.1

(xi)     to hear and determine any issue for which the Plan requires a Final Order of the Court;

(xii)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xiii)   to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date;

(xiv)    to hear and determine any Causes of Action, including any Avoidance Action, preserved under the Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3);

(xv)     to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge;

(xvi)    to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article VIII of the Plan;

(xvii)   to enter a final decree closing the Chapter 11 Cases;

(xviii)  to hear and determine all matters, controversies, suits, and disputes that may arise out of or in connection with the Litigation Trust, Litigation Trustee and/or the Litigation Trust Agreement; and

(xix)    hear, determine, and adjudicate any and all (x) Claims, including allowance, classification, priority, compromise, estimation or payment, or (y) Transferred Avoidance Actions brought by the Litigation Trustee.

68.     Notwithstanding anything contained herein to the contrary, this Court retains exclusive jurisdiction to adjudicate the Litigation Trust Claims and to hear and determine disputes concerning the Litigation Trust Claims and any motions to compromise or settle such disputes or Litigation Trust Claims.  Despite the foregoing, if the Litigation Trustee on behalf of the Litigation Trust chooses to pursue any Litigation Trust Claim in another court of competent jurisdiction, the Litigation Trustee will have authority to bring such action in any other court of competent jurisdiction.

38

01:12233545.1

69.     Notwithstanding any retention of jurisdiction by this Court as contemplated elsewhere in this Order or in the Plan, from and after the Effective Date, this Court shall not retain jurisdiction over the Exit Facility or over matters relating to the interpretation or enforcement of the Exit Facility or any disputes arising therefrom.

70.     Formation of and Provisions Regarding the Litigation Trust. Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Litigation Trust Agreement, substantially in the form of Exhibit H to the Plan Supplement, is approved and shall become effective.  The Litigation Trustee shall accept the Litigation Trust and sign the Litigation Trust Agreement on the Effective Date and the Litigation Trust will then be deemed created and effective.  On the Effective Date, the Debtors shall transfer, assign, deliver and distribute to the Litigation Trust all right, title and interest in the Transferred Avoidance Actions and the Litigation Trust Cash Component.  Subject to the terms of the Plan and the Litigation Trust Agreement, the Litigation Trust and the Litigation Trustee shall, on the Effective Date, be vested with and succeed to all rights, privileges, immunities, title and interest of the Debtors in and to the Transferred Avoidance Actions and the Litigation Trust Cash Component.  Upon such transfer, the Debtors, the Debtors' Estates, and the Reorganized Debtors shall have no other further rights or obligations with respect thereto.  In addition, on the Effective Date, the Litigation Trust and the Litigation Trustee shall be vested with and succeed to all of the applicable Debtor's rights of setoff, credits, credit balances, defenses, and any right with respect to the adjustment to General Unsecured Claims but only to the extent such rights (i) existed as of or related to the period prior to the Petition Date, and (ii) do not exceed the Allowed amount of the applicable General Unsecured Claim.  Notwithstanding the foregoing, the Reorganized Debtors shall make available to the Litigation Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access during normal business hours, upon reasonable notice,

39

to personnel and books and records of the Reorganized Debtors to enable the Litigation Trustee to perform the Litigation Trustee's tasks under the Litigation Trust Agreement and the Plan, and the Debtors and the Reorganized Debtors shall permit the Litigation Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access to information related to the Transferred Avoidance Actions and the unliquidated and Disputed General Unsecured Claims that is reasonably requested by the Litigation Trustee, as more specifically set forth in the Litigation Trust Agreement. With respect to the Insured Claims, the Reorganized Debtors shall also make available to the Litigation Trustee reasonable access and cooperation during normal business hours to personnel responsible for administering the Claims, in addition to access to books and records of the Debtors or the Reorganized Debtors, including any incident files or other documents related to the Insured Claims. The Litigation Trustee shall also have the authority (subject to the Debtors' insurance policies) to work directly with the Debtors' insurers, claims adjusters, third party administrators and agents with respect to the reconciliation, allowance, settlement, and/or prosecution of the Insured Claims and the Reorganized Debtors will reasonably cooperate with the Litigation Trustee to assist with such efforts. Notwithstanding anything to the contrary herein, the Reorganized Debtors will not be required to incur any expenses in discharging its commitments set forth in this paragraph.

71.     Interests in the Litigation Trust shall be uncertificated and shall be non-transferable except upon death of the interest holder or by operation of law. The terms of the Litigation Trust may be amended by the Litigation Trustee or the Reorganized Debtors to the extent necessary to ensure that the Litigation Trust will not become subject to the Securities Exchange Act of 1934. For federal income tax purposes, it is intended that the Litigation Trust be classified as a liquidating trust under section 301.7701-4 of the Procedure and Administration Regulations and that such trust is owned by its beneficiaries. Accordingly, for federal income

40

tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Litigation Trust Claims and then contributed such interests to the Litigation Trust.

72.     Approval of Litigation Trustee and Related Matters. The Person designated as Litigation Trustee is disinterested as defined by section 101(14) of the Bankruptcy Code. The appointment of the Litigation Trustee under the Litigation Trust Agreement is hereby approved, and the Litigation Trustee is hereby authorized to carry out all duties as set forth in the Plan, this Order and the Litigation Trust Agreement including, without limitation, the litigation and resolution of Litigation Trust Claims, if any, without further order of this Court.

73.     Additional Provisions Relating to the Litigation Trust. The Litigation Trust shall be established solely for the purposes provided for in the Litigation Trust Agreement, which shall include (i) administering, maintaining and ultimately distributing the Litigation Trust Proceeds in accordance with the Plan, (ii) providing for the prosecution, collection, compromise and settlement of the Transferred Avoidance Actions and (iii) determining, objecting to and resolving objections to unliquidated and Disputed General Unsecured Claims. Such rights, powers and duties granted to the Litigation Trustee shall vest on the Effective Date without the need to obtain further Court approval. The Litigation Trustee, in its discretion and in consultation with the Trust Advisory Board, may settle any Disputed General Unsecured Claim by providing the holder of such Claim an immediate Cash Distribution on the Allowed amount of such Claim up to the proximate estimated amount of the projected Distribution to holders of Allowed General Unsecured Claims without further order of the Court. The Litigation Trustee shall pursue, litigate, compromise or abandon the Transferred Avoidance Actions with the objective of maximizing the return to holders of Allowed General Unsecured Claims, in accordance with the Litigation Trust Agreement, and pay all associated costs. None of the

41

01:12233545.1

Debtors or the Reorganized Debtors shall have any liability for any cost or expense of the Litigation Trust following the Effective Date. The Litigation Trustee shall distribute the Litigation Trust Proceeds in accordance with the Litigation Trust Agreement and the terms of the Plan. For the avoidance of doubt, the Litigation Trustee shall return the excess portion, if any, of the Litigation Trust Cash Component to the Reorganized Debtors, as provided in the definition of Litigation Trust Cash Component.

74.   Acceptance and Execution of Plan Supplement Documents. Each and every federal, state and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan and the Plan Supplement Documents (in substantially the forms filed with the Court), including, without limitation, documents and instruments for recording in county and state offices where any Plan Supplement Document may need to be filed in order to effectuate the Plan or this Order.

75.   Cure Amounts. Except to the extent a timely objection has already been filed, each non-Debtor party to an executory contract or unexpired lease to be assumed pursuant to the Plan is deemed to have consented to the assumption of such executory contract or unexpired lease and the cure amount previously disclosed by the Debtors and such parties are barred from asserting any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors prior to the Effective Date of the Plan. In addition, upon the Effective Date of the Plan, the counterparties to such executory contracts or unexpired leases shall be forever enjoined and barred from asserting any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors and the Reorganized Debtors and the non-debtor party to

42

01:12233545.1

such executory contracts or unexpired leases shall enjoy all of the rights and benefits under such assumed executory contracts or unexpired leases without the necessity of obtaining any party's written consent to the Debtors' assumption of such executory contracts or unexpired leases, and such counterparties are deemed to have waived any right to object, consent, condition or otherwise restrict the Debtors' assumption of such executory contracts or unexpired leases.

76.    The applicable Reorganized Debtor, except as otherwise agreed by the parties, will cure any and all undisputed defaults under any executory contract or unexpired lease that is assumed by such Reorganized Debtor pursuant to the Plan in accordance with section 365 of the Bankruptcy Code.  In the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any executory contract or unexpired lease that the Reorganized Debtors propose to assume, the Reorganized Debtors shall have until thirty (30) days after entry of a Final Order determining the amount, if any, of the applicable Debtor or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume or reject the related executory contract or unexpired lease.  In the event the applicable Reorganized Debtor determines to assume the applicable executory contract or unexpired lease related to the disputed cure, such disputes shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the applicable Debtor or the applicable Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

77.    Real Estate Lease Assumptions. Notwithstanding anything to the contrary set forth in the Notice of  (i) Possible Assumption of Unexpired Leases of Non-Residential Real Property and Related Agreements, (ii) Fixing Cure Amounts, and (iii) Deadline to Object Thereto [Docket No. 542], filed with the Court on May 7, 2012, the Plan, or this Confirmation Order, the Cure Amounts for those agreements set forth on Exhibit D to this Confirmation Order

43

shall be fixed in the amount set forth in the Column "Undisputed Cure Amount" for such

agreement; provided that if for any agreement there is an amount set forth in the Column

"Disputed Cure Amount," the Cure Amount shall be subject to upward adjustment (up to the

amount of the Disputed Cure Amount), and the parties shall either (i) mutually agree, in writing,

to a final determination of the Disputed Cure Amount, or (ii) proceed to a hearing to resolve the

Disputed Cure Amount at the first omnibus hearing that is at least thirty (30) days after the date

of entry of this Order (or such later omnibus hearing date as mutually agreed to by the parties).

> (i)      Nothing set forth in the Plan or Confirmation Order shall release the Debtors or Reorganized Debtors from their obligation to pay the Cure Amount for any executory contract or unexpired lease assumed in accordance with the Plan.

> (ii)      Notwithstanding anything to the contrary in this Confirmation Order and the Plan, but solely with respect to any unexpired lease of non-residential real property or other ancillary agreement listed in the Schedule of Additional Assumed Leases (each such agreement being referred to as an "Objecting Landlord Lease") to which an Objecting Landlord (defined below) is a party, the rights and defenses of an Objecting Landlord shall not be impaired with respect to, and the Debtors and the Reorganized Debtors, as applicable, shall remain obligated to perform in accordance with the terms, conditions and provisions of the respective Objecting Landlord Lease to satisfy any conditions, provisions, and obligations which have accrued under such Objecting Landlord Lease as of the entry of this Confirmation Order but are not yet due under the terms of such Objecting Landlord Lease, including, but not limited to, (a) any adjustments or reconciliations (including any year-end adjustments or reconciliations) provided for under such Objecting Landlord Lease in respect of common area maintenance, insurance, taxes, and other charges and expenses that are to be paid under such Objecting Landlord Lease for the year in which the Effective Date occurs or the prior year, (b) any unbilled percentage rent (if applicable) provided for under the terms, conditions and provisions of such Objecting Landlord Lease that is due and owing from the Debtors or Reorganized Debtors to the respective Objecting Landlord under such Objecting Landlord Lease for the year in which the Effective Date occurs or the prior year, and (c) any indemnification obligations that are expressly provided for under such Objecting Landlord Lease. For purposes of this Paragraph, the "Objecting Landlords" are:  Granite Village West Center, L.P. [D.I. 551]; Terracommercial Management, the authorized agent of landlord Facchino-LaBarbera Hacienda Gardens [D.I. 572]; CRI Easton Square, LLC [D.I. 575]; Brixmor Property Group, Inc., Federal Realty Investment Trust,

44

GGP Limited Partnership, Levin Management Corp., Rouse Properties, Inc. and WP Realty [D.I. 577]; Batista S. Vieira and Dolores M. Vieira, trust under The Barista and Dolores Vieira Revocable Living Trust, dated June 1, 2004 [D.I. 581]; Copperwood Square, LLC [D.I. 583]; DS Marketplace Bakersfield, LLC [D.I. 584]; Donahue Schriber Realty Group, L.P. [D.I. 585, 615]; BG Flats II - III, LLC; DDRM Highland Grove, LLC; Labrador Group, LLC; Realty Income Corporation; Realty Income Illinois Properties 4, LLC; Realty Income Pennsylvania Properties Trust; Realty Income Texas Properties 1, LLC; STRS Ohio CA Real Estate Investments II, LLC; WRI Golden State, LLC; WRI Greenhouse, LP; and WRI-URS Clackamas, LLC [D.I. 590]; Poinsett, LLC [D.I. 591, 5/18/12]; The Macerich Company, Watt Management Company, and the Prudential Insurance Company of America [D.I. 592]; Bonnie Management Corp. [D.I. 596]; Inland US Management, LLC, Inland Southwest Management LLC, Inland American Retail Management LLC, and Inland Commercial Property Management, Inc. [D.I. 597, 640]; Big Dolphin LLC [D.I. 598]; KIR Smoketown Station L.P., KIR Covina LP, The Price REIT, Inc., Chico Crossroads, LP, KCH Properties, Inc., Price Tennessee Properties, L.P., Kimco Englewood 683, Inc. [D.I. 599]; Simon Property Group, Inc. and its related entities as Landlord [D.I. 601]; Macerich Real Estate Company [D.I. 602]; First Interstate Properties, Ltd. [D.I. 603]; Summit Towne Centre, Inc. [D.I. 607]; Watertown Mall Associates [D.I. 723], and; Washington Real Estate Investment Trust [D.I. 729]

78.     Cole Master Leases.   The assumption of the Master Land and Building Lease by and between Cole BU Portfolio I, LLC and Fire Mountain Restaurants, LLC and the Master Land and Building Lease between Cole BU Portfolio II, LLC and Fire Mountain Restaurants, LLC (collective, the "Cole Master Leases"), both as amended, set forth in the Schedule of Additional Assumed Leases is approved, effective as of the Effective Date and such Cole Master Leases are each a single, unitary and indivisible master lease as to all of the Demised Properties (as defined and identified in the Cole Master Leases, as amended) then subject to such master lease at any given time collectively and is not subject to being severed with respect to any individual Demised Property, except as expressly set forth in the Cole Master Leases, as amended.

79.     Real Estate Lease Rejections. Unless otherwise specified herein, the effective date of rejection of any lease of non-residential real property that is listed on the

45

01:12233545.1

Scheduled of Additional Rejected Contracts and Leases shall be the date that the Debtors provide written notice of their unequivocal surrender of the premises underlying such lease and return, as applicable, the keys, key codes and/or alarm codes to the applicable landlord; provided, however, that in no event shall the effective date of rejection extend beyond the Effective Date, in accordance with the *Order Extending the Deadline Pursuant to Section 365(d)(4) of the Bankruptcy Code to Assume or Reject Unexpired Leases of Nonresidential Real Property* [Docket No. 510].

80. <u>Seekonk Square Realty Trust</u>. With respect to the lease identified in the objection of Leo Kahn as Trustee of Seekonk Square Realty Trust [Docket No. 606] (the "Seekonk Lease"), the Seekonk Lease shall be rejected as of June 30, 2012, by which date the Debtors will surrender the premises underlying the Seekonk Lease and return, as applicable, the keys, key codes and/or alarm codes to the landlord at the Seekonk lease, all personal property remaining in the premises that are the subject of the Seekonk Lease are deemed abandoned pursuant to section 554(a) of the Bankruptcy Code and the landlord at the Seekonk Lease may dispose of such personal property without liability to any party, and the rights of the landlord under the Seekonk Lease to assert rejection damage claims, including those related to the disposal of any personal property that may be located on the leased premises, are preserved and the Debtors' defenses to and right to contest rejection damage claims of any nature are also preserved. Any person seeking to file a claim arising out of or related to the rejection of the Seekonk Lease must do so by July 30, 2012.

81. <u>KDW Landlords</u>. With respect to Benderson-Wainberg Associates, L.P.; BG Flats II - III, LLC; DDRM Highland Grove, LLC; DDRM Riverdale Shops LLC  Labrador Group, LLC; Realty Income Corporation; Realty Income Illinois Properties 4, LLC; Realty Income Pennsylvania Properties Trust; Realty Income Texas Properties 1, LLC; STRS Ohio CA

01:12233545.1

Real Estate Investments II, LLC; WRI Golden State, LLC; WRI Greenhouse, LP; and WRI-URS Clackamas, LLC (each a "KDW Landlord" and, collectively, the "KDW Landlords"), the following shall apply:

    a. Notwithstanding anything to the contrary set forth in Article VIII(E) of the Plan or the Confirmation Order, nothing shall prohibit the KDW Landlords from amending a timely-filed Claim to the extent permitted under applicable statutes, rules, orders of the court and case law.

    b. Notwithstanding Article VIII(F) of the Plan or the Confirmation Order, with respect to any lease that (i) had expired prior to the Petition Date or (ii) has been rejected prior to the Effective Date, the setoff rights (if any) of Realty Income Corporation; Realty Income Texas Properties 1, LLC; Benderson-Wainberg Associates, L.P.; and DDRM Riverdale Shops LLC with respect to any such lease are hereby preserved with respect to Claims arising under or based on such lease to the extent (and only to the extent) that a debt (if any) is owed to the Debtors by any such landlords under or pursuant to such lease.

    c. Notwithstanding Article XI(C) of the Plan or the Confirmation Order, any lease with any KDW Landlord that has not been (i) rejected, (ii) designated for rejection in the Schedule of Additional Rejected Contracts or Leases, or (iii) is the subject of a notice of rejection filed by the Debtors, as of the date that is three (3) days prior to the Confirmation Hearing shall be assumed by the Debtors and shall not be rejected; provided, however, that this provision shall have no force or effect if the Effective Date of the Plan does not occur.

    82.    <u>Assumption of Specific Executory Contracts.</u> Notwithstanding anything to the contrary set forth in the Notice of (i) Possible Assumption of Executory Contracts and Unexpired Leases (ii) Fixing of Cure Amounts and (iii) Deadline to Object Thereto [Docket No. 543] ("Notice of Proposed Contract Cure Amounts"), filed with the Court on May 7, 2012, the Plan, or this Confirmation Order, the following shall apply with respect to executory contracts and unexpired leases between the Debtors and the below parties:

    a. <u>Constellation New Energy, Inc.</u>: The Cure Amount for the Debtors' two contracts with Constellation NewEnergy, Inc. will be $143,024.80, such amounts include $45,588.01 for pre-petition amounts and $97,436.79 for post-petition amounts that have accrued through June 6, 2012 and are now due and payable in full (which post-petition amounts the Debtors will continue to timely pay in the ordinary course pursuant to the terms of the contracts) and any additional post-petition amounts which accrue after June 6, 2012 (which additional post-petition

47

amounts the Debtors will also continue to timely pay in ordinary course pursuant to the terms of the contacts).

b. <u>Microsoft Licensing, G.P.</u>:  The Cure Amount for assumption of the Microsoft Volume Licensing Agreement Dated June 1, 2010 is $210,860.19, which represents the annual fees invoiced on June 1, 2012, to the extent that such amount has not been paid in the ordinary course of business prior to the Effective Date of the Plan.

c. <u>Comdata Network, Inc.</u>:  For the avoidance of doubt, the Comdata Cash eCard Agreement between Buffets, Inc. and Comdata Network, Inc. shall be assumed as of and subject to the Effective Date pursuant to Article XI of the Plan.

d. <u>SpaceNet, Inc.</u>:  The Cure Amount for the Conexstar Purchase Agreement dated July 9, 2004, as amended on May 13, 2005, June 30, 2005, June 29, 2007 and June 30, 2010, shall be $19,444.87.

e. <u>Oracle America, Inc.</u>:  For the avoidance of doubt, the following agreements between the Debtors and Oracle America, Inc. ("<u>Oracle</u>") shall be assumed as of and subject to the Effective Date pursuant to Article XI of the Plan:  (i) Oracle License and Services Agreement dated February 25, 2008; (ii) Oracle License Agreement, version 25, dated November 29, 2000; (iii) Oracle License and Services Agreement dated November 11, 2002; (iv) Oracle License and Services Agreement dated September 10, 2001; (v) Oracle License and Services Agreement dated September 27, 2007; (vi) Support Renewal for Service Contract #3963076, term of service February 25, 2012 - February 24, 2013; and (vii) Support Renewal for Service Contract #4955320, term of service November 30, 2011 - November 29, 2012.  The aggregate Cure Amount for such agreements shall be $0.00.

f. <u>HVS Executive Search.</u>:  The Cure Amount for the Debtors' contract with HVS Executive Search shall be $17,949.97.

83. <u>Payment of Allowed Other Secured Claims and Other Priority Tax Claims</u>.  Upon the failure of the Debtor to make any payment due on an Allowed Priority Tax Claim (or Allowed Other Secured Claim treated as an Allowed Priority Tax Claim in accordance with Article IV.C. of the Plan) in accordance with the Plan that is not cured within fifteen days of the mailing of a written notice of default by the creditor, such creditor may exercise all rights and remedies available under nonbankruptcy law for the collection of its entire claim and/or seek appropriate relief in this Court.

01:12233545.1

84.     If any provision of the Bankruptcy Code requires the payment of interest on an Allowed tax claim or an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of an Allowed tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.  In the case of taxes paid under the Plan, the rate of interest shall be determined as of June 2012.

85.     Pennsylvania Department of Revenue. Subject to Sections 362 and 553(a), nothing set forth in the Plan or Confirmation Order shall impair the rights (if any) that Commonwealth of Pennsylvania, Department of Revenue ("Commonwealth") has under applicable non-bankruptcy law to setoff its claims against any tax refunds owed to the Debtors by Commonwealth.

86.     County of Los Angeles Treasurer/Tax Collector. The Debtor and the County of Los Angeles Treasurer/Tax Collector agree that any claims set forth in the County's Objection, as well as any and all rights and applicable defenses of the Debtor, shall be determined in accordance with applicable law pursuant to section 511 of the Bankruptcy Code, and the relevant Sections of the California Revenue and Taxation Code, all of which are expressly reserved.

87.     State of Michigan Department of Treasury. Notwithstanding anything contrary in the Plan, this Confirmation Order, or any implementing Plan document, nothing shall affect the rights of the State of Michigan, Department of Treasury to take action against non-debtor third parties whom may be responsible for the payment of prepetition and/or postpetition tax liabilities of any of the Debtors, and such rights are expressly reserved.

88.     Sedgwick. The Debtors and Sedgwick Claims Management Services, Inc., as successor to Specialty Risk Services, LLC ("Sedgwick"), are parties to the Claim Service and Funding Agreement between Buffets, Inc. and Sedgwick Claims Management Services, Inc.,

as successor to Specialty Risk Services, LLC and all amendments thereto, and the Risk Management Information Services Agreement between Buffets, Inc. and Sedgwick Claims Management Services, Inc., as successor to Specialty Risk Services, LLC (together, the "Sedgwick Contracts"), which were terminated effective as of June 23, 2012, and shall not be assumed contracts under the Plan. Therefore, the Objection of Sedgwick Claims Management Services, Inc., as successor to Specialty Risk Services, LLC, to Debtors' Notice of Proposed Contract Cure Amounts [Docket No. 605] (the "Cure Amount Objection") is moot. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, all of Sedgwick's claims, defenses, and rights, including without limitation (i) its rights, if any, to assert a setoff or recoupment claim or defense, and (ii) it rights, if any, to assert an Administrative Claim, shall be reserved and shall not be reduced, impaired, or otherwise affected by the Plan or this Confirmation Order, and any deadlines contained in or established by the Plan or this Confirmation Order pertaining to the assertion by Sedgwick of any such Claims, defenses, or rights (including without limitation the deadline to assert Administrative Claims established by Article III.B of the Plan) shall not apply to Sedgwick but shall be established at the July 12, 2012 Omnibus Hearing Date.

89.     Non-Debtor Obligations. The obligations of non-Debtor parties under the First Lien Pre-Petition Secured Credit Facility and the Second Lien Pre-Petition Secured Credit Facility, including without limitation, non-Debtor parties' rights and obligations in respect of letters of credit issued under the First Lien Pre-Petition Secured Credit Facility and the Second Lien Pre-Petition Secured Credit Facility, shall continue to be governed by the First Lien Pre-Petition Secured Credit Facility and the Second Lien Pre-Petition Secured Credit Facility, respectively, on and after the Effective Date except to the extent expressly provided for otherwise in the Plan.

50

90.    <u>Indemnification Obligations</u>. Notwithstanding any other provision of the Plan, any claims and liabilities of the Debtors under the indemnification obligations assumed pursuant to Article VIII.O of the Plan are not discharged under the Plan.

91.    <u>No Post-Confirmation Amendment or Filing of Claims</u>. Except as otherwise provided herein or in the Plan, any party filing a proof of Claim after the bar date established by the Court shall not be entitled to treatment as a creditor with respect to such Claim for the purposes of voting on and distribution under the Plan, unless and until the party filing such Claim either obtains the written consent of the Reorganized Debtors or the Litigation Trustee, as appropriate, to file such Claim late or obtains an order of the Court upon written motion on notice to the Reorganized Debtors or the Litigation Trustee, as appropriate, that permits the filing of the Claim.

92.    <u>Notices of Entry of Confirmation Order; Occurrence of the Effective Date and Various Deadlines</u>. As soon as practical after entry of this Order, the Debtors shall serve by first class mail, postage prepaid, pursuant to Rules 2002(f)(7), 2002(k) and 3020(c) of the Bankruptcy Rules notice of (i) entry of this Order and (ii) the Administrative Claims Bar Date, on all Creditors and holders of Equity Interests, the United States Trustee and all parties having filed notices of appearance and requests for notice in these cases, by causing a notice in substantially the form of the notice annexed hereto as Exhibit B, which form is hereby approved (the "<u>Confirmation Notice</u>"); <u>provided</u>, <u>however</u>, that the Confirmation Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Order to any person to whom the Debtors mailed a notice of the Confirmation Hearing but received such notice returned and marked "undeliverable as addressed," "moved - left no forwarding address" or "forwarding order expired," or similar marking, unless the Debtors have since been informed in writing by such person of that person's correct address. In addition, the Reorganized Debtors shall cause a

51

01:12233545.1

copy of the Confirmation Notice to be published once in the national edition of The Wall Street Journal, The New York Times or USA Today no later than twenty (20) days from the Effective Date. As soon as practical after the occurrence of the Effective Date, the Debtors shall serve by first class mail, postage prepaid, notice of (i) the occurrence of the Effective Date and (ii) the deadline to file Fee Claims, on all professionals retained in the Chapter 11 Cases, the United States Trustee and all parties having filed notices of appearance and requests for notice in these cases, by causing a notice in substantially the form of the notice annexed hereto as Exhibit C, which form is hereby approved (the "Effective Date Notice"). The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

93.    References to Plan Provisions. The failure specifically to include or reference any particular provision of the Plan in this Order shall not affect, diminish or impair the effectiveness of such provision, it being the intent of the Court that entry of this Order constitutes approval of the Plan (including the Modifications) in its entirety.

94.    Confirmation Order Controlling. If there is any direct conflict between the Plan and this Order, the terms of this Order shall control.

95.    Separate Order. This Order is and shall be deemed a separate Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Case for all purposes. The Clerk of the Court is directed to file and docket this Order in the Chapter 11 Case of each of the Debtors.

96.    Vacatur of Confirmation Order. If this Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors;

52

53

(c) prejudice in any manner any right, remedy or claim of the Debtors; or (d) be deemed an admission against interest by the Debtors.

97. <u>Applicable Non-Bankruptcy Law</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, and the Plan Supplement Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

98. <u>Immediately Effective Order</u>. Notwithstanding Bankruptcy Rules 7062 and 3020(e), this Order shall be effective and enforceable immediately upon entry.


Dated: Wilmington, Delaware
June 2₁, 2012


Mary F. Walrath
United States Bankruptcy Judge

01:12233545.1