**EXHIBIT A**

01:12233545.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUFFETS RESTAURANTS HOLDINGS, INC., a Delaware corporation, *et al.*,[1] | ) | Case No. 12-10237 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

## DEBTORS' SECOND AMENDED JOINT PLAN OF
## REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Jeffrey D. Saferstein
Philip A. Weintraub
Evan R. Zisholtz
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel for the Debtors and
Debtors-in-Possession*

Dated: Wilmington, Delaware
        June 26, 2012

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Buffets Restaurants Holdings, Inc. (9569), Buffets Holdings, Inc. (4018), Buffets, Inc. (2294), HomeTown Buffet, Inc. (3002), OCB Purchasing Co. (7610), OCB Restaurant Company, LLC (7607), Buffets Franchise Holdings, LLC (8749), Buffets Leasing Company, LLC (8138), Ryan's Restaurant Group, Inc., (7895), Ryan's Restaurant Leasing Company, LLC (7405), HomeTown Leasing Company, LLC (8142), OCB Leasing Company, LLC (8147), Fire Mountain Restaurants, LLC (8003), Fire Mountain Leasing Company, LLC (7452), Tahoe Joe's, Inc. (7129) and Tahoe Joe's Leasing Company, LLC (8145). The address for all of the Debtors is 1020 Discovery Road, Suite 100, Eagan, MN 55121.

## TABLE OF CONTENTS

Page

I. DEFINITIONS AND CONSTRUCTION OF TERMS .............................................3
    A.    Definitions. ........................................................................................................3
    B.    Interpretation, Application of Definitions and Rules of
           Construction.....................................................................................................17

II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .........................18
    A.    Introduction......................................................................................................18

III. TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY
       TAX CLAIMS....................................................................................................19
    A.    Administrative Claims.......................................................................................19
    B.    Bar Dates for Administrative Claims. ...............................................................20
    C.    Fee Claims. ........................................................................................................20
    D.    Priority Tax Claims.............................................................................................21
    E.    DIP Financing Claims........................................................................................21

IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS...................................21
    A.    Class 1 — Other Priority Claims. .....................................................................21
    B.    Class 2 — First Lien Pre-Petition Secured Credit
           Facility Claims...................................................................................................21
    C.    Class 3 — Other Secured Claims. .....................................................................23
    D.    Class 4 — Second Lien Pre-Petition Secured Credit
           Facility Claims...................................................................................................23
    E.    Class 5 — General Unsecured Claims................................................................24
    F.    Class 6 — Equity Interests. ...............................................................................25

V. PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE
       REORGANIZED DEBTORS..............................................................................25
    A.    Amendments to Certificates of Incorporation. .................................................25
    B.    Appointment of Officers and Directors. ...........................................................26
    C.    Powers of Officers. ...........................................................................................26
    D.    Management of Reorganized Debtors. ..............................................................26
    E.    Reorganized Debtors' Management Incentive Plan. .........................................26
    F.    Indemnification of Directors, Officers and Employees.....................................27
    G.    Corporate Reorganization..................................................................................27
    H.    Corporate Action. .............................................................................................27

VI. SUBSTANTIVE CONSOLIDATION OF THE DEBTORS................................28

VII. PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING,
       DISTRIBUTIONS, AND TREATMENT OF DISPUTED CLAIMS ............29

US1:7990325v6

A.   Exit Facility. ........................................................................29
B.   Issuance of New BRHI Common Stock and New
     Subsidiary Equity Interests. ...............................................29
C.   Litigation Trust. ..................................................................29
D.   The Trust Advisory Board ...................................................31
E.   Voting of Claims. ................................................................32
F.   Distributions. ......................................................................32
G.   Estimation. ..........................................................................39
H.   Nonconsensual Confirmation. ............................................39
I.   Intercompany Claims. .........................................................40
J.   New Shareholders Agreement. ............................................40
K.   Liens. ..................................................................................40
L.   Enforcement of Subordination. ...........................................41

VIII. EFFECT OF CONFIRMATION OF THE PLAN .............................................41
A.   Continued Corporate Existence. .........................................41
B.   Settlement of Treatment of General Unsecured Claims ......42
C.   Dissolution of Creditors Committee. ..................................42
D.   Vesting of Property. ............................................................42
E.   Discharge of the Debtors. ...................................................43
F.   Injunction. ...........................................................................43
G.   Preservation of Causes of Action. ......................................44
H.   Votes Solicited in Good Faith. ............................................44
I.   Administrative Claims Incurred After the Effective
     Date. ....................................................................................44
J.   Releases by the Debtors. .....................................................44
K.   Releases by non-Debtors. ...................................................45
L.   Exculpation and Injunction in Respect of Released
     Parties. ................................................................................46
M.   Term of Bankruptcy Injunction or Stays. ...........................47
N.   Preservation of Insurance. ..................................................47
O.   Indemnification Obligations Owed by the Debtors. ............47

IX. RETENTION OF JURISDICTION ..............................................................48

X. MISCELLANEOUS PROVISIONS .............................................................49
A.   Payment of Statutory Fees. .................................................49
B.   Modification of the Plan. ....................................................49
C.   Governing Law. ...................................................................50
D.   Filing or Execution of Additional Documents. ...................50
E.   Withholding and Reporting Requirements. .........................50
F.   Exemption From Transfer Taxes. ........................................50
G.   Section 1145 Exemption. ....................................................50
H.   Waiver of Federal Rule of Civil Procedure 62(a). ..............50
I.   Exhibits/Schedules. .............................................................51
J.   Notices. ...............................................................................51
K.   Plan Supplement. ................................................................51

01:12241884.2

Page

L.    Conflict. ......................................................................................................52

**XI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...............................52
    A.    Assumption and Rejection of Executory Contracts and
        Unexpired Leases.............................................................................52
    B.    Limited Extension of Time to Assume or Reject. ......................................53
    C.    Cure.....................................................................................................53
    D.    Rejection Damage Claims. ................................................................53

**XII. BENEFIT PLANS**.....................................................................................54

**XIII. EFFECTIVENESS OF THE PLAN** .......................................................................54
    A.    Conditions Precedent to Confirmation. ...................................................54
    B.    Conditions Precedent to Effectiveness. ...................................................54
    C.    Waiver of Conditions.............................................................................55
    D.    Effect of Failure of Conditions.............................................................55
    E.    Vacatur of Confirmation Order. ...........................................................56
    F.    Revocation, Withdrawal, or Non-Consummation. ...................................56

01:12241884.2

## INTRODUCTION

Buffets Restaurants Holdings, Inc., Buffets Holdings, Inc., Buffets, Inc., HomeTown Buffet, Inc., OCB Purchasing Co., OCB Restaurant Company, LLC, Buffets Franchise Holdings, LLC, Buffets Leasing Company, LLC, Ryan's Restaurant Group, Inc., Ryan's Restaurant Leasing Company, LLC, HomeTown Leasing Company, LLC, OCB Leasing Company, LLC, Fire Mountain Restaurants, LLC, Fire Mountain Leasing Company, LLC, Tahoe Joe's, Inc., and Tahoe Joe's Leasing Company, LLC, the above-captioned debtors and debtors in possession, propose the following joint plan of reorganization under section 1121(a) of the Bankruptcy Code.[2]

The Debtors' Chapter 11 Cases are being jointly administered pursuant to an order of the Court, and the Plan is being presented as a joint plan of reorganization of the Debtors. Claims against, and Interests in, the Debtors (other than Administrative Claims, Priority Tax Claims and Fee Claims) are classified in Article II hereof and treated in Article IV hereof.

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, results of operations, and projections for future operations and risk factors, together with a summary and analysis of this Plan. All Claim holders entitled to vote on this Plan are encouraged to consult the Disclosure Statement and to read this Plan carefully before voting to accept or reject this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE COURT, HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

---

[2]   Capitalized terms used in this Introduction shall have the meanings ascribed to them herein below.

01:12241884.2

# I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Definitions.

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

| | |
|---|---|
| *ACE Companies* | means, collectively, ACE American Insurance Company, ACE Property and Casualty Company, Pacific Employers Insurance Company and Westchester Surplus Lines Insurance Company and each of their respective affiliates including, but not limited to, ESIS, Inc. |
| *ACE Insurance Program* | means all insurance policies and all agreements, documents or instruments relating thereto including, without limitation, claims servicing agreements, that have been issued or entered into by the ACE Companies (or any of them) to or with one or more of the Debtors and their respective predecessors and/or affiliates. |
| *Ad Hoc First Lien Committee* | means that certain ad hoc committee of certain holders of First Lien Secured Credit Facility Claims that also are party to the Plan Support Agreement. |
| *Ad Hoc First Lien Committee Advisors* | means, in their capacities as such, Willkie Farr & Gallagher LLP and Blank Rome LLP, as counsel to the Ad Hoc First Lien Committee, and Conway, Del Genio, Gries & Co., LLC, as financial advisors to such counsel. |
| *Ad Hoc First Lien Committee Fee Claims* | means all Claims, to the extent not already paid as of the Effective Date, for: (a) the reasonable and documented fees and expenses of the Ad Hoc First Lien Committee Advisors, without any requirement for the filing of retention applications or fee applications in the Chapter 11 Cases, but with the requirements set forth in the Final DIP Order; and (b) the reasonable documented out-of-pocket expenses incurred by members of the Ad Hoc First Lien Committee. |
| *Administrative Claim* | means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, |

3

including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against the Debtors' estates under section 1930 of chapter 123 of title 28 of the United States Code, any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code, the Ad Hoc First Lien Committee Fee Claims, and the First Lien Pre-Petition Administrative Agent Fee Claims.

*Administrative Claims Bar Date* means the first business day that is thirty (30) days after the Confirmation Date.

*Allowed* means, with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not Disputed by the Claims Objection Deadline, (d) any Claim the amount or existence of which, if Disputed, (i) has been determined by a Final Order of a court of competent jurisdiction, or (ii) has been allowed by Final Order of the Court, or (e) any Claim which the Reorganized Debtors or the Litigation Trustee deems allowed, depending upon the party responsible for distribution under the Plan; provided, however, if the time to object to Claims has not expired, a Claim shall not be deemed allowed unless designated as such by the Reorganized Debtors or the Litigation Trustee, depending upon the party responsible for distribution under the Plan; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered

4

"Allowed Claims" hereunder.

**Automobile Liability Claim** means a Claim covered by an automobile liability policy issued to one or more of the Debtors.

**Avoidance Actions** means those certain claims or causes of action of the Estates arising out of or maintainable pursuant to sections 510, 542, 543, 544, 545, 547, 548, 550, or 551 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

**Ballots** means each of the ballot forms distributed with the Disclosure Statement to each holder of an Impaired Claim (other than to holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan.

**Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the date hereof.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require.

**BRHI** means Buffets Restaurants Holdings, Inc.

**Buffets** means Buffets, Inc.

**Buffets Franchise** means Buffets Franchise Holdings, LLC.

**Buffets Holdings** means Buffets Holdings, Inc.

**Buffets Leasing** means Buffets Leasing Company LLC.

**Business Day** means any day on which commercial banks are open for business, and not authorized to close, in the City of New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a).

**Cash** means legal tender of the United States of America.

**Causes of Action** means all claims, choses in action and causes of action (including those assertable derivatively), liabilities, obligations, suits, debts, sums of money, damages, demands, judgments, whether known or unknown, now owned or hereafter acquired by the Debtors, and the Cash and non-Cash proceeds thereof, whether arising under the Bankruptcy Code or other federal, state or foreign law, equity or otherwise, including, without limitation, any causes of action arising under sections 510, 544, 547, 548, 549, 550, 551 or any other section of the Bankruptcy Code, other than the Transferred

5

01:12241884.2

|  | Avoidance Actions. |
|---|---|
| ***Chapter 11 Cases*** | means the chapter 11 cases commenced by the Debtors. |
| ***Claim*** | means any claim, as such term is defined in section 101(5) of the Bankruptcy Code. |
| ***Claims Agent*** | means Epiq Bankruptcy Solutions, LLC or any successor thereto. |
| ***Claims Objection Deadline*** | means the first business day that is one hundred eighty (180) days after the Effective Date, or such other later date the Court may establish upon a motion by the Reorganized Debtors or Litigation Trustee, as applicable, which motion may be filed before or after such deadline and may be approved without a hearing and without notice to any party; provided, however, that to the extent such motion affects the claims of the California Franchise Tax Board, the Reorganized Debtors or the Litigation Trustee, as applicable, shall provide notice of such motion to the California Franchise Tax Board. |
| ***Class*** | means a group of Claims or Equity Interests as classified under the Plan. |
| ***Collateral*** | means any property or interest in property of the Debtors' estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law. |
| ***Confirmation Date*** | means the date on which the Confirmation Order is entered by the Court. |
| ***Confirmation Hearing*** | means the hearing to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time. |
| ***Confirmation Order*** | means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code. |
| ***Court*** | means, (a) the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware; and (c) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein. |
| ***Creditors Committee*** | means the Official Committee of Unsecured Creditors |

6

|  | appointed by the United States Trustee in the Debtors' Chapter 11 Cases, as constituted from time to time. |
|---|---|
| *Debtors* | means Buffets Restaurants Holdings, Inc., Buffets Holdings, Inc., Buffets, Inc., HomeTown Buffet, Inc., OCB Purchasing Co., OCB Restaurant Company, LLC, Buffets Franchise Holdings, LLC, Buffets Leasing Company, LLC, Ryan's Restaurant Group, Inc., Ryan's Restaurant Leasing Company, LLC, HomeTown Leasing Company, LLC, OCB Leasing Company, LLC, Fire Mountain Restaurants, LLC, Fire Mountain Leasing Company, LLC, Tahoe Joe's, Inc., and Tahoe Joe's Leasing Company, LLC. |
| *Debtors in Possession* | means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. |
| *DIP Administrative Agent* | means Credit Suisse AG, Cayman Islands Branch, in its capacity as Administrative Agent under the DIP Credit Facility. |
| *DIP Credit Facility* | means that certain Secured Super-Priority Debtor-in-Possession Credit Agreement, dated as of January 18, 2012, between and among Buffets, Inc., Buffets Restaurants Holdings, Inc., Buffets Holdings, Inc., the lenders identified therein and Credit Suisse AG, Cayman Islands Branch, as Administrative Agent and Collateral Agent, as amended from time to time. |
| *DIP Financing Claims* | means all Claims arising under or relating to the DIP Credit Facility, the interim order approving the DIP Credit Facility, and the Final DIP Order and all agreements and instruments relating thereto, including, without limitation, Claims for the fees, reasonable and documented expenses, costs and other charges of the DIP Administrative Agent and the lenders under the DIP Credit Facility (including those of their respective counsel and advisors) to the extent provided in the DIP Credit Facility. |
| *DIP Lenders* | means the lenders, banks, other financial institutions or other non-Debtor entities that may become lenders under the DIP Credit Facility from time-to-time. |
| *Disclosure Statement* | means the written disclosure statement that relates to this Plan, as approved by the Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time |

7

(including all schedules and exhibits thereto).

***Disputed***

means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) for which a proof of claim was required, but as to which a proof of claim was not timely or properly filed; or (b) any Claim as to which the Debtors or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the holder of such Claim.

***Distributions***

means the distribution in accordance with this Plan of (a) Cash, (b) New BRHI Common Stock, or (c) other form of consideration, as the case may be.

***Effective Date***

means the first Business Day on which all of the conditions specified in Article XIII.A of the Plan have been satisfied or waived in accordance with Article XIII.B of the Plan; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first Business Day after such stay is no longer in effect.

***Equity Interest or Interest***

means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest.

***Estates***

means the estates of the Debtors, individually or collectively, as is appropriate in the context created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

***Excluded Avoidance Actions***

means Avoidance Actions against (a) all of the Debtors' respective officers, current directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals, (b) (i) the DIP Administrative Agent, (ii) the Collateral Agent, the Deposit Agent and the Issuing Bank (each as defined in the DIP Credit Facility), (iii) the First Lien Pre-Petition Administrative Agent, (iv) the PF L/C Issuer, the Issuing Bank, the Deposit Agent, the Lead Arranger and the Collateral Agent (each as defined in the First Lien

8

Pre-Petition Secured Credit Facility), and (v) the Collateral Agent, the Lenders, the Administrative Agent, the Lead Arranger, the Deposit Agent, and the Issuing Bank (each as defined in the Second Lien Pre-Petition Secured Credit Facility), (c) officers, directors, principals, members, employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals of each of the DIP Administrative Agent and the First Lien Pre-Petition Administrative Agent, (d) the DIP Lenders and First Lien Pre-Petition Secured Credit Facility Lenders, (e) officers, directors, principals, members, employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals of the DIP Lenders, First Lien Pre-Petition Secured Credit Facility Lenders and First Lien Ad Hoc Committee, (f) Creditors Committee members, their officers, directors, principals, members employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and the professionals to the Creditors Committee, and (g) those certain vendors and contract counterparties identified in writing (whether specifically or by category) by the Debtors to the Litigation Trustee on or before the Effective Date.

***Exit Facility***

means that certain exit financing facility to be entered into by the Reorganized Debtors on or prior to the Effective Date on terms substantially similar to those included in the Plan Supplement, the obligations under which shall be secured by a first priority security interest in substantially all of the Reorganized Debtors' assets.

***Fee Claims***

means an Administrative Claim under section 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date (including reasonable expenses of the members of the Creditors Committee incurred as members of the Creditors Committee in discharge of their duties as such), but specifically excluding the fees and expenses of the Ad Hoc First Lien Committee Advisors and the professionals of the DIP Administrative Agent and the First Lien Pre-Petition Administrative Agent.

***Final DIP Order***

means the order entered by the Court on February 14, 2012 and appearing at Docket No. 225 in the Chapter

9

|  | 11 Cases, as it may be amended from time to time, approving the DIP Credit Facility. |
| --- | --- |
| *Final Order* | means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such Court, the operation or effect of which has not been stayed, reversed, vacated or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending. |
| *Fire Mountain* | means Fire Mountain Restaurants, LLC. |
| *Fire Mountain Leasing* | means Fire Mountain Leasing Company, LLC. |
| *First Lien Credit Linked Deposit Account* | shall have the meaning ascribed to Credit Linked Deposit Account in the First Lien Pre-Petition Secured Credit Facility. |
| *First Lien PF L/C Commitments* | shall have the meaning ascribed to PF L/C Commitments in the First Lien Pre-Petition Secured Credit Facility. |
| *First Lien PF L/C Issuer* | shall have the meaning ascribed to Issuing Bank in the First Lien Pre-Petition Secured Credit Facility. |
| *First Lien PF L/C Loans* | shall have the meaning ascribed to PF LC Loans in the First Lien Pre-Petition Secured Credit Facility. |
| *First Lien PF Letter of Credit Facility Claims* | means any Claim of the First Lien Pre-Petition Secured Credit Facility Lenders on account of (i) the First Lien PF L/C Loans existing as of the Effective Date, and (ii) First Lien PF L/C Commitments outstanding as of the Effective Date. |
| *First Lien Pre-Petition Administrative Agent* | means Credit Suisse AG, Cayman Islands Branch, in its capacity as Administrative Agent under the First Lien Pre-Petition Secured Credit Facility. |
| *First Lien Pre-Petition Administrative Agent Fee Claims* | means all Claims, to the extent not already paid, for the reasonable and documented fees and expenses of the First Lien Pre-Petition Administrative Agent under the First Lien Pre-Petition Secured Credit Facility, including without limitation the reasonable and documented fees and expenses of counsel to the First Lien Pre-Petition Administrative Agent without any requirement for the filing of retention applications or fee applications in the Chapter 11 Cases, but with the requirements set forth in the Final DIP Order. |

10

| | |
|---|---|
| ***First Lien Pre-Petition Administrative Agent Indemnity Claims*** | means all Claims of the First Lien Pre-Petition Administrative Agent for Indemnification Obligations arising, but only to the extent provided, under the First Lien Pre-Petition Secured Credit Facility. |
| ***First Lien Pre-Petition Secured Credit Facility*** | means that certain Credit Agreement (First Lien) dated as of April 28, 2009, as amended and restated on April 22, 2010 and as further amended from time-to-time, among Buffets, Inc., Buffets Restaurants Holdings, Inc., Buffets Holdings, Inc., the lenders named therein, Credit Suisse AG, Cayman Islands Branch, as Administrative Agent and Collateral Agent, and Credit Suisse Securities (USA) LLC, as Sole Bookrunners and Sole Lead Arrangers. |
| ***First Lien Pre-Petition Secured Credit Facility Claims*** | means all Claims arising under or relating to the First Lien Pre-Petition Secured Credit Facility and all agreements and instruments relating thereto, including the First Lien Term Loans, the First Lien PF L/C Loans to the extent existing as of the Effective Date and the First Lien PF L/C Commitments outstanding as of the Effective Date.  For the avoidance of doubt, First Lien Pre-Petition Secured Credit Facility Claims include First Lien Pre-Petition Administrative Agent Fee Claims and First Lien Pre-Petition Administrative Agent Indemnity Claims. |
| ***First Lien Pre-Petition Secured Credit Facility Lenders*** | means the lender-parties under the First Lien Pre-Petition Secured Credit Facility. |
| ***First Lien Term Loans*** | shall have the meaning ascribed to Term Loans in the First Lien Pre-Petition Secured Credit Facility. |
| ***General Unsecured Claim*** | means a Claim against any of the Debtors that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Fee Claim, DIP Financing Claim, Ad Hoc First Lien Committee Fee Claim, First Lien Pre-Petition Secured Credit Facility Claim, Other Secured Claim, Second Lien Pre-Petition Secured Credit Facility Claim, Workers' Compensation Claim or Automobile Liability Claim and shall include, without limitation, to the extent not one of the foregoing Claims, (a) Claims of employees of the Debtors, (b) Claims arising as a result of the rejection by any of the Debtors of executory contracts or unexpired leases pursuant to section 365 of the Bankruptcy Code, (c) Claims arising as a result of pre-Petition Date litigation against any of the Debtors that are not subordinated under section 510(b) of the Bankruptcy Code and (d) Claims |

11

|  | of vendors, suppliers and/or customers. |
|---|---|
| *Governmental Unit* | has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code. |
| *HomeTown* | means HomeTown Buffet, Inc. |
| *HomeTown Leasing* | means HomeTown Leasing Company, LLC. |
| *Impaired* | means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code. |
| *Indemnification Obligation* | means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution pursuant to charter, by-laws, contract, or otherwise; provided, however, that such term shall not include any obligation that constitutes a subordinated Claim. |
| *Initial Distribution Date* | means the Effective Date or as soon thereafter as practicable, but no later than thirty (30) days after the Effective Date. |
| *Insider* | has the meaning set forth in section 101(31) of the Bankruptcy Code. |
| *Insured Claim* | means any Claim or portion of a Claim, other than Workers' Compensation Claims and Automobile Liability Claims, that is insured under the Debtors' insurance policies, but only to the extent of such coverage. |
| *Intercompany Claims* | means any Claim held by one of the Debtors against any other Debtor, including, without limitation, (a) any account reflecting intercompany book entries by such Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor, and (c) any derivative Claim asserted or assertable by or on behalf of such Debtor against any other Debtor. |
| *Lien* | has the meaning set forth in section 101(37) of the Bankruptcy Code. |
| *Litigation Trust* | means the trust to be created on the Effective Date pursuant to the Litigation Trust Agreement. |
| *Litigation Trust Agreement* | means the trust agreement to be entered into pursuant to Article VII.C, substantially in the form to be included in the Plan Supplement. |
| *Litigation Trust Cash Component* | means $4,000,000 of Cash to be transferred by the Debtors to the Litigation Trust on the Effective Date; provided that, as more fully set forth in the Litigation Trust Agreement, the Litigation Trustee shall return to |

12

| | |
|---|---|
| | the Reorganized Debtors such amount, if any, of the initial $4,000,000 Litigation Trust Cash Component to the extent it exceeds the sum of (x) ten percent (10%) of the aggregate amount of Allowed General Unsecured Claims plus (y) the expenses of the Litigation Trust (including reasonable fees of the Litigation Trustee and its professionals); and provided further that the Litigation Trustee shall not be required to return more than $2,000,000 of the Litigation Trust Cash Component pursuant to the foregoing proviso. |
| *Litigation Trust Interests* | means the beneficial interests in the Litigation Trust granted to holders of Allowed General Unsecured Claims, which interests shall entitle the holders, in the aggregate, to the Litigation Trust Proceeds. |
| *Litigation Trust Proceeds* | means, net of the expenses of the Litigation Trust including fees of the Litigation Trustee and its professionals, (i) the Litigation Trust Cash Component and any interest or earnings thereon, (ii) the net proceeds of the Transferred Avoidance Actions after payment of costs incident to the litigation, and (iii) in the event of a sale of the Debtors or a sale of all or substantially all of the Debtors' assets on or before the Effective Date, 10% of the net proceeds of the sale in excess of $200,000,000. |
| *Litigation Trustee* | means the Person designated by the Creditors Committee, in accordance with the Plan and the Litigation Trust Agreement.  The identity of the Litigation Trustee shall be disclosed in the Plan Supplement. |
| *Management Incentive Plan* | means the post-Effective Date management incentive plan referenced in Article V.E of this Plan, the terms of which will be determined by the New Board of BRHI. |
| *New Board* | means the Boards of Directors of Reorganized BRHI, Buffets and Buffets Holdings to be constituted as of the Effective Date pursuant to Article V.B of the Plan, to be disclosed at or before the Confirmation Hearing. |
| *New BRHI Common Stock* | means the common stock in Reorganized Buffets Restaurants Holdings, Inc. that will be issued by Buffets Restaurants Holdings, Inc. pursuant to the Plan. |
| *New Subsidiary Equity Interests* | means with respect to a particular Reorganized Debtor, the Equity Interests in such Reorganized Debtor that may be issued pursuant to Articles V.A and VII.B of the Plan. |

13

| | |
|---|---|
| *OCB Leasing* | means OCB Leasing Company, LLC. |
| *OCB Purchasing* | means OCB Purchasing Co. |
| *OCB Restaurant* | means OCB Restaurant Company, LLC. |
| *Ordinary Course Administrative Claims* | means Administrative Claims against the Debtors that represent liabilities (a) to sellers of goods or services on account of such seller's provision of goods and/or services and (b) that were incurred in the ordinary course of business by the Debtors, including, without limitation, Administrative Claims of the California Franchise Tax Board. |
| *Other Priority Claim* | means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code (other than Administrative Claims and Priority Tax Claims), including, without limitation, certain allowed employee compensation and benefit claims of the Debtors' employees incurred within one hundred eighty (180) days prior to the Petition Date. |
| *Other Secured Claims* | means any Claim (other than the DIP Financing Claims, the First Lien Pre-Petition Secured Credit Facility Claims, and the Second Lien Pre-Petition Secured Credit Facility Claims) to the extent reflected in the Schedules or a proof of claim filed as a Secured Claim, which is secured by a Lien on Collateral) to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff. |
| *Person* | means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, or any other entity. |
| *Petition Date* | means January 18, 2012. |
| *Plan* | means this Plan, as it may be amended or modified from time to time, together with all addenda, exhibits, schedules or other attachments, if any. |
| *Plan Supplement* | means the supplemental appendix to this Plan, to be filed no later than seven (7) calendar days prior to the commencement of the Confirmation Hearing, which will contain, among other things, draft forms or signed copies, as the case may be, of the Plan Supplement |

14

01:12241884.2

| | Documents. |
|---|---|
| **Plan Supplement Documents** | means the forms of documents to be executed, delivered, and/or performed in connection with the consummation of this Plan, including those specified in Article X.K of the Plan. |
| **Plan Support Agreement** | means that certain Plan Support Agreement, dated as of January 18, 2012, by and among the Debtors and the Requisite Consenting Parties, as amended, supplemented or otherwise modified from time to time. |
| **Priority Tax Claim** | means any unsecured Claim that is entitled to a priority in right of payment under section 507(a)(8) of the Bankruptcy Code. |
| **Professional** | means (i) any professional employed in the Chapter 11 Cases pursuant to section 327, 328 or 1103 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b) of the Bankruptcy Code but excluding professionals for the DIP Administrative Agent, the First Lien Pre-Petition Administrative Agent and the Ad Hoc First Lien Committee. |
| **Pro Rata** | means, with respect to any Claim, at any time, the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims (including Disputed Claims) in such Class, unless in each case the Plan provides otherwise. |
| **Record Date** | means, (a) for purposes of making distributions under the Plan on account of Allowed Claims, the Confirmation Date, and (b) for purposes of casting Ballots, the date set forth in the order approving the Disclosure Statement that accompanies this Plan. |
| **Released Parties** | has the meaning assigned to such term in Article VIII.J of the Plan. |
| **Reorganized BRHI** | means Buffets Restaurants Holdings, Inc. or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date. |
| **Reorganized Debtors** | means the Debtors, or any successors thereto by merger, consolidation, or otherwise, on and after the Effective Date. |
| **Reorganized Subsidiaries** | means the Subsidiaries, collectively, on or after the Effective Date. |
| **Requisite Consenting Parties** | means, as of the relevant time, the Requisite Consenting |

15

|  | Parties as such term is defined in the Plan Support Agreement. |
|---|---|
| ***Reserved Shares*** | has the meaning ascribed to such term in Article IV.B.2 of the Plan. |
| ***Ryan's Restaurant Group*** | means Ryan's Restaurant Group, Inc. |
| ***Ryan's Restaurant Leasing*** | means Ryan's Restaurant Leasing Company, LLC. |
| ***Scheduled*** | means, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Schedules. |
| ***Schedules*** | means the schedules of assets and liabilities, statements of financial affairs, and lists of holders of Claims and Equity Interests filed with the Court by each of the Debtors, including any amendments or supplements thereto. |
| ***Schedule of Additional Assumed Leases*** | means that certain schedule to be included in the Plan Supplement Documents that specifically designates certain executory contracts and/or unexpired leases as contracts or leases to be assumed pursuant to the Plan. |
| ***Schedule of Additional Rejected Contracts and Leases*** | means that certain schedule to be included in the Plan Supplement Documents that specifically designates certain executory contracts and/or unexpired leases as contracts or leases to be rejected pursuant to the Plan. |
| ***Second Lien Credit Linked Deposit Account*** | means Credit Linked Deposit Account as such term is defined in the Second Lien PF Letter of Credit Facility. |
| ***Second Lien PF L/C Issuer*** | shall have the meaning ascribed to Issuing Bank in the Second Lien Pre-Petition Secured Credit Facility. |
| ***Second Lien PF L/C Commitments*** | shall have the meaning ascribed to PF LC Commitments in the Second Lien Pre-Petition Secured Credit Facility. |
| ***Second Lien PF L/C Loans*** | shall have the meaning ascribed to PF L/C Loans in the Second Lien Pre-Petition Secured Credit Facility. |
| ***Second Lien PF Letter of Credit Facility Claims*** | means any Claim of the Second Lien Pre-Petition Secured Credit Facility Lenders on account of (i) the Second Lien PF L/C Loans existing as of the Effective Date, and (ii) Second Lien PF L/C Commitments outstanding as of the Effective Date. |
| ***Second Lien Pre-Petition Secured Credit Facility*** | means that certain Credit Agreement (Second Lien) dated as of April 28, 2009, as amended, among Buffets, Inc., Buffets Restaurant Holdings, Inc., Buffets Holdings, Inc., the lenders named therein and Credit Suisse AG, Cayman Islands Branch, as Administrative |

16

|  |  |
|---|---|
|  | and Collateral Agent. |
| *Second Lien Pre-Petition Administrative Agent* | means Wilmington Trust, National Association, in its capacity as successor administrative agent under the Second Lien Pre-Petition Secured Credit Facility. |
| *Second Lien Pre-Petition Secured Credit Facility Claims* | means all Claims arising under or relating to the Second Lien Pre-Petition Secured Credit Facility and all agreements and instruments relating thereto, including, without limitation, the Second Lien PF Letter of Credit Facility Claims. |
| *Second Lien Pre-Petition Secured Credit Facility Lenders* | means the lender-parties under the Second Lien Pre-Petition Secured Credit Facility. |
| *Shareholders Agreement* | shall have the meaning ascribed to it in Article VII.J. of the Plan. |
| *Subsidiaries* | means Buffets Holdings, Inc., Buffets, Inc., HomeTown Buffet, Inc., OCB Purchasing Co., OCB Restaurant Company, LLC, Buffets Franchise Holdings, LLC, Buffets Leasing Company, LLC, Ryan's Restaurant Group, Inc., Ryan's Restaurant Leasing Company, LLC, HomeTown Leasing Company, LLC, OCB Leasing Company, LLC, Fire Mountain Restaurants, LLC, Fire Mountain Leasing Company, LLC, Tahoe Joe's, Inc., and Tahoe Joe's Leasing Company, LLC |
| *Tahoe Joe's* | means Tahoe Joe's, Inc. |
| *Tahoe Joe's Leasing* | means Tahoe Joe's Leasing Company, LLC. |
| *Transferred Avoidance Actions* | means all Avoidance Actions, other than the Excluded Avoidance Actions, that will be transferred to the Litigation Trust on the Effective Date pursuant to section 1123 of the Bankruptcy Code. |
| *Trust Advisory Board* | means the board that is to be created pursuant to Article VII.E of this Plan for the purpose of advising the Litigation Trustee with respect to decisions affecting the Litigation Trust. |
| *Workers' Compensation Claim* | means a Claim held by a current or former employee of the Debtors for workers' compensation insurance coverage under the workers' compensation laws applicable in the particular state in which the employee is or was employed by the Debtors. |

### B.    Interpretation, Application of Definitions and Rules of Construction.

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the

17

01:12241884.2

masculine, feminine or neuter gender shall include the masculine, feminine and neuter, such meanings to be applicable to both the singular and plural forms of the terms defined. Capitalized terms in the Plan that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. Any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. The rules of construction set forth in section 102 of the Bankruptcy Code (except for section 102(5))shall apply to this Plan. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### A.     Introduction.

All Claims and Equity Interests, except Administrative Claims, Priority Tax Claims, DIP Financing Claims and Fee Claims are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, DIP Financing Claims and Fee Claims, as described below, have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

1. **Unclassified Claims (not entitled to vote on the Plan).**

   (a)     Administrative Claims.

   (b)     Fee Claims.

   (c)     Priority Tax Claims.

   (d)     DIP Financing Claims.

18

2. **Unimpaired Classes of Claims (deemed to have accepted the Plan and, therefore, not entitled to vote on the Plan).**

   (a)      Class 1: Other Priority Claims.

   Class 1 consists of all Other Priority Claims.

   (b)      Class 3: Other Secured Claims.

   Class 3 consists of all Other Secured Claims.

3. **Impaired Classes of Claims (entitled to vote on the Plan).**

   (a)      Class 2: First Lien Pre-Petition Secured Credit Facility Claims

   Class 2 consists of all First Lien Pre-Petition Secured Credit Facility Claims.

   (b)      Class 4: Second Lien Pre-Petition Secured Credit Facility Claims.

   Class 4 consists of all Second Lien Pre-Petition Secured Credit Facility Claims.

   (c)      Class 5: General Unsecured Claims.

   Class 5 consists of all General Unsecured Claims.

4. **Impaired Class of Interests (not entitled to vote on the Plan).**

   (a)      Class 6: Equity Interests.

   Class 6 consists of all Equity Interests.

## III.

## TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.      **Administrative Claims.**

Each holder of an Allowed Administrative Claim shall receive from the Debtors (a) Cash in an amount equal to the amount of such Allowed Administrative Claim on the later of the Effective Date and the date such Administrative Claim becomes an Allowed Administrative

Claim, or as soon thereafter as is practicable, or (b) such other treatment as the Debtors and such holder shall have agreed upon in writing; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in full in the ordinary course of business of the Reorganized Debtors in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions; and provided, further, that Ad Hoc First Lien Committee Fee Claims and First Lien Pre-Petition Administrative Agent Fee Claims shall be paid in full in Cash on the Effective Date, without any requirement for the filing of fee applications with the Court, but in accordance with the Final DIP Order.

**B.**      **Bar Dates for Administrative Claims.**

Unless a prior date has been established pursuant to the Bankruptcy Code, the Bankruptcy Rules or a prior order of the Court, the Confirmation Order will establish a bar date for filing applications for allowance of Administrative Claims (except for (i) Fee Claims, (ii) Ordinary Course Administrative Claims, (iii) the post-petition claims of the First Lien Pre-Petition Administrative Agent under the First Lien Pre-Petition Secured Credit Facility, (iv) the post-petition claims of the DIP Administrative Agent under the DIP Credit Facility, (v) the fees and expenses of the professionals of the First Lien Pre-Petition Administrative Agent under the First Lien Pre-Petition Secured Credit Facility and the DIP Administrative Agent under the DIP Credit Facility, (vi) the Ad Hoc First Lien Committee Fee Claims, (vii) DIP Financing Claims, and (viii) First Lien Pre-Petition Administrative Agent Indemnity Claims) (collectively (i) - (viii) shall hereinafter be referred to as the "Excluded Administrative Claims"), which date will be the first business day that is thirty (30) days after the Confirmation Date. Holders of Administrative Claims, except Excluded Administrative Claims not paid prior to the Confirmation Date shall submit requests for payment on or before the applicable Administrative Claims Bar Date or forever be barred from doing so. The notice of confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth the Administrative Claims Bar Date and constitute good and sufficient notice of the Administrative Claims Bar Date. The Reorganized Debtors shall have 120 days (or such longer period as may be allowed by order of the Court, which may be entered without notice or a hearing) following the Administrative Claims Bar Date to review and object to all Administrative Claims.

**C.**      **Fee Claims.**

All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, and counsel to the Creditors Committee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than forty-five (45) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the requesting party no later than seventy-five (75) days after the Effective Date.

01:12241884.2

### D.    Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtors, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, but no later than thirty (30) days after the Effective Date, or (b) through equal annual installment payments in cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim; (ii) over a period ending not later than 5 years after the Petition Date; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan.

### E.    DIP Financing Claims.

On or before the Effective Date, holders of DIP Financing Claims shall receive payment in full in Cash of all DIP Financing Claims and such Claims otherwise shall be treated in accordance with the terms of the DIP Credit Facility, except to the extent that the holders of DIP Financing Claims agree to a different treatment.  Notwithstanding anything to the contrary contained herein, the liens and security interests securing the DIP Financing Claims shall continue in full force and effect until the DIP Financing Claims have been paid in full in Cash, unless the holders of the DIP Financing Claims agree to a different treatment.

## IV.

## TREATMENT OF CLAIMS AND
## EQUITY INTERESTS

### A.    Class 1 — Other Priority Claims.

#### 1.    Distributions.

Except to the extent that a holder of an Allowed Other Priority Claim shall have agreed in writing to a different treatment, in full and final satisfaction of such Claim, each holder of an Allowed Other Priority Claim in Class 1 shall receive payment in an amount equal to such Allowed Other Priority Claim in full in Cash as soon as practicable after the later of the Effective Date and the date when such Other Priority Claim becomes an Allowed Other Priority Claim.

#### 2.    Impairment and Voting.

Class 1 is unimpaired under the Plan.  Holders of Allowed Other Priority Claims in Class 1 are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan.

### B.    Class 2 — First Lien Pre-Petition Secured Credit Facility Claims.

#### 1.    Allowance.

The First Lien Pre-Petition Secured Credit Facility Claims shall be deemed Allowed Claims and shall not be subject to any avoidance, reductions, setoff, offset,

21

recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense, disallowance, impairment, objection or any challenges under any applicable law or regulation by any Person, in an aggregate amount set forth in the Final DIP Order.

## 2.    Distributions.

Except to the extent that a holder of a First Lien Pre-Petition Secured Credit Facility Claim shall have agreed in writing to a different treatment, each holder of a First Lien Pre-Petition Secured Credit Facility Claim in Class 2 shall receive, in full satisfaction of such Claim, on or as soon as reasonably practicable after the Effective Date, the following treatment: its Pro Rata share of: (i) on account of First Lien Term Loans and any First Lien PF L/C Loans that are made prior to the Effective Date, 100% of the New BRHI Common Stock, subject to dilution on account of (a) the Management Incentive Plan, and (b) the Reserved Shares; and (ii) on account of First Lien PF L/C Commitments outstanding as of the Effective Date, but only in the event and to the extent that the related letters of credit issued under the First Lien Pre-Petition Secured Credit Facility are drawn following the Effective Date, such number of shares of New BRHI Common Stock that would have been distributed to the First Lien Pre-Petition Secured Credit Facility Lenders providing such commitments had amounts on deposit in the First Lien Credit Linked Deposit Account related to such commitments been disbursed and additional First Lien PF L/C Loans made prior to the Effective Date ("the "Reserved Shares").

Notwithstanding the foregoing treatment, (i) all amounts on deposit in the First Lien Credit Linked Deposit Account not disbursed prior to the Effective Date and equal to the balance of the related letters of credit outstanding under the First Lien Pre-Petition Secured Credit Facility as of the Effective Date shall remain on deposit following the Effective Date until the earlier of April 22, 2015 or any such earlier date upon which such letters of credit have been retired, returned or cancelled undrawn to support such outstanding letters of credit and any draws thereon on or following the Effective Date, and (ii) in the event and to the extent such letters of credit are retired, returned or cancelled undrawn on or following the Effective Date and the funds in the First Lien Credit Linked Deposit Account are not ultimately used to satisfy draws on such letters of credit, (a) the corresponding amount on deposit in the First Lien Credit Linked Deposit Account held to support the Debtors' reimbursement obligation under such letters of credit will be returned by the First Lien PF L/C Issuer on a Pro Rata basis to the providers of the First Lien PF L/C Commitments outstanding as of the Effective Date, and (b) the Reserved Shares held on account of the amounts in the First Lien Credit Linked Deposit Account so returned shall be distributed Pro Rata to the holders of First Lien Term Loans, the holders of First Lien PF L/C Loans made prior to the Effective Date, and the providers of the First Lien PF L/C Commitments outstanding as of the Effective Date but only in the event and to the extent the related letters of credit issued under the First Lien Pre-Petition Secured Credit Facility are drawn following the Effective Date.

## 3.    Impairment and Voting.

Class 2 is impaired under the Plan.  The holders of First Lien Pre-Petition Secured Credit Facility Claims in Class 2 are entitled to vote to accept or reject the Plan.

22

01:12241884.2

C.    **Class 3 — Other Secured Claims.**

1.    **Distributions.**

Except to the extent that a holder of an Allowed Other Secured Claim shall have agreed in writing to a different treatment, at the sole option of the Debtors, in full and final satisfaction of such claim, (i) each Allowed Other Secured Claim shall be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default, (ii) each holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of (a) thirty (30) days after Effective Date, and (b) the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable (but no later than thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim) or (iii) each holder of an Allowed Other Secured Claim shall receive the Collateral securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, in full and complete satisfaction of such Allowed Other Secured Claim as soon as is practicable, on the later of (y) thirty (30) days after Effective Date and (z) the date such Other Secured Claim becomes an Allowed Other Secured Claim.

Notwithstanding the foregoing, to the extent an Allowed Other Secured Claim arises on account of property taxes, such Allowed Other Secured Claim shall be treated as Priority Tax Claims, and any applicable liens shall remain unimpaired until such Allowed Other Secured Claim is paid in full. Any applicable interest shall be calculated in a manner consistent with Section 511 of the Bankruptcy Code.

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Distributions under the Plan.

2.    **Impairment and Voting.**

Class 3 is unimpaired under the Plan. The holders of Allowed Other Secured Claims in Class 3 are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan.

D.    **Class 4 — Second Lien Pre-Petition Secured Credit Facility Claims.**

1.    **Distributions.**

Except to the extent that a holder of a Second Lien Pre-Petition Secured Credit Facility Claim shall have agreed in writing to a different treatment, each holder of a Second Lien

23

Pre-Petition Secured Credit Facility Claim in Class 4 shall receive, in full satisfaction of such Claim, its Pro Rata share of amounts received by the Second Lien Pre-Petition Administrative Agent in accordance with the following: (i) all amounts on deposit in the Second Lien Credit Linked Deposit Account not disbursed prior to the Effective Date and equal to the balance of the related letters of credit outstanding under the Second Lien Pre-Petition Secured Credit Facility as of the Effective Date shall remain on deposit following the Effective Date to support such outstanding letters of credit and any draws thereon following the Effective Date (including, for the avoidance of doubt, through and including the date to which any such letters of credit are extended or renewed); (ii) all amounts on deposit in the Second Lien Credit Linked Deposit Account in excess of the amounts described in the preceding clause (with the exception of $20,000, which shall be held by the Deposit Agent (as defined in the Second Lien Pre-Petition Secured Credit Facility) for the payment of any fees, expenses, costs and liabilities incurred by the Deposit Agent or the Issuing Bank (as defined in the Second Lien Pre-Petition Secured Credit Facility) in connection with any such letters of credit) shall be transferred to the Second Lien Pre-Petition Administrative Agent on the Effective Date and (iii) in the event and to the extent such letters of credit expire on their own terms or are retired, returned or cancelled undrawn on or following the Effective Date and the funds in the Second Lien Credit Linked Deposit Account are not ultimately used (whether before or after the Effective Date) to satisfy draws on the letters of credit issued under the Second Lien Pre-Petition Secured Credit Facility, the corresponding amount on deposit in the Second Lien Credit Linked Deposit Account held to support the Debtors' reimbursement obligation under such letters of credit (with the exception of the Credit-Linked Deposit Cost Amount as such term is defined in the Second Lien Pre-Petition Secured Credit Facility) will be transferred to the Second Lien Pre-Petition Administrative Agent as such amounts become available. Once the Second Lien Pre-Petition Administrative Agent has been paid all of its fees, cost, and expenses (as well as the reasonable fees, costs, and expenses of its outside counsel) out of such amounts, to the extent permitted under the Second Lien Pre-Petition Secured Credit Facility, including, without limitation section 9.05 thereof, the Second Lien Pre-Petition Administrative Agent shall distribute the amounts received to holders of Second Lien Pre-Petition Secured Credit Facility Claims in a manner consistent with the Second Lien Pre-Petition Secured Credit Facility. In the event and to the extent that the letters of credit under the Second Lien Pre-Petition Secured Credit Facility are drawn and the funds in the Second Lien Credit Linked Deposit Account are used to satisfy such letters of credit, holders of Second Lien PF Secured Credit Facility Claims shall not receive any distribution under this Plan or from the Second Lien Pre-Petition Administrative Agent on account of the amounts so drawn.

### 2. Impairment and Voting.

Class 4 is impaired under the Plan. Each holder of an Allowed Second Lien Pre-Petition Secured Credit Facility Claim in Class 4 is entitled to vote to accept or reject the Plan.

### E. Class 5 — General Unsecured Claims.

### 1. Distributions.

Except to the extent that a holder of an Allowed General Unsecured Claim shall have agreed in writing to a different treatment, each holder of an Allowed General Unsecured Claim in Class 5 shall be deemed to receive its Pro Rata share of the Litigation Trust Interests.

24

The Litigation Trust Interests shall entitle the holders of Allowed General Unsecured Claims to receive, on such date or dates determined in accordance with the Litigation Trust Agreement, their Pro Rata share of the Litigation Trust Proceeds. Under no circumstances shall any holder of an Allowed General Unsecured Claim receive more than payment in full of such Claim. Insured Claims that are also General Unsecured Claims shall be treated like all other General Unsecured Claims except to the extent affected by Article VII.G.3 of the Plan.

### 2. **Impairment and Voting.**

Class 5 is impaired under the Plan. Each holder of an Allowed General Unsecured Claim in Class 5 is entitled to vote to accept or reject the Plan.

### F. **Class 6 — Equity Interests.**

### 1. **Distributions.**

The holders of Equity Interests in BRHI shall neither receive distributions nor retain any property under the Plan on account of such Equity Interests. At the Reorganized Debtors' option, the Equity Interests in each Debtor, other than BRHI, shall either be (i) cancelled, or (ii) reinstated.

### 2. **Impairment and Voting.**

Class 6 is impaired under the Plan. The holders of Equity Interests in BRHI are presumed to reject the Plan and are not entitled to vote to accept or reject the Plan.

### V.

### PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS

### A. **Amendments to Certificates of Incorporation.**

### 1. **Buffets Restaurants Holdings, Inc.**

On the Effective Date, or as soon thereafter as is practicable, the certificate of incorporation of BRHI shall be amended to (i) authorize the issuance of the New BRHI Common Stock, (ii) provide for the cancellation of all outstanding Equity Interests in BRHI other than the New BRHI Common Stock, and (iii) prohibit the issuance of nonvoting equity securities only so long as, and to the extent that, the issuance of nonvoting equity securities is prohibited. Reorganized BRHI is authorized to issue or cause to be issued the New BRHI Common Stock for distribution in accordance with the terms of this Plan and the Amended Certification of Incorporation without the need for any further corporate or shareholder action.

### 2. **The Subsidiaries.**

On the Effective Date, the certificate of incorporation of each Reorganized Debtor (other than BRHI) shall be amended to prohibit the issuance of nonvoting equity securities only

25

so long as, and to the extent that, the issuance of nonvoting equity securities is prohibited.  In addition, in the event the Reorganized Debtors determine to cancel the outstanding Equity Interests of the Subsidiaries, the certificate of incorporation of each Reorganized Debtor shall be amended to (i) provide for the cancellation of all outstanding Equity Interests in the respective Debtor, and (ii) authorize the issuance of the New Subsidiary Equity Interests in the applicable Reorganized Debtor.

### 3.     Securities to Be Issued Pursuant to the Plan.

On the Effective Date, Reorganized BRHI shall issue the New BRHI Common Stock and, in the event the Equity Interests in the Subsidiaries are being cancelled, the Reorganized Debtors other than Reorganized BRHI shall issue the New Subsidiary Equity Interests.

### B.     Appointment of Officers and Directors.

The initial boards of directors of Reorganized BRHI, Buffets and Buffets Holdings, shall be seven-member boards comprised of: (i) six directors jointly designated by the Debtors and the Ad Hoc First Lien Committee; and (ii) one other director who shall be the Chief Executive Officer of Buffets.  The initial boards of directors of the Reorganized Subsidiaries, other than Buffets and Buffets Holdings, shall be comprised of three members, each of whom also shall be a member of the New Board.  The identities, affiliations and the amount of compensation of the initial board members and initial officers of each Reorganized Debtor as of the Effective Date will be disclosed at or prior to the Confirmation Hearing.  Any successors to the Reorganized Debtors' initial boards will be appointed in compliance with the applicable Reorganized Debtor's bylaws, articles of incorporation or other applicable corporate formation and governance documents.

### C.     Powers of Officers.

The officers of the Debtors or the Reorganized Debtors, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

### D.     Management of Reorganized Debtors.

The officers of the Reorganized Debtors shall be reasonably acceptable to the Ad Hoc First Lien Committee.  The Reorganized Debtors' officers shall serve in accordance with any employment agreement with the Reorganized Debtors and applicable non-bankruptcy law.  The Debtors will disclose the terms of any such employment agreements at or prior to the Confirmation Hearing.

### E.     Reorganized Debtors' Management Incentive Plan.

Following the Effective Date and subject to the approval of the New Board of BRHI, the Management Incentive Plan shall become effective in accordance with its terms.  Pursuant to the Management Incentive Plan, up to 8% of the shares of the New BRHI Common

Stock, on a fully diluted basis, shall be reserved for issuance and distribution in accordance with the Management Incentive Plan.

### F.   Indemnification of Directors, Officers and Employees.

Upon the Effective Date, the charters and by-laws of Reorganized BRHI and each Reorganized Debtor shall contain provisions which (i) eliminate the personal liability of the Debtors' and the Reorganized Debtors' then-present and future directors and officers for post-Effective Date monetary damages resulting from breaches of their fiduciary duties to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized; and (ii) require such Reorganized Debtor, subject to appropriate procedures, to indemnify the Reorganized Debtors' directors, officers, and other employees (as such employees are identified by the New Board) serving on or after the Effective Date for all post-Effective Date claims and actions to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized.

### G.   Corporate Reorganization.

Except as otherwise set forth herein, or as modified by appropriate corporate action after the Effective Date, the corporate structure and equity ownership of the Debtors and their Subsidiaries shall be unchanged.

### H.   Corporate Action.

Except as set forth herein, any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of incorporation and by-laws, the issuance of securities and instruments or the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security holders.

The Debtors, the Reorganized Debtors and the Litigation Trustee, as appropriate, shall be authorized to execute, deliver, file, and record such documents (including the Plan Supplement Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Court, corporate, board or shareholder approval or action. In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or stockholders of the applicable Reorganized Debtor.

27

01:12241884.2

# VI.

## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

Solely in connection with Distributions to be made to the holders of Allowed Claims, the Plan is predicated upon, and it is a condition precedent to confirmation of the Plan, that the Court provide in the Confirmation Order for the substantive consolidation of the Estates of the Debtors into a single Estate for purposes of this Plan and the Distributions hereunder. To the extent a Claim (including any Disputed Claim) becomes an Allowed Claim, such Claim shall be satisfied in accordance with the provisions of the Plan.

Pursuant to the Confirmation Order, upon the Effective Date and without further order of the Court, except as expressly provided herein, (i) all assets and liabilities of the substantively consolidated Debtors will be deemed to be merged solely for purposes of this Plan and Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the substantively consolidated Debtors solely for purposes of this Plan and Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the substantively consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and distributions made by any Debtor hereunder will be deemed to be made by the substantively consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the substantively consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of assets available for distribution to such Class without regard to which Debtor was originally liable for such Claim. Notwithstanding the foregoing, such substantive consolidation shall not affect (a) the legal and corporate structure of the Reorganized Debtors, (b) guarantees that are required to be maintained post-Effective Date (i) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed, (ii) pursuant to the express terms of the Plan, or (iii) in connection with the Exit Facility, or (c) the Liens and security interests securing the First Lien Pre-Petition Secured Credit Facility Claims. The substantive consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6). Such obligations shall continue until an order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

Unless the Court has approved the substantive consolidation of the Estates by a prior order, the Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Estates as set forth in this Plan. If no objection to substantive consolidation under this Plan is timely filed and served, then the holders of Claims will be deemed to have consented to substantive consolidation for the purpose of this Plan only and the Court may approve substantive consolidation of the Debtors' Estates in the Confirmation Order. If such objection to the substantive consolidation provided for in this Plan is timely filed and served, a hearing with respect to the substantive consolidation of the Estates and the objections

28

thereto shall be scheduled by the Court, which hearing may coincide with the Confirmation Hearing.

## VII.

## PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING, DISTRIBUTIONS, AND TREATMENT OF DISPUTED CLAIMS

### A.   Exit Facility.

On or prior to the Effective Date, the Debtors shall have closed on the Exit Facility. The amounts borrowed under the Exit Facility shall be used, to the extent necessary, to (i) pay in full in Cash the DIP Financing Claims, (ii) make required Distributions under the Plan, (iii) satisfy certain Plan-related expenses, (iv) fund the Reorganized Debtors' working capital needs, and (v) fund the Litigation Trust Cash Component.

### B.   Issuance of New BRHI Common Stock and New Subsidiary Equity Interests.

On the Effective Date, Reorganized BRHI shall issue and distribute the New BRHI Common Stock pursuant to the terms of this Plan and the Plan Supplement Documents and in the event the Equity Interests in the Subsidiaries are cancelled pursuant to Article V.A. of this Plan, each Reorganized Subsidiary shall issue and distribute the New Subsidiary Equity Interests. Except as otherwise provided herein, the ownership and terms of the New Subsidiary Equity Interests shall be the same as the ownership and terms of the Equity Interests in the Subsidiaries immediately prior to the Effective Date.

### C.   Restructuring Transactions

On or before the Effective Date, the Debtors may, with the consent of the Requisite Consenting Lenders and on three (3) business days prior written notice to counsel to the Creditors Committee, provided there are no material adverse tax consequences to the Debtors and no material adverse consequences to holders of General Unsecured Claims, (i) cause any or all of the Debtors to be merged into one or more of the Debtors, dissolved, or otherwise consolidated, (ii) cause the transfer of assets between and among the Debtors, (iii) convert or change the corporate form of any Debtor, or (iv) engage in any other transaction in furtherance of the Plan. Any such transaction shall be effective pursuant to the Confirmation Order without any further action by the stockholders or directors of any of the Debtors.

### D.   Litigation Trust.

The Litigation Trust Agreement shall become effective on the Effective Date. In accordance with the Litigation Trust Agreement, the Litigation Trust shall be administered by the Litigation Trustee, who shall be designated by the Creditors Committee. Subject to the Litigation Trust Agreement, the Litigation Trustee shall serve from and after the Effective Date until completion of its responsibilities. This Section VII.D. sets forth certain of the rights, duties and obligations of the Litigation Trustee and the terms of the Litigation Trust, all of which will be more fully described in the Litigation Trust Agreement. In the event of any conflict between

29

the terms of this Section VII.D. and the terms of the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall govern.

### 1.     Duties and Powers of the Litigation Trust and Litigation Trustee.

The Litigation Trust shall be established solely for the purposes provided for in the Litigation Trust Agreement, which shall include (i) administering, maintaining and ultimately distributing the Litigation Trust Proceeds in accordance with the Plan, (ii) providing for the prosecution, collection, compromise and settlement of the Transferred Avoidance Actions and (iii) determining, objecting to and resolving objections to unliquidated and Disputed General Unsecured Claims.  Such rights, powers and duties granted to the Litigation Trustee shall vest on the Effective Date without the need to obtain further Court approval.  The Litigation Trustee, in its discretion and in consultation with the Trust Advisory Board, may settle any Disputed General Unsecured Claim by providing the holder of such Claim an immediate Cash Distribution on the Allowed amount of such Claim up to the proximate estimated amount of the projected Distribution to holders of Allowed General Unsecured Claims without further order of the Court.  The Litigation Trustee shall pursue, litigate, compromise or abandon the Transferred Avoidance Actions with the objective of maximizing the return to holders of Allowed General Unsecured Claims, in accordance with the Litigation Trust Agreement, and pay all associated costs.  The Litigation Trustee shall not effectuate any Distribution to a holder of an Allowed Claim if the holder of the Allowed Claim is also the subject of a Transferred Avoidance Action that has not been satisfied, abandoned, or subject to a judgment solely in such Claimant's favor.  None of the Debtors or the Reorganized Debtors shall have any liability for any cost or expense of the Litigation Trust following the Effective Date.  The Litigation Trustee shall distribute the Litigation Trust Proceeds in accordance with the Litigation Trust Agreement and the terms of the Plan.  For the avoidance of doubt, the Litigation Trustee shall return the excess portion, if any, of the Litigation Trust Cash Component to the Reorganized Debtors, as provided in the definition of Litigation Trust Cash Component.

### 2.     Transfer by Debtors to Litigation Trust.

On the Effective Date, the Debtors shall transfer, assign, deliver and distribute to the Litigation Trust all right, title and interest in the Transferred Avoidance Actions and the Litigation Trust Cash Component.  Subject to the terms of the Plan and the Litigation Trust Agreement, the Litigation Trust and the Litigation Trustee shall, on the Effective Date, be vested with and succeed to all rights, privileges, immunities, title and interest of the Debtors in and to the Transferred Avoidance Actions and the Litigation Trust Cash Component.  Upon such transfer, the Debtors, the Debtors' Estates, and the Reorganized Debtors shall have no other further rights or obligations with respect thereto.  In addition, on the Effective Date, the Litigation Trust and the Litigation Trustee shall be vested with and succeed to all of the applicable Debtor's rights of setoff, credits, credit balances, defenses, and any right with respect to the adjustment to General Unsecured Claims but only to the extent such rights (i) existed as of or related to the period prior to the Petition Date, and (ii) do not exceed the Allowed amount of the applicable General Unsecured Claim.  Notwithstanding the foregoing, the Reorganized Debtors shall make available to the Litigation Trustee (subject to appropriate confidentiality and

30

privilege arrangements) reasonable access during normal business hours, upon reasonable notice, to personnel and books and records of the Reorganized Debtors to enable the Litigation Trustee to perform the Litigation Trustee's tasks under the Litigation Trust Agreement and the Plan, and the Debtors and the Reorganized Debtors shall permit the Litigation Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access to information related to the Transferred Avoidance Actions and the unliquidated and Disputed General Unsecured Claims that is reasonably requested by the Litigation Trustee, as more specifically set forth in the Litigation Trust Agreement. With respect to the Insured Claims, the Reorganized Debtors shall also make available to the Litigation Trustee reasonable access and cooperation during normal business hours to personnel responsible for administering the Claims, in addition to access to books and records of the Debtors or the Reorganized Debtors, including any incident files or other documents related to the Insured Claims. The Litigation Trustee shall also have the authority (subject to the Debtors' insurance policies) to work directly with the Debtors' insurers, claims adjusters, third party administrators and agents with respect to the reconciliation, allowance, settlement, and/or prosecution of the Insured Claims and the Reorganized Debtors will reasonably cooperate with the Litigation Trustee to assist with such efforts. Notwithstanding anything to the contrary herein, the Reorganized Debtors will not be required to incur any expenses in discharging its commitments set forth in this paragraph. Interests in the Litigation Trust shall be uncertificated and shall be non-transferable except upon death of the interest holder or by operation of law.

### 3.   Funding of Litigation Trust.

The expenses of the Litigation Trust, including the fees of the Litigation Trustee, shall be funded solely from the Litigation Trust Cash Component and any proceeds received by the Litigation Trust from the Transferred Avoidance Actions and any pre-Effective Date sale of the Debtors or any pre-Effective Date sale of all or substantially all of the Debtors' assets, and shall not otherwise be funded by the Debtors or the Reorganized Debtors.

### 4.   Retention of Professionals by the Litigation Trustee.

The Litigation Trustee may retain counsel and other professionals to assist in its duties, on such terms as the Litigation Trustee deems appropriate, without Court approval.

### 5.   Termination of Litigation Trustee.

Upon the final resolution of the Transferred Avoidance Actions, the distribution of any and all Litigation Trust Proceeds, and completion of the Litigation Trustee's responsibilities, the Litigation Trustee shall be relieved of further responsibility.

### E.   The Trust Advisory Board

1.   Subject to the provisions of the Litigation Trust Agreement, the Trust Advisory Board shall be comprised of up to five (5) members which shall be designated by the Creditors Committee. The Litigation Trustee shall consult regularly with the Trust Advisory Board when carrying out the purpose and intent of the Litigation Trust. Members of the Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses

31

01:12241884.2

incurred by them in carrying out the purpose of the Trust Advisory Board, which shall be payable by the Litigation Trust.

2.      In the case of an inability or unwillingness of any member of the Trust Advisory Board to serve, such member may be replaced by designation of the remaining members of the Trust Advisory Board.

3.      Upon the final resolution of the Transferred Avoidance Actions and the distribution of the Litigation Trust Proceeds, and the completion of the Litigation Trustee's responsibilities, the members of the Trust Advisory Board shall be deemed to resign their positions, whereupon they shall be discharged from further duties and responsibilities.

4.      The Trust Advisory Board may remove the Litigation Trustee in its discretion. In the event the requisite approval necessitated by the Litigation Trust Agreement or documents related thereto is not obtained, the Litigation Trustee may be removed by the Court for cause shown. In the event of the resignation or removal of the Litigation Trustee, the Trust Advisory Board shall, by majority vote, designate a person to serve as successor Litigation Trustee. The identity of any successor Litigation Trustee shall be promptly disclosed in a filing with the Court.

5.      Notwithstanding anything to the contrary in the Plan, neither the Trust Advisory Board nor any of its members, designees, counsel, financial advisors or any duly designated agent or representatives of any such party shall be liable for the act, default or misconduct of any other member of the Trust Advisory Board, nor shall any member be liable for anything other than such members' own gross negligence or willful misconduct. The Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Trust Advisory Board determines not to consult with counsel, accountants or other professionals, such action or omission shall not be deemed to impose any liability on the Trust Advisory Board, or its members and/or designees.

6.      The Trust Advisory Board shall govern its proceedings through the adoption of bylaws, which the Trust Advisory Board shall adopt by majority vote.

F.      **Voting of Claims.**

Each holder of an Allowed Claim in an Impaired Class of Claims entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.

G.      **Distributions.**

1.      **Allowed Claims.**

(a)      *Delivery of Distributions.* Distributions under the Plan shall be made by the Reorganized Debtors or their designee or the Litigation Trustee, as

32

applicable, to the holders of Allowed Claims in all Classes at the addresses set forth on the Schedules, unless such addresses are superseded by proofs of claim or transfers of claim filed pursuant to Bankruptcy Rule 3001 by the Record Date (or at the last known addresses of such holders if the Debtors, the Reorganized Debtors, or the Litigation Trustee, as applicable, have been notified in writing of a change of address). Notwithstanding any Final Order requirement with respect to Allowed Claims, the California Franchise Tax Board shall be entitled to receive distributions on its claims once its claims are determined by an order or judgment of a court of competent jurisdiction, including the Court, the operation of which has not been stayed, reversed, vacated or amended.

(b)   *Distribution of Cash.*  Any payment of Cash by the Reorganized Debtors or the Litigation Trustee pursuant to the Plan shall be made at the option and in the sole discretion of the Reorganized Debtors or Litigation Trustee, as applicable, by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Reorganized Debtors or Litigation Trustee, as applicable.

(c)   *Unclaimed Distributions of Cash.*  Any distribution of Cash under the Plan that is unclaimed after six months after it has been delivered (or attempted to be delivered) shall become the property of the Reorganized Debtor or the Litigation Trustee, as applicable, against which such Claim was Allowed notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder such unclaimed Allowed Claim to such distribution or any subsequent distribution on account of such Allowed Claim shall be extinguished and forever barred.

(d)   *Saturdays, Sundays, or Legal Holidays.*  If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

(e)   *Fractional New BRHI Common Stock, and De Minimis Distributions.*  Notwithstanding any other provision in the Plan to the contrary, no fractional interests of New BRHI Common Stock shall be issued or distributed pursuant to the Plan. Whenever any payment of a fraction of a share of New BRHI Common Stock would otherwise be required under the Plan, the actual distribution made shall reflect a rounding of such fraction to the nearest whole share (up or down), with shares less than half shares being rounded down and fractions equal to half shares or greater than half shares being rounded up. If two or more holders are entitled to equal fractional entitlements and the number of holders so entitled exceeds the number of whole shares, as the case may be, which remain to be allocated, the Reorganized Debtors shall allocate the remaining whole shares to such holders by random lot or such other impartial method as the Reorganized Debtors deems fair, in the Reorganized Debtors' sole discretion. Upon the allocation of all of the whole New BRHI Common Stock authorized under the Plan, all remaining fractional portions of the entitlements shall be canceled and shall be of no further force and effect.

The Debtors or the Reorganized Debtors or the Litigation Trustee, as the case may be, shall not be required to, but may in their sole and absolute discretion, make distributions to

33

any holder of a Claim of Cash in an amount less than $25. In addition, the Debtors and the Reorganized Debtors or Litigation Trustee shall not be required to, but may in their sole and absolute discretion, make any payment on account of any Claim in the event that the costs of making such payment exceeds the amount of such payment.

(f)    *Distributions for Claims Allowed as of the Initial Distribution Date*. On the Initial Distribution Date, the Reorganized Debtors shall distribute Cash, New BRHI Common Stock, or Collateral, as the case may be, to the holders of Allowed Claims as contemplated herein.

(g)    *Distributions as of the Record Date.* As of the close of business on the Record Date, the claims register (for Claims) and transfer ledger (for Equity Interests) shall be closed, and there shall be no further changes in the record holders of any Claims or Equity Interests. The Debtors, the Reorganized Debtors and the Litigation Trustee shall have no obligation to, but may in their sole and absolute discretion, recognize any transfer of any Claims or Equity Interests occurring after the Record Date. The Debtors, the Reorganized Debtors and the Litigation Trustee shall instead be entitled to recognize and deal for purposes under the Plan with only those record holders stated on the claims register (for Claims) and transfer ledgers (for Equity Interests) as of the close of business on the Record Date.

(h)    *Interest on Claims*. Except as specifically provided for in the Plan with respect to Priority Tax Claims or Other Secured Claims, no Claims (including Administrative Claims), Allowed or otherwise, except for Administrative Claims of the California Franchise Tax Board of a kind specified under section 503(b)(1)(B) or (C), shall be entitled, under any circumstances, to receive any interest on a Claim.

## 2.    **Objections To And Resolution Of Claims.**

The Reorganized Debtors shall have the exclusive right to make and to file objections to, or otherwise contest the allowance of, Administrative Claims (other than Fee Claims) and Claims subsequent to the Confirmation Date other than unliquidated and/or Disputed General Unsecured Claims which shall be the exclusive right of the Litigation Trustee. Unless otherwise ordered by the Court, objections to, or other proceedings concerning the allowance of, Administrative Claims and Claims shall be filed and served upon the holders of the Administrative Claims or Claims as to which the objection is made, or otherwise commenced, as the case may be, as soon as practicable, but in no event later than the Claims Objection Deadline. Objections to Fee Claims shall be filed and served within seventy-five (75) days of the Effective Date (or such longer period as may be allowed by order of the Court).

Objections to, or other proceedings contesting the allowance of, Administrative Claims and Claims may be litigated to judgment, settled or withdrawn, in the sole discretion of the Reorganized Debtors or the Litigation Trustee, as applicable. The Debtors or the Litigation Trustee, as appropriate, may settle any such objections or proceedings without Court approval or may seek Court approval without notice to any Person.

Unless an order of the Court specifically provides for a later date, any party filing a proof of Claim after the bar date established by the Court shall not be entitled to treatment as a creditor with respect to such Claim for the purposes of voting on and distribution under the Plan,

34

unless and until the party filing such Claim either obtains the written consent of the Reorganized Debtors or the Litigation Trustee, as appropriate, to file such Claim late or obtains an order of the Court upon written motion on notice to the Reorganized Debtors or the Litigation Trustee, as appropriate, that permits the filing of the Claim.  In the event any proof of Claim is permitted to be filed after the Claims Objection Deadline, the Reorganized Debtors or the Litigation Trustee, as appropriate, shall have ninety (90) days from the date of such order or agreement to object to such Claim, which deadline may be extended by the Court on motion of the Reorganized Debtors or the Litigation Trustee, as appropriate, without a hearing or notice to Creditors.

### 3.   Special Provisions Regarding Insured Claims, Workers' Compensation Claims and Automobile Liability Claims.

Notwithstanding anything to the contrary in the Disclosure Statement, Plan or the Confirmation Order (including, without limitation, any provision that purports to be preemptory or supervening or grants an injunction or release) other than as provided in Article VII.G.4.:

(a)   distributions under the Plan to each holder of an Insured Claim that is also a General Unsecured Claim shall be in accordance with the treatment provided under the Plan for General Unsecured Claims; *provided, however,* that

(i)   to the extent a holder has an Allowed Insured Claim, all or a portion of which is within the applicable self-insured retention or deductible (other than deductibles under the ACE Insurance Program) of the relevant insurance policy of the Debtors, then such holder shall have an Allowed General Unsecured Claim for the amount which is within the applicable self-insured retention or deductible (other than deductibles under the ACE Insurance Program) of the relevant insurance policy of the Debtors;

(ii)   to the extent a holder has an Allowed Insured Claim, a portion of which exceeds the limits of coverage available from the relevant insurance policies of the Debtors, such holder shall have an Allowed General Unsecured Claim in the amount by which such Allowed Insured Claim exceeds the limits of coverage available from the Debtors' relevant insurance policies;

(iii)   any final settlement of or judgment on account of an Allowed Insured Claim, all or a portion of which is within the applicable self-insured retention or deductible (other than deductibles under the ACE Insurance Program) of the relevant insurance policy of the Debtors, shall be satisfied first by the application of the full amount of Debtors' self-insured retention or deductible (other than deductibles under the ACE Insurance Program) under the relevant insurance policy, as though such self-insured retention or deductible were paid in full dollar for dollar, in cash (up to the amount of the settlement or judgment), even though the self-insured retention or deductible may be satisfied by way of a Distribution under the Plan in another form or amount, and regardless of the value of such Distribution under the Plan;

(iv)   an Allowed Insured Claim shall not be valid or enforceable against the Debtors' insurers unless and until, among other things, the applicable self-insured retention or deductible (other than deductibles under the ACE Insurance Program) has been satisfied in accordance with the Plan by a Distribution under the Plan by the Debtors (or

35

after the Effective Date, the Reorganized Debtors) or the Litigation Trust, as applicable, on account of a Claim equal to the full amount of the self-insured retention or deductible;

(v)     the Debtors' insurers shall have no duty or obligation to pay any amount within the self-insured retention or deductible (other than deductibles under the ACE Insurance Program) of any insurance policy of the Debtors except as may be required by law;

(vi)     to the extent the Debtors, the Litigation Trust and/or the Debtors' insurers have an obligation to satisfy any Insured Claim, in whole or in part, in accordance with the Plan, applicable general liability policy or law, each Allowed Insured Claim that is not a Workers' Compensation Claim or Automobile Liability Claim shall be adjusted, settled and/or paid in accordance with the terms of the applicable insurance policies of the Debtors, subject to the terms, conditions, self-insured retentions or deductibles and limits of such policies and subject to the Plan;

(vii)     each Automobile Liability Claim or Workers' Compensation Claim shall be adjusted, settled and/or paid in the ordinary course in accordance with the terms of the applicable insurance policies of the Debtors, subject to the terms, conditions and limits of such policies without the need or requirement for the claimant, the insurer or third party administrator to seek relief from the automatic stay or Plan injunction to the extent applicable; and

(viii)     nothing in this section shall constitute a waiver of any Causes of Action the Debtors or the Litigation Trustee, as applicable, may hold against any Person, including the Debtors' insurance carriers or a waiver of any rights, claims and defenses the insurers may have.  Nothing in this section is intended to, shall, or shall be deemed to preclude any holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any distribution such holder may receive under the Plan or to preclude any insurer from contesting or asserting defenses to the claims of such holders.  The Debtors and the Litigation Trustee, as applicable, do not waive, and expressly reserve their rights to assert that any insurance policy proceeds are property of the Estates to which they are entitled and the insurers expressly reserve their rights to contest or assert defenses to any such assertion by the Debtors.  Nothing in the Disclosure Statement, Plan, or Confirmation Order shall be construed as, or is, a determination as to coverage in connection with any Insured Claim under any applicable insurance policy.

(b)     none of the Disclosure Statement, Plan, or Confirmation Order shall: (a) modify the coverage provided under the Debtors' insurance policies, (b) except as provided for in the Plan, alter in any way the rights and obligations of the Debtors' insurers under their policies, or (c) except as provided in the Plan, alter in any way the rights and obligations of the Debtors (or after the Effective Date, the Reorganized Debtors) or the Litigation Trustee, as applicable, under the insurance policies, including, without limitation, any duty of the Debtors or the Litigation Trustee, as applicable, to defend, at their own expense, against claims asserted under the insurance policies.  The Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtors (or after the Effective Date, the Reorganized Debtors) and the Litigation

36

01:12241884.2

Trustee, as applicable, the existence, primacy, and/or scope of available coverage under any alleged applicable policy. Nothing in the Disclosure Statement, Plan or Confirmation Order in any way permits any holder of a Workers' Compensation Claim, Automobile Liability Claim or an Insured Claim to recover the same amounts from the insurers and any other party including, but not limited to, the Debtors or the Reorganized Debtors, or the Litigation Trustee. Nothing in the Disclosure Statement, Plan, or Confirmation Order shall modify the rights of the Debtors' insurers with respect to the maintenance or use of any letters of credit, or other collateral and security provided to them, in connection with liabilities arising under the applicable insurance agreements.

## 4.   Provisions Regarding ACE Insurance Program

Notwithstanding anything to the contrary in the Disclosure Statement, Plan or the Confirmation Order (including, without limitation, any provision that purports to be preemptory or supervening or grants an injunction or release):

(a)     on the Effective Date, the applicable Debtors and the applicable Reorganized Debtors shall assume the ACE Insurance Program in accordance with Bankruptcy Code § 365 and shall cure all defaults related to such assumption;

(b)     the ACE Insurance Program, all letters of credit and other collateral or security previously provided pursuant thereto and the debts, obligations, and liabilities of Debtors (and after the Effective Date, the Reorganized Debtors) thereunder shall survive and shall not be amended, modified, waived or impaired in any respect by the Plan, the Confirmation Order or otherwise without the prior written agreement of the ACE Companies except as may be provided in the ACE Insurance Program;

(c)     as of the Effective Date, the applicable Reorganized Debtors shall be liable for all of the applicable Debtors' obligations and liabilities, whether now existing or hereafter arising, under the ACE Insurance Program;

(d)     the claims of the ACE Companies arising under the ACE Insurance Program (i) shall be Allowed Administrative Claims, (ii) shall be due and payable in the ordinary course of business by the Debtors (or after the Effective Date, by the Reorganized Debtors) without any requirement for the ACE Companies to file or serve proof(s) of claim, cure amount claim or objection, or a motion or application for payment of Administrative Claim, and (iii) shall not be discharged or released by the Plan or the Confirmation Order;

(e)     nothing in the Disclosure Statement, Plan or Confirmation Order in any way: (i) alters, modifies or amends the terms and conditions of the ACE Insurance Program or the coverage provided thereunder or the rights and obligations of the Debtors (or after the Effective Date, the Reorganized Debtors) and the ACE Companies thereunder and under applicable non-bankruptcy law; (ii) discharges, releases or relieves the Debtors (or on or after the Effective Date, the Reorganized Debtors) from any debt or other liability under the ACE Insurance Program or (iii) limits, diminishes, or otherwise alters or impairs the Debtors', Reorganized Debtors' and/or the ACE Companies' defenses, claims, Causes of Action, or other rights under applicable non-bankruptcy law with respect to the ACE Insurance Program;

37

01:12241884.2

(f)    the injunction set forth in Article VIII.F. of the Plan and the automatic stay of section 362(a) of the Bankruptcy Code, if and to the extent applicable, shall be lifted, without further order of the Bankruptcy Court, to permit (i) holders of valid Workers' Compensation Claims and Automobile Liability Claims that are covered by the ACE Insurance Program to proceed with their claims and (ii) the ACE Companies to administer, handle, defend, settle and/or pay all Workers' Compensation Claims and Automoble Liability Claims arising under the ACE Insurance Program and the costs related thereto without further order of the Bankruptcy Court subject and pursuant to the terms and conditions of the ACE Insurance Program; and

(g)    notwithstanding any of the foregoing, Insured Claims that are covered by a policy with a self-insured retention as part of the ACE Insurance Program shall be treated as set forth in Section VII.G.3 of the Plan.

## 5.    Alternate Claim Resolution Procedures

The Debtors and/or the Creditors Committee, as applicable, may file as part of the Plan Supplement, alternative dispute resolution-based claim resolution procedures applicable to certain contingent, unliquidated or disputed claims (other than Workers' Compensation Claims and Automobile Liability Claims), which, as amended, shall become a part of the Plan and become effective on the Effective Date. Notwithstanding anything to the contrary in this Plan, with the consent of the Debtors, Creditors Committee and the Requisite Consenting Parties, not to be unreasonably withheld, the Debtors or the Creditors Committee may amend such procedures after the Confirmation Date or seek separate authorization from the Court for approval and implementation of such alternative claim resolution procedures after the Confirmation Hearing.

## 6.    The Reserved Shares.

The Reserved Shares shall be held in trust for distribution pursuant to Article IV.B.2., shall not constitute property of the Reorganized Debtors, and shall not have any voting rights unless and until such shares are distributed in accordance with the Plan. The Reorganized Debtors shall pay, or cause to be paid, out of any dividends paid on account of Reserved Shares while held in trust, any tax imposed on the reserve by any Governmental Unit with respect to income generated by such reserve and any costs associated with maintaining the reserve. Any New BRHI Common Stock held in reserve shall be transferred by the Reorganized Debtors, in a supplemental distribution, Pro Rata, in accordance with Article IV.B.2., provided, however, that, to the extent such Pro Rata allocation results in a distribution of less than one share of New BRHI Common Stock to over fifty per cent (50%) of holders entitled to such distribution, the Reorganized Debtors shall have no obligation to make such distribution and all then-undistributed Reserved Shares shall be cancelled and the entitlement of any Person thereto shall be extinguished and forever barred.

## 7.    Distributions Following Allowance.

Notwithstanding anything to the contrary set forth herein, each holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall

38

receive the Distribution to which such holder of an Allowed Claim is entitled at such time that the Reorganized Debtors or the Litigation Trustee, as appropriate, determine, in their discretion, to make subsequent Distributions to holders of other Claims Allowed following the Initial Distribution Date. Nothing set forth herein is intended to, nor shall it, prohibit the Debtors or the Litigation Trustee, as appropriate, in their discretion, from making a Distribution on account of any Claim at any time after such Claim becomes an Allowed Claim.

### 8.    Cancellation and Surrender of Existing Securities and Agreements.

Notwithstanding any other provision of the Plan, as a condition precedent to receiving any distribution under the Plan, each holder of a promissory note, or other instrument or security evidencing a Claim (other than First Lien Pre-Petition Secured Credit Facility Claims, Second Lien Pre-Petition Secured Credit Facility Claims and DIP Financing Claims) must tender such promissory note or other instrument or security to the Reorganized Debtors or their designee or must execute and deliver an affidavit of loss and furnish an indemnity or bond in substance and amount reasonably satisfactory to the Reorganized Debtors.

Any holder of a Claim (other than First Lien Pre-Petition Secured Credit Facility Claims, Second Lien Pre-Petition Secured Credit Facility Claims and DIP Financing Claims) that fails to surrender such instrument or to provide the affidavit and indemnity or bond within six months of the date such holder would have been entitled to receive a distribution under the Plan shall be deemed to have forfeited all rights and/or Claims and may not receive or participate in any distribution under the Plan.

### H.    Estimation.

The Debtors, Reorganized Debtors, or the Litigation Trustee, as applicable, may at any time, request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors, the Reorganized Debtors, or the Litigation Trustee have previously objected to such Claim. The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim. In the event that the Court estimates any Disputed Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to the Plan, or (c) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors, the Reorganized Debtors, or the Litigation Trustee as the case may be, may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

### I.    Nonconsensual Confirmation.

The Debtors will seek to have the Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

01:12241884.2

**J.      Intercompany Claims.**

At the option of the Debtors, with the consent of the Requisite Consenting Parties, or the Reorganized Debtors, as applicable, each Intercompany Claim shall be, either (i) reinstated and continued in full or in part, or (ii) eliminated in full or in part by offset, distribution, cancellation, assumption or contribution of such Intercompany Claim or otherwise; provided, however, that no Intercompany Claim shall be Allowed as a General Unsecured Claim or be payable from the Litigation Trust.

**K.      New Shareholders Agreement.**

On the Effective Date, Reorganized BRHI and all of the holders of New BRHI Common Stock (including any options, warrants or securities convertible into, or exercisable or exchangeable for, shares of New BRHI Common Stock) then outstanding shall be deemed to be parties to a new shareholders agreement (the "Shareholders Agreement"), substantially in the form contained in the Plan Supplement, without the need for execution by any such holder other than Reorganized BRHI.  The Shareholders Agreement shall be binding on all parties receiving, and all holders of, New BRHI Common Stock (including any options, warrants or securities convertible into, or exercisable or exchangeable for, shares of New BRHI Common Stock) regardless of whether such parties execute the Shareholders Agreement. In the period pending distribution of the New BRHI Common Stock to any holder entitled pursuant to this Plan to receive New BRHI Common Stock, such holder shall be bound by, have the benefit of, and be entitled to enforce the terms and conditions of the Shareholders Agreement and shall be entitled to exercise any voting rights and receive any dividends or other distributions payable in respect of such holder's New BRHI Common Stock (including receiving any proceeds of permitted transfers of such New BRHI Common Stock) and to exercise all other rights in respect of the New BRHI Common Stock (so that such holder shall be deemed for tax purposes to be the owner of the New BRHI Common Stock).

The Shareholders Agreement shall provide for, among other things, minority shareholders to receive, on customary terms, tag-along rights, preemptive rights, information rights and piggyback registration rights. The minority shareholders shall be subject to, on customary terms, forced sale provisions and transfer restrictions (subject to exceptions relating to transfers to affiliates).

**L.      Liens.**

(a)     Notwithstanding anything to the contrary contained herein, the substantive consolidation of the Debtors pursuant to Article VI of this Plan shall not affect the extent or validity of any Lien.

(b)     Upon the treatment or other satisfaction of any secured Claims in accordance with the Plan, the Liens securing such secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

40

## M.     Enforcement of Subordination.

The classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall enjoin, effective as of the Effective Date, all persons and entities from enforcing or attempting to enforce any such contractual, legal and/or equitable rights so satisfied, compromised and settled.

## VIII.

## EFFECT OF CONFIRMATION OF THE PLAN

## A.     Continued Corporate Existence.

The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement. The Reorganized Debtors shall be responsible for filing required post-confirmation reports and each Reorganized Debtor shall pay quarterly fees of such Debtor due to the Office of the United States Trustee until such time as a final decree is entered closing the applicable Chapter 11 Case or the Bankruptcy Code orders otherwise.

41

**B.      Settlement of Treatment of General Unsecured Claims**

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the Plan constitutes a good faith compromise and settlement of the rights and claims, if any, that the holders of Claims may have against the Released Parties. Any Distributions to be made pursuant to the Plan shall be made on account, and in consideration, of the compromise and settlement provided hereunder, which upon the Effective Date shall be binding on the holders of Claims (whether or not Allowed). The entry of the Confirmation Order shall constitute the Court's approval, as of the Effective Date, of the settlement and the Court's finding that the settlement is in the best interests of the Debtors and their Estates. Notwithstanding anything to the contrary (except as provided in Section VIII.E.) nothing in this VIII.B. shall apply to the California Franchise Tax Board.

**C.      Dissolution of Creditors Committee.**

The Creditors Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code. Thereafter, the Creditors Committee shall continue in existence until the latest of: (1) the Effective Date; and (2) the conclusion of any appeals or other challenges or matters with respect to the Confirmation Order. On the latest of such dates, the Creditors Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors Committee's attorneys, financial advisors, and other agents shall terminate; provided, however, such attorneys and financial advisors shall be entitled to pursue their own Fee Claims and represent the Creditors Committee in connection with the review of and the right to be heard in connection with all Fee Claims. Following the Confirmation Date, in accordance with the foregoing, (x) the attorneys and financial advisors to the Creditors Committee shall be entitled to request any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Confirmation Date through and including the dissolution of the Committee in connection with the services to the Creditors Committee and (y) the members of the Creditors Committee shall be entitled to reimbursement of their reasonable expenses incurred in connection with their exercise of the foregoing duties and responsibilities. The Reorganized Debtors shall pay, within ten (10) Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable claims for compensation or reimbursement of expenses incurred by the professionals of the Creditors Committee. If the Reorganized Debtors dispute the reasonableness of any such invoice, the Reorganized Debtors or the affected professional may submit such dispute to the Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

**D.      Vesting of Property.**

The property of the Debtors' estates shall be revested in the Reorganized Debtors on the Effective Date.

01:12241884.2

### E.     Discharge of the Debtors.

The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Debtors in Possession, the Reorganized Debtors or any of their respective assets or properties, arising prior to the Effective Date. Except as otherwise expressly specified in the Plan, the Confirmation Order shall act as of the Effective Date as a discharge of all debts of, Claims against, and Liens on the Debtors, their respective assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim with respect thereto was filed, whether the Claim is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a distribution hereunder.  Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such discharged Claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.  Notwithstanding anything to the contrary, nothing in this Section VIII.E. shall apply to claims of the kind described in 11 U.S.C. § 1141(d)(6).

### F.     Injunction.

Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Reorganized Debtors or the Litigation Trustee, with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors or the Litigation Trustee on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors or the Litigation Trustee or against the property or interests in property of the Debtors or the Litigation Trustee on account of any such Claim, and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from the Debtors, the Reorganized Debtors or the Litigation Trustee or against the property or interests in property of the Debtors on account of any such Claim. Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtors) or the Litigation Trustee and their respective properties and interests in property.  Such injunction shall not apply in respect of Ordinary Course Administrative Claims, the First Lien Pre-Petition Administrative Agent's and DIP Administrative Agent's fees and their professionals' fees and expenses, and the Ad Hoc First Lien Committee Fee Claims.

ANY PARTY WISHING TO PRESERVE ITS SETOFF RIGHT, MUST FILE, PRIOR TO THE CONFIRMATION DATE, A MOTION FOR RELIEF FROM THE AUTOMATIC STAY SEEKING THE AUTHORITY TO EFFECTUATE SUCH A

43

**SETOFF RIGHT OR HAVE TIMELY FILED A PROOF OF CLAIM WITH THE COURT PRESERVING SUCH SETOFF RIGHT IN SUCH PROOF OF CLAIM OR AMENDMENT THERETO.**

**Notwithstanding anything to the contrary herein, the California Franchise Tax Board 's setoff rights are preserved.**

### G.    Preservation of Causes of Action.

The Reorganized Debtors and the Litigation Trustee, as applicable, shall retain all Causes of Action, other than as expressly provided below. Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such Causes of Action. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Causes of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date that is not specifically waived or relinquished by this Plan. The Reorganized Debtors and the Litigation Trustee, as applicable, shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date by the Reorganized Debtors or the Litigation Trustee, as applicable, to the same extent as if the Chapter 11 Cases had not been commenced.

### H.    Votes Solicited in Good Faith.

The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors (and each of their respective affiliates, agents, directors, officers, members, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities offered and sold under the Plan and therefore have not, and on account of such offer and issuance will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer or issuance of the securities offered and distributed under the Plan.

### I.    Administrative Claims Incurred After the Effective Date.

Obligations incurred by the Reorganized Debtors after the Effective Date including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with any claim holders.

### J.    Releases by the Debtors.

**On the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their estates, shall be deemed to release unconditionally (a) all of their**

44

01:12241884.2

respective officers, current directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals, (b) (i) the DIP Administrative Agent, (ii) the Collateral Agent, the Deposit Agent and the Issuing Bank (each as defined in the DIP Credit Facility), (iii) the First Lien Pre-Petition Administrative Agent, (iv) the PF L/C Issuer, the Issuing Bank, the Deposit Agent, the Lead Arranger and the Collateral Agent (each as defined in the First Lien Pre-Petition Secured Credit Facility), and (v) the Collateral Agent, the Lenders, the Administrative Agent, (including any prior or successor Administrative Agent(s) appointed on or prior to the Effective Date), the Lead Arranger, the Deposit Agent, and the Issuing Bank (each as defined in the Second Lien Pre-Petition Secured Credit Facility), (c) officers, directors, principals, members, employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals of each of the DIP Administrative Agent and the First Lien Pre-Petition Administrative Agent, (d) the DIP Lenders and First Lien Pre-Petition Secured Credit Facility Lenders, (e) officers, directors, principals, members, employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals of the DIP Lenders, First Lien Pre-Petition Secured Credit Facility Lenders and First Lien Ad Hoc Committee, (f) the members of the Creditors Committee, and (g) officers, directors, principals, members employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals of the Creditors Committee (collectively the "Released Parties," and each a "Released Party") from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken solely in their respective capacities described above or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Reorganized Debtors and the Litigation Trustee, as applicable, shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set off or recoupment against any Claims of any such persons asserted against the Debtors, (iii) the foregoing release shall not apply to any obligations that remain outstanding in respect of loans or advances made to individuals by the Debtors, (iv) the foregoing release applies to the Released Parties solely in their respective capacities described above and (v) notwithstanding any other provisions of the Plan, the foregoing release shall not affect the creation of the Litigation Trust.

K.  **Releases by non-Debtors.**

On the Effective Date, all Persons who (a) directly or indirectly, have held, hold, or may hold Claims, (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Reorganized Debtors and the Released Parties not to (y) sue or otherwise seek recovery from any of the Reorganized Debtors or any Released Party on account of any Claim in any way related to the Debtors or their business and affairs, including but not limited to any Claim based upon tort, breach of contract, violations of federal or state securities laws or

45

otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (z) assert against any of the Reorganized Debtors or any Released Party any claim, obligation, right, cause of action or liability that any holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, provided, however, (i) none of the Released Parties shall be released from any Claim primarily based on any act or omission that constitutes gross negligence or willful misconduct as determined by a court of competent jurisdiction, (ii) the foregoing release shall not apply to obligations arising under the Plan, and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan.

### L.    Exculpation and Injunction in Respect of Released Parties.

#### 1.    Exculpation.

The (i) Debtors, the Reorganized Debtors, all of their respective officers, current directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals, and (ii) members of the Creditors Committee, and their representatives, advisors, attorneys, financial advisors, accountants, and other professionals of the Creditors Committee, shall have no liability whatsoever to any holder or purported holder of an Administrative Claim, a Claim, or an Equity Interest for any act or omission in connection with, or arising out of, the Plan, the Disclosure Statement, the Plan Support Agreement, the negotiation of the Plan, the Disclosure Statement or the Plan Support Agreement, the negotiation of the documents included in the Plan Supplement, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of the Plan, the Chapter 11 Cases, the consummation of the Plan, the administration and implementation of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability.

#### 2.    Injunction.

Pursuant to section 105 of the Bankruptcy Code, no holder or purported holder of an Administrative Claim, a Claim or an Equity Interest shall be permitted to commence or continue any action, employment of process, or any act to collect, offset, or recover any Claim against a Released Party that accrued on or prior to the Effective Date and that has been released or waived pursuant to this Plan.

46

### M.   Term of Bankruptcy Injunction or Stays.

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### N.   Preservation of Insurance.

The Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors (including, without limitation, its officers and current and former directors) or any other person or entity. The Debtors shall obtain tail coverage under their existing directors and officers liability insurance policy covering their officers and current directors for any and all Claims brought against them, which coverage shall extend for a period of not less than six (6) years after the Effective Date.

### O.   Indemnification Obligations Owed by the Debtors.

Indemnification Obligations owed to directors, officers, and employees of the Debtors (or the estates of any of the foregoing) who served or were employed by the Debtors as of or after the Petition Date, excluding claims which have been determined by Final Order to have resulted from gross negligence, willful misconduct, breach of fiduciary duty, or intentional tort, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to Sections 365 of the Bankruptcy Code under the Plan; provided that the Reorganized Debtors' liabilities in respect of such obligations shall be limited to the extent of available insurance coverage. In addition, and notwithstanding any other term of the Plan, the Indemnification Obligations owed to the First Lien Pre-Petition Administrative Agent and the PF L/C Issuer, the Issuing Bank, the Deposit Agent, the Lead Arranger and the Collateral Agent (each as defined in the First Lien Pre-Petition Secured Credit Facility) under the First Lien Prepetition Secured Credit Facility, and the Issuing Bank (as defined in the Second Lien Pre-Petition Secured Credit Facility), shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code.

Following the Effective Date, each of the Reorganized Debtors shall jointly and severally indemnify and hold harmless (i) the Ad Hoc First Lien Committee, (ii) the First Lien Pre-Petition Administrative Agent, (iii) the PF L/C Issuer, the Issuing Bank, the Deposit Agent, the Lead Arranger and the Collateral Agent (each as defined in the First Lien Pre-Petition Secured Credit Facility), and (iv) Credit Suisse AG, Cayman Islands Branch, solely in its capacity as, (a) administrative agent under the Second Lien Pre-Petition Secured Credit Facility, and (b) the Issuing Bank (as defined in the Second Lien Pre-Petition Secured Credit Facility), and Credit Suisse Securities (USA) LLC, solely in its capacity as Lead Arranger under the Second Lien Pre-Petition Secured Credit Facility, in an aggregate amount not to exceed $1,000,000 with respect to the indemnities of this clause (iv), and the respective members, affiliates, officers, directors, employees, representatives, successors, permitted assigns, attorneys, advisors and agents of any of the foregoing (the "Indemnitees") from and against any claims, demands, judgments, actions or causes of action, liabilities, obligations, damages, losses,

47

deficiencies, assessments, costs, fines, penalties, interest and expenditures (including the reasonable fees and out-of-pocket expenses of counsel) suffered or incurred by any Indemnitee arising out of, based upon, attributable to or resulting from: (i) any breach or inaccuracy of any representation or warranty made by the Debtors; (ii) any breach or failure by the Debtors to perform any of their respective covenants or obligations contained in the Plan; or (iii) any legal proceedings relating to or arising out of the Plan or the Chapter 11 Cases, in each case except to the extent of the gross negligence or willful misconduct of an Indemnitee (as finally determined by a court of competent jurisdiction).

All Indemnification Obligations owed to directors, officers, and employees of the Debtors who served or were employed by the Debtors prior to, but not after, the Petition Date shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan.

Indemnification Obligations owed to any Professionals retained pursuant to sections 327 or 328 of the Bankruptcy Code and order of the Court, to the extent that such Indemnification Obligations relate to the period after the Petition Date, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code under the Plan.

## IX.

## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes: (1) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (2) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date; (3) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein; (4) to resolve disputes as to the ownership of any Claim or Equity Interest; (5) to hear and determine objections to Claims and to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim; (6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (7) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code; (8) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order; (9) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code; (10) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan; (11) to hear and determine any issue for which the Plan requires a Final Order of the Court; (12) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; (13) to hear and determine disputes arising in connection with compensation

48

and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date; (14) to hear and determine any Causes of Action, including any Avoidance Action, preserved under the Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3); (15) to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge; (16) to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article VIII of the Plan; (17) to enter a final decree closing the Chapter 11 Cases; (18) to hear and determine all matters, controversies, suits, and disputes that may arise out of or in connection with the Litigation Trust, Litigation Trustee and/or the Litigation Trust Agreement; and (19) hear, determine, and adjudicate any and all (x) Claims, including allowance, classification, priority, compromise, estimation or payment, or (y) Transferred Avoidance Actions brought by the Litigation Trustee.

## X.

## MISCELLANEOUS PROVISIONS

### A.     Payment of Statutory Fees.

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date. Each Reorganized Debtor shall pay such fees payable after the Effective Date until such time as a final decree is entered closing the applicable Chapter 11 Case or the Court orders otherwise.

### B.     Modification of the Plan.

Subject to the limitations contained in the Plan and the consent of the Requisite Consenting Parties: (1) the Debtors reserve the right (in consultation with the Creditors Committee with respect to the treatment of holders of General Unsecured Claims and matters pertaining to the Litigation Trust or any other matter affecting the rights of the holders of General Unsecured Claims, and, to the extent such amendments or modifications affect the rights of the DIP Administrative Agent, the DIP Lenders, the First Lien Pre-Petition Administrative Agent or the First Lien Pre-Petition Secured Credit Facility Lenders, with the consent of the DIP Administrative Agent and/or First Lien Pre-Petition Administrative Agent, as applicable, depending upon the affected party) in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, with the consent of the Requisite Consenting Parties (in consultation with the Trust Advisory Board with respect to the treatment of holders of General Unsecured Claims and matters pertaining to the Litigation Trust or any other matter affecting the rights of the holders of General Unsecured Claims, and, to the extent such amendments or modifications affect the rights of the DIP Administrative Agent, the DIP Lenders, the First Lien Pre-Petition Administrative Agent or the First Lien Pre-Petition Secured Credit Facility Lenders, with the consent of the DIP Administrative Agent and/or First Lien Pre-Petition Administrative Agent, as applicable, depending upon the affected party) and upon order of the Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code.

01:12241884.2

## C.    Governing Law.

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules) or the Delaware General Corporation Law, the laws of the State of Delaware (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

## D.    Filing or Execution of Additional Documents.

On or before the Effective Date, the Debtors or the Reorganized Debtors, shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## E.    Withholding and Reporting Requirements.

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors and Litigation Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

## F.    Exemption From Transfer Taxes.

Pursuant to, and to the fullest extent permitted by, section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange under the Plan of New BRHI Common Stock and the security interests in favor of the lenders under the Exit Facility, (b) the making or assignment of any lease or sublease, or (c) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan shall not be subject to any stamp tax or other similar tax.

## G.    Section 1145 Exemption.

Pursuant to, in accordance with, and solely to the extent provided under section 1145 of the Bankruptcy Code, the issuance of the New BRHI Common Stock and distribution thereof to the Debtors' creditors under the Plan will be exempt from registration under applicable securities laws (including without limitation, Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to Section 1145(a) of the Code, and may be sold without registration to the extent permitted under Section 1145 of the Code and is deemed to be a public offering.

## H.    Waiver of Federal Rule of Civil Procedure 62(a).

The Debtors may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

01:12241884.2

## I.      Exhibits/Schedules.

All Exhibits and schedules to the Plan and the Plan Supplement Documents are incorporated into and constitute a part of the Plan as if set forth herein.

## J.      Notices.

All notices, requests, and demands hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

To the Debtors:  Buffets, Inc., 405 Lancaster Avenue, Greer, South Carolina 29650, attention: Scott Irwin, Esq., with a copy to Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of the Americas, New York, New York 10019, attention: Jeffrey D. Saferstein, Esq., Tel: (212) 373-3000 Fax: (212) 757-3990, and a copy to, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, attention:  Pauline K. Morgan, Esq., Tel:  (302) 571-6600, Fax:  (302) 571-1253.

To the Creditors Committee:  In care of Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, attention Scott L. Hazan, Esq. and Jenette A. Barrow-Bosshart, Esq., Tel: (212) 661-9100, Fax: (212) 682-6104 and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, attention Bradford J. Sandler, Esq. and Peter J. Keane, Esq., Tel: (302) 652-4100 and Fax: (302) 652-4400.

To the First Lien Pre-Petition Administrative Agent and DIP Administrative Agent:  In care of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, attention Sal Guerrera, Esq. and Alexandra Margolis, Esq., Tel: (212) 735-3000, Fax: (212) 735-2000; and Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, Wilmington, DE 19801, attention Mark Chehi, Esq. and Kristhy Peguero, Esq., Tel: (302) 651-3000, Fax: (302) 651-3001.

To the Ad Hoc First Lien Committee:  In care of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York, 10019, attention Matthew A. Feldman, Esq. and Paul V. Shalhoub, Esq., Tel: (212) 728-8000, Fax: (212) 728-8111, and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801, attention Bonnie Fatell, Esq., Tel: (302) 425-6400, Fax: (302) 425-6464.

## K.      Plan Supplement.

Forms of the Plan Supplement Documents (which may be in substantially final form) or term sheets relating to the Exit Facility, the Shareholders Agreement, the Schedule of Additional Rejected Contracts and Leases, the Schedule of Additional Assumed Leases, the Litigation Trust Agreement, the identity of the members of the Trust Advisory Board, amendments to certificates of incorporation and by-laws and the Excluded Avoidance Actions and such other documents as the Debtors determine to be necessary or appropriate to the implementation and/or confirmation of the Plan shall be contained in the Plan Supplement,

51

including, potentially, alternative dispute resolution-based claim resolution procedures, which will be filed with the Clerk of the Court no later than seven (7) calendar days prior to the Confirmation Hearing. The Plan Supplement may be inspected in the office of the Clerk of the Court during normal court hours and shall be available online at "https://ecf.deb.uscourts.gov." Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtors in accordance with Article X.J of the Plan.

## L.      **Conflict.**

The terms of this Plan shall govern in the event of any inconsistency with the summaries of the Plan set forth in the Disclosure Statement.

## XI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.

To the extent not (i) assumed in the Chapter 11 Cases prior to the Confirmation Date, (ii) rejected in the Chapter 11 Cases prior to the Confirmation Date, (iii) subject of a separate motion or subject to the expedited procedures approved by the Court to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date, or (iv) specifically rejected pursuant to this Plan, each executory contract and unexpired lease that exists between Debtor and any Person is specifically assumed by the Debtor that is a party to such executory contract or unexpired lease as of and subject to the Effective Date pursuant to the Plan.

The following executory contracts and unexpired leases are rejected:

(a)      executory contacts or unexpired leases that were rejected before the Confirmation Date;

(b)      employment agreements that were terminated or rejected prior to the Confirmation Date; and

(c)      contracts and unexpired leases identified on the Schedule of Additional Rejected Contracts and Leases in the Plan Supplement, which contracts and unexpired leases are deemed rejected by the applicable Debtor as of the corresponding rejection dates set forth on the Schedule of Additional Rejected Contracts and Leases.

Unexpired leases of nonresidential real property identified on the Schedule of Additional Assumed Leases in the Plan Supplement, are specifically assumed by the applicable Debtor listed on such schedule as of and subject to the Effective Date, and the Confirmation Order shall operate as an order authorizing the Debtors' assumption of the leases set forth on the Schedule of Additional Assumed Leases as may be amended by agreement of the parties thereto, as of and subject to the Effective Date.

## B. Limited Extension of Time to Assume or Reject.

In the event of a dispute as to whether a contract or lease is executory or unexpired, the right of the Debtors or Reorganized Debtors to move to assume or reject such contract or lease, either by motion or pursuant to such expedited procedures as have been approved by the Court, shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Court determining that the contract or lease is executory or unexpired. The deemed assumptions and rejections provided for in this Article XI.B of the Plan shall not apply to such contract or lease.

In the event the Debtors or the Reorganized Debtors become aware after the Effective Date of the existence of an executory contract or unexpired lease that was not included in the Schedules or on the Schedule of Additional Assumed Leases, the right of the Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Debtors or the Reorganized Debtors become aware of the existence of such contract or lease. The deemed assumptions and rejections provided for in this Article XI.B of the Plan shall not apply to any such contract or lease.

The Debtors reserve the right to amend the Schedule of Additional Rejected Contracts and Leases up until three (3) days prior to the Confirmation Hearing and amend the Schedule of Additional Assumed Leases up until the Effective Date.

## C. Cure.

The applicable Reorganized Debtor, except as otherwise agreed by the parties, will cure any and all undisputed defaults under any executory contract or unexpired lease that is assumed by such Reorganized Debtor pursuant to the Plan in accordance with section 365 of the Bankruptcy Code. In the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any executory contract or unexpired lease that the Reorganized Debtors propose to assume, the Reorganized Debtors shall have until thirty (30) days after entry of a Final Order determining the amount, if any, of the applicable Debtor or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume or reject the related executory contract or unexpired lease. In the event the applicable Reorganized Debtor determines to assume the applicable executory contract or unexpired lease related to the disputed cure, such disputes shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the applicable Debtor or the applicable Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

## D. Rejection Damage Claims.

All Claims for damages arising from the rejection of executory contracts or unexpired leases must be filed with the Court in accordance with the terms of the order authorizing such rejection, but in no event later than thirty (30) days after the Effective Date (unless rejected at a later date as a result of a disputed cure amount as set forth in Article XI.C. herein). Any Claims not filed within such time will be forever barred from assertion against the Debtors, their respective estates and the Reorganized Debtors, and the Litigation Trust and the

53

Litigation Trustee. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as General Unsecured Claims, as appropriate under the circumstances.

## XII.

## BENEFIT PLANS

As of and subject to the Effective Date, all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, including agreements and programs subject to section 1114 of the Bankruptcy Code, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, incentive plans, and life, accidental death, and dismemberment insurance plans, but excluding any employment and severance agreements, plans or policies (unless, with the consent of the Requisite Consenting Parties, such employment and severance agreements, plans or policies are assumed by the Debtors pursuant to Court order), shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and the Debtors' obligations under such agreements and programs shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtors' rights under applicable non -bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans specifically rejected pursuant to the Plan, including on the Schedule of Additional Rejected Contracts and Leases (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, contracts, or programs.

## XIII.

## EFFECTIVENESS OF THE PLAN

### A.    Conditions Precedent to Confirmation.

Confirmation of this Plan is subject to the Confirmation Order being in form and substance acceptable to the Debtors and the Requisite Consenting Parties, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

### B.    Conditions Precedent to Effectiveness.

The Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied in full or waived pursuant to Article XIII.B:

(1) the Confirmation Order, in form and substance satisfactory to the Debtors and the Requisite Consenting Parties, the DIP Administrative Agent, the First Lien Pre-Petition Administrative Agent, and the Creditors Committee, shall have become a Final Order;

(2) all authorizations, consents and regulatory approvals required (if any) for the Plan's effectiveness shall have been obtained;

54

(3) the certificates of incorporation for each of the Debtors shall have been amended as provided in Article V.A.1 and 2;

(4) the New BRHI Common Stock, and New Subsidiary Equity Interests to be issued pursuant to Article V.A.3 shall be consistent with the Plan;

(5) each of the Plan Supplement Documents shall be in form and substance satisfactory to the Debtors, the Requisite Consenting Parties, the DIP Administrative Agent and the First Lien Pre-Petition Administrative Agent, and, solely with regards to the Litigation Trust Agreement, the schedule setting forth the identity of the Trust Advisory Board members and any other document relating to the treatment of holders of General Unsecured Claims and matters pertaining to the Litigation Trust or any other matter affecting the rights of the holders of General Unsecured Claims, the Creditors Committee and any conditions (other than the occurrence of the Effective Date or certification by a Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(6) the Plan Support Agreement shall remain in effect and not have been terminated; and

(7) the Reorganized Debtors shall have entered into and consummated the Exit Facility.

## C.     Waiver of Conditions.

The Debtors may waive any of the conditions set forth in Article XIII.B (1), (2), or (5) above at any time with the consent of the Requisite Consenting Parties, the DIP Administrative Agent, the First Lien Pre-Petition Administrative Agent and the Creditors Committee, and without leave of or order of the Court and without any formal action.

## D.     Effect of Failure of Conditions.

In the event that the Effective Date does not occur on or before ninety (90) days after the Confirmation Date, or such later date as may be agreed by the Debtors and the Requisite Consenting Parties, the DIP Administrative Agent and the First Lien Pre-Petition Administrative Agent, in consultation with the Creditors Committee, upon notification submitted by the Debtors to the Court: (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors unless extended by Court order.

55

### E.      Vacatur of Confirmation Order.

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors; (c) prejudice in any manner any right, remedy or claim of the Debtors; or (d) be deemed an admission against interest by the Debtors.

### F.      Revocation, Withdrawal, or Non-Consummation.

#### 1.      Right to Revoke or Withdraw.

Subject to the terms of, and without prejudice to the rights of any party under, the Plan Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date.

56

01:12241884.2

2.    **Effect of Withdrawal, Revocation,
or Non-Consummation.**

If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts, unexpired leases, or benefit plans effected by the Plan, any release, exculpation or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

Dated:  June 26, 2012

**BUFFETS RESTAURANTS HOLDINGS, INC.**

By: _____
Name: R. Michael Andrews, Jr.
Title:  Chief Executive Officer

**BUFFETS HOLDINGS, INC.**

By: _____
Name: R. Michael Andrews, Jr.
Title:  Chief Executive Officer

**BUFFETS, INC.**

By: _____
Name: R. Michael Andrews, Jr.
Title:  Chief Executive Officer

57

**HOMETOWN BUFFET, INC.**

By: _____
Name: R. Michael Andrews, Jr.
Title:   Chief Executive Officer

**OCB RESTAURANT COMPANY, LLC**

By: _____
Name: R. Michael Andrews, Jr.
Title:   Chief Manager

**OCB PURCHASING CO.**

By: _____
Name: R. Michael Andrews, Jr.
Title:   Chief Executive Officer

**BUFFETS LEASING COMPANY, LLC**

By: _____
Name: R. Michael Andrews, Jr.
Title:   Chief Manager

**RYAN'S RESTAURANT GROUP, INC.**

By: _____
Name: R. Michael Andrews, Jr.
Title:   Chief Executive Officer

58

**BUFFETS FRANCHISE HOLDINGS, LLC**

By: _____

Name: R. Michael Andrews, Jr.
Title: Chief Manager


**TAHOE JOE'S, INC.**

By: _____

Name: R. Michael Andrews, Jr.
Title: Chief Executive Officer


**HOMETOWN LEASING COMPANY, LLC**

By: _____

Name: R. Michael Andrews, Jr.
Title: Chief Manager


**OCB LEASING COMPANY, LLC**

By: _____

Name: R. Michael Andrews, Jr.
Title: Chief Manager


**RYAN'S RESTAURANT LEASING COMPANY, LLC**

By: _____

Name: R. Michael Andrews, Jr.
Title: Chief Manager

59

**FIRE MOUNTAIN RESTAURANTS, LLC**
By:  Ryan's Restaurant Group, Inc., Sole Member

By: _____

Name: R. Michael Andrews, Jr.
Title:   Chief Executive Officer


**TAHOE JOE'S LEASING COMPANY, LLC**

By: _____

Name: R. Michael Andrews, Jr.
Title:   Chief Manager


**FIRE MOUNTAIN LEASING COMPANY, LLC**

By: _____

Name: R. Michael Andrews, Jr.
Title:   Chief Manager

60

**EXHIBIT B**

01:12233545.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BUFFETS RESTAURANTS HOLDINGS, INC. *et al.*,[1] | ) Case No. 12-10237 (MFW) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |

**NOTICE OF (A) ENTRY OF ORDER CONFIRMING DEBTORS' AMENDED
JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE, AND (B) ADMINISTRATIVE CLAIMS BAR DATE**

TO: ALL KNOWN CREDITORS AND EQUITY INTEREST HOLDERS AND THOSE PARTIES REQUESTING NOTICE IN ACCORDANCE WITH BANKRUPTCY RULE 2002(i) AND LOCAL RULE 2002-1(b)

PLEASE TAKE NOTICE that on **June [_], 2012** (the "Confirmation Date"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered its Findings of Fact, Conclusions of Law, and Order Under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy Rules Confirming Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order"). Unless otherwise defined in this Notice, capitalized terms used herein shall have the meanings ascribed to them in the Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (including the exhibits thereto, and all documents and agreements executed pursuant thereto, and as modified from time-to-time, the "Plan").

PLEASE TAKE FURTHER NOTICE that pursuant to section 1141(a) of the Bankruptcy Code, the provisions of the Plan and the Confirmation Order shall bind (i) the Debtors and their estates, (ii) the Reorganized Debtors, (iii) all holders of Claims against and Equity Interests in the Debtors that arose before or were filed as of the Effective Date, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan or received or retained any property under the Plan, and (iv) each person acquiring property under the Plan.

PLEASE TAKE FURTHER NOTICE that any party-in-interest wishing to obtain a copy of the Confirmation Order may obtain such copy: (i) at chapter11.epiqsystems.com by clicking on "Buffets Restaurants Holdings, Inc.," or (ii) by contacting Dennis Mason; (302) 571-4748; dmason@ycst.com. Copies of the Confirmation Order may also be reviewed during regular business hours at the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801 or may be obtained at the Bankruptcy Court's website at www.deb.uscourts.gov, by following the directions for accessing the ECF system on such site.

**Administrative Claims Bar Date**

PLEASE TAKE FURTHER NOTICE that except as otherwise ordered by the Bankruptcy Court, all holders of Administrative Claims (except for (i) Fee Claims, (ii) Ordinary Course Administrative Claims, (iii) the post-petition claims of the First Lien Pre-Petition Administrative Agent under the First Lien Pre-Petition Secured Credit Facility, (iv) the post-petition claims of the DIP Administrative Agent under the DIP Credit Facility, (v) the fees and expenses of the professionals of the First Lien Pre-Petition Administrative Agent under the First Lien Pre-Petition Secured Credit Facility and the DIP Administrative Agent under the DIP Credit Facility, (vi) the Ad Hoc First Lien Committee Fee Claims, (vii) DIP Financing Claims, (viii) First Lien Pre-Petition Administrative Agent Indemnity Claims, and (ix) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code) not paid prior to the Confirmation Date shall submit requests for payment of such Administrative Claims in accordance with section 503 of the Bankruptcy Code

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Buffets Restaurants Holdings, Inc. (9569), Buffets Holdings, Inc. (4018), Buffets, Inc. (2294), HomeTown Buffet, Inc. (3002), OCB Purchasing Co. (7610), OCB Restaurant Company, LLC (7607), Buffets Franchise Holdings, LLC (8749), Buffets Leasing Company, LLC (8138), Ryan's Restaurant Group, Inc., (7895), Ryan's Restaurant Leasing Company, LLC (7405), HomeTown Leasing Company, LLC (8142), OCB Leasing Company, LLC (8147), Fire Mountain Restaurants, LLC (8003), Fire Mountain Leasing Company, LLC (7452), Tahoe Joe's, Inc. (7129) and Tahoe Joe's Leasing Company, LLC (8145). The address for all of the Debtors is 1020 Discovery Road, Suite 100, Eagan, MN 55121.

with the Bankruptcy Court on or before **July [ ], 2012** (the "Administrative Claims Bar Date") or forever be barred from doing so and from receiving payment on account thereof. The Reorganized Debtors shall have 120 days (or such longer period as may be allowed by order of the Court, which may be entered without notice or a hearing) following the Administrative Claims Bar Date to review and object to all Administrative Claims.

## Bar Date for Rejected Executory Contracts

PLEASE TAKE FURTHER NOTICE the Debtors shall serve notice of the rejection of any executory contract or unexpired lease pursuant to the Plan and the deadline for filing claims arising from or related to the rejection of such executory contracts and unexpired leases within one (1) business day of the effective date of rejection. Non-Debtor parties to executory contracts and unexpired leases that have been rejected by the Debtors pursuant to the Plan shall be permitted to file a proof of claim with regards to alleged damages resulting from such rejection until the date that is thirty (30) days after the effective date of such rejection.

PLEASE TAKE FURTHER NOTICE that all holders of Administrative Claims must timely file and serve such applications on the Debtors and all other parties at the addresses set forth in Article X.J of the Plan.

Dated:  Wilmington, Delaware                 BY ORDER OF THE BANKRUPTCY COURT
      June [ ], 2012                         Mary F. Walrath, United States Bankruptcy Judge

**Attorneys for the Debtors:**
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Jeffrey D. Saferstein
Philip A. Weintraub
Evan R. Zisholtz
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**EXHIBIT C**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BUFFETS RESTAURANTS HOLDINGS, INC. *et al.*,[1] | ) | Case No. 12-10237 (MFW) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

**NOTICE OF (A) OCCURRENCE OF THE EFFECTIVE DATE OF
THE PLAN AND (B) DEADLINE TO FILE FEE CLAIMS**

TO: ALL PROFESSIONALS RETAINED IN THE CHAPTER 11 CASES, THE UNITED STATES
TRUSTEE AND THOSE PARTIES REQUESTING NOTICE IN ACCORDANCE WITH BANKRUPTCY
RULE 2002(i) AND LOCAL RULE 2002-1(b)

PLEASE TAKE NOTICE that on **June [__], 2012** (the "Confirmation Date"), the United States
Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered its Findings of Fact,
Conclusions of Law, and Order Under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy
Rules Confirming Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code
(the "Confirmation Order"). Unless otherwise defined in this Notice, capitalized terms used herein shall have
the meanings ascribed to them in the Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the
Bankruptcy Code (including the exhibits thereto, and all documents and agreements executed pursuant thereto,
and as modified from time-to-time, the "Plan").

PLEASE TAKE FURTHER NOTICE that pursuant to section 1141(a) of the Bankruptcy Code, the
provisions of the Plan and the Confirmation Order shall bind (i) the Debtors and their estates, (ii) the
Reorganized Debtors, (iii) all holders of Claims against and Equity Interests in the Debtors that arose before or
were filed as of the Effective Date, whether or not impaired under the Plan and whether or not, if impaired,
such holders accepted the Plan or received or retained any property under the Plan, and (iv) each person
acquiring property under the Plan.

PLEASE TAKE FURTHER NOTICE that the Effective Date of the Plan was **[DATE], 2012**.

PLEASE TAKE FURTHER NOTICE that any party-in-interest wishing to obtain a copy of the
Confirmation Order may obtain such copy: (i) at chapter11.epiqsystems.com by clicking on "Buffets
Restaurants Holdings, Inc.," or (ii) by contacting Dennis Mason; (302) 571-4748; dmason@ycst.com. Copies
of the Confirmation Order may also be reviewed during regular business hours at the Bankruptcy Court, 824
Market Street, Wilmington, Delaware 19801 or may be obtained at the Bankruptcy Court's website at
www.deb.uscourts.gov, by following the directions for accessing the ECF system on such site.

**Fee Claims**

PLEASE TAKE FURTHER NOTICE that as provided in Article III.C of the Plan, all requests for
compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the
Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are
Buffets Restaurants Holdings, Inc. (9569), Buffets Holdings, Inc. (4018), Buffets, Inc. (2294), HomeTown
Buffet, Inc. (3002), OCB Purchasing Co. (7610), OCB Restaurant Company, LLC (7607), Buffets Franchise
Holdings, LLC (8749), Buffets Leasing Company, LLC (8138), Ryan's Restaurant Group, Inc., (7895), Ryan's
Restaurant Leasing Company, LLC (7405), HomeTown Leasing Company, LLC (8142), OCB Leasing
Company, LLC (8147), Fire Mountain Restaurants, LLC (8003), Fire Mountain Leasing Company, LLC
(7452), Tahoe Joe's, Inc. (7129) and Tahoe Joe's Leasing Company, LLC (8145). The address for all of the
Debtors is 1020 Discovery Road, Suite 100, Eagan, MN 55121.

Debtors, counsel to the Reorganized Debtors, the United States Trustee, and counsel to the Creditors Committee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than **[45 DAYS], 2012**. Unless such deadline is extended by agreement of the Reorganized Debtors, holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Fee Claims against the Debtors, the Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the requesting party no later than seventy-five (75) days (or such longer period as may be allowed by order of the Court) after the Effective Date.

Dated: Wilmington, Delaware                    BY ORDER OF THE BANKRUPTCY COURT
June ____, 2012                                Mary F. Walrath, United States Bankruptcy Judge

**Attorneys for the Debtors:**
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Jeffrey D. Saferstein
Philip A. Weintraub
Evan R. Zisholtz
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

01:12233545.1

**EXHIBIT D**

01:12233545.1

Case 12-10237-MFW   Doc 743-1   Filed 06/27/12   Page 72 of 77

| LANDLORD | LANDLORD C/O | STREET ADDRESS | CITY | STATE | ZIP CODE | DEBTOR ENTITY ASSUMING THE LEASE | UNDISPUTED CURE AMOUNT | DISPUTED CURE AMOUNT | NEW AMENDMENT | AGREEMENT TYPE | STORE NUMBER | STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AMHERST II VF L.L.C. | VORNADO REALTY TRUST | 210 ROUTE 4 EAST | PARAMUS | NJ | 07652 | OCB RESTAURANT COMPANY, LLC | $25,106.02 | $0.00 | | LEASE AGREEMENT | 0198 | 3048 SHERIDAN DRIVE | AMHERST | NY | 14226 |
| BELL PALM PLAZA L.P. | CHARLES DUNN REAL ESTATE SERVICES, INC. | 800 WEST SIXTH STREET, 6TH FLOOR | LOS ANGELES | CA | 90017 | HOMETOWN BUFFET, INC. | $20,896.00 | $7,990.57 | | LEASE AGREEMENT | 0767 | 6257 NORTH ATLANTIC AVENUE | BELL | CA | 90201 |
| BELLIS FAIR PARTNERS | GENERAL GROWTH PROPERTIES, INC. | ONE BELLIS FAIR PARKWAY | BELLINGHAM | WA | 98226 | OCB RESTAURANT COMPANY, LLC | $19,564.22 | $0.00 | | LEASE AGREEMENT | 0282 | 1 BELLIS FAIR PARKWAY #714 | BELLINGHAM | WA | 98226 |
| BERKSHIRE CROSSING SHOPPING CENTER, LLC | BRIXMOR PROPERTY GROUP, INC. | 131 DARTMOUTH STREET 6TH FLOOR | BOSTON | MA | 02116 | OCB RESTAURANT COMPANY, LLC | $10,668.69 | $0.00 | | LEASE AGREEMENT | 0215 | 555 HUBBARD AVENUE | PITTSFIELD | MA | 01201 |
| BG FLATS II - III, LLC | DEVELOPERS DIVERSIFIED REALTY | 3300 ENTERPRISE PARKWAY | BEACHWOOD | OH | 44122 | OCB RESTAURANT COMPANY, LLC | $16,066.17 | $3,414.80 | | LEASE AGREEMENT | 0237 | 821 COUNTY ROUTE 64 | ELMIRA | NY | 14903 |
| BRIXMOR SPE 1 LLC | BRIXMOR PROPERTY GROUP, INC. | 131 DARTMOUTH STREET, 6TH FLOOR | BOSTON | MA | 02116 | OCB RESTAURANT COMPANY, LLC | $20,786.05 | $0.00 | YES | LEASE AGREEMENT | 0091 | 101 COMMONS DRIVE | CHICAGO RIDGE | IL | 60415 |
| CHICO CROSSROADS, LP | KIMCO REALTY CORPORATION | 3333 NEW HYDE PARK ROAD, SUITE 100, PO BOX 5020 | NEW YORK | NY | 11042 | HOMETOWN BUFFET, INC. | $21,349.90 | $0.00 | | LEASE AGREEMENT | 0706 | 2021 WHITMAN AVENUE | CHICO | CA | 95928 |
| CITADEL CROSSING ASSOCIATES | NEWMARK MERRILL MOUNTAIN STATES | 2720 COUNCIL TREE AVENUE, SUITE 230 | FORT COLLINS | CO | 80525 | OCB RESTAURANT COMPANY, LLC | $9,078.85 | $0.00 | | LEASE AGREEMENT | 0126 | 751 NORTH ACADEMY BOULEVARD | COLORADO SPRINGS | CO | 80909 |
| CITADEL CROSSING ASSOCIATES | NEWMARK MERRILL MOUNTAIN STATES | 2720 COUNCIL TREE AVENUE, SUITE 230 | FORT COLLINS | CO | 80525 | OCB RESTAURANT COMPANY, LLC | $900.00 | $0.00 | | SIGN AGREEMENT | 0126-SIGN | 751 NORTH ACADEMY BOULEVARD | COLORADO SPRINGS | CO | 80909 |
| COLUMBIA MALL PARTNERSHIP | SIMON PROPERTY GROUP | 225 WEST WASHINGTON STREET | INDIANAPOLIS | IN | 46204 | OCB RESTAURANT COMPANY, LLC | $36,835.73 | $0.00 | | LEASE AGREEMENT | 0245 | 1321 N COLUMBIA CENTER BLVD | KENNEWICK | WA | 99336 |
| COLUMBIA RETAIL DST | INLAND COMMERCIAL PROPERTY MANAGEMENT, INC. | 2901 BUTTERFIELD ROAD | OAK BROOK | IL | 60523 | FIRE MOUNTAIN RESTAURANTS, LLC | $21,675.00 | $1,400.00 | YES | LEASE AGREEMENT | 2188 | 10052 TWO NOTCH RD | COLUMBIA | SC | 29223 |
| COPPERWOOD SQUARE, LLC | RIVERROCK REAL ESTATE GROUP, INC | 7050 SUNRISE BOULEVARD | CITRUS HEIGHTS | CA | 95610 | HOMETOWN BUFFET, INC. | $21,891.16 | $4,063.28 | YES | LEASE AGREEMENT | 0717 | 7028 SUNRISE BOULEVARD | CITRUS HEIGHTS | CA | 95610 |
| DARTMOUTH MARKETPLACE ASSOCIATES, L.L.C | PEGASUS LANDING CORPORATION | 1800 LAKE PARK DRIVE SUITE 103 | SMYRNA | GA | 30080 | OCB RESTAURANT COMPANY, LLC | $26,197.66 | $0.00 | YES | LEASE AGREEMENT | 0137 | 424 STATE ROAD, ROUTE 6 | NORTH DARTMOUTH | MA | 02747 |
| DDRM HIGHLAND GROVE, LLC | DEVELOPERS DIVERSIFIED REALTY | 3300 ENTERPRISE PARKWAY | BEACHWOOD | OH | 44122 | OCB RESTAURANT COMPANY, LLC | $15,857.73 | $2,724.79 | | LEASE AGREEMENT | 0251 | 10445 INDIANAPOLIS BOULEVARD | HIGHLAND | IN | 46322 |
| DEL AMO FASHION CENTER OPERATING CO, LLC | SIMON PROPERTY GROUP | 225 WEST WASHINGTON STREET | INDIANAPOLIS | IN | 46204 | OCB RESTAURANT COMPANY, LLC | $21,501.16 | $0.00 | | LEASE AGREEMENT | 0337 | 3520 CARSON STREET | TORRANCE | CA | 90503 |
| DEL AMO FASHION CENTER OPERATING CO, LLC | SIMON PROPERTY GROUP | 225 WEST WASHINGTON STREET | INDIANAPOLIS | IN | 46204 | OCB RESTAURANT COMPANY, LLC | See Store 337 | $0.00 | | SATELLITE AGREEMENT | 0337-SAT | 3520 CARSON STREET | TORRANCE | CA | 90503 |
| DONAHUE SCHRIBER REALTY GROUP L.P. | | 200 E. BAKER STREET, SUITE 100 | COSTA MESA | CA | 92626 | HOMETOWN BUFFET, INC. | $16,158.33 | $2,203.97 | | LEASE AGREEMENT | 0783 | 9089 BRUCEVILLE ROAD | ELK GROVE | CA | 95758 |
| DS MARKETPLACE BAKERSFIELD, LLC | DONAHUE SCHRIBER | 5082 N. PALM AVENUE, SUITE A | FRESNO | CA | 93704 | TAHOE JOE'S, INC. | $9,848.91 | $1,932.66 | | LEASE AGREEMENT | 0823 | 9000 MING AVENUE | BAKERSFIELD | CA | 93311 |
| F.I. MENTOR I, LLC | FIRST INTERSTATE PROPERTIES LTD | 25333 CEDAR ROAD, SUITE 300 | LYNDHURST | OH | 44124 | OCB RESTAURANT COMPANY, LLC | $22,013.44 | $0.00 | | LEASE AGREEMENT | 0775 | 9130 MENTOR AVENUE | MENTOR | OH | 44060 |
| FRANK MISSION MARKETPLACE LLC | NEWMARK MERRILL COMPANIES | 5850 CANOGA AVENUE, SUITE 650 | WOODLAND HILLS | CA | 91367 | HOMETOWN BUFFET, INC. | $24,073.80 | $0.00 | | LEASE AGREEMENT | 0735 | 491 COLLEGE BOULEVARD | OCEANSIDE | CA | 92057 |
| GGP-MAINE MALL L.L.C. | GENERAL GROWTH PROPERTIES, INC. | 110 NORTH WACKER DRIVE | CHICAGO | IL | 60606 | OCB RESTAURANT COMPANY, LLC | $20,371.66 | $0.00 | | LEASE AGREEMENT | 0204 | 517 MAINE MALL | SOUTH PORTLAND | ME | 04106 |
| GRANITE VILLAGE WEST L.P. | BLACKROCK REALTY ADVISORS, INC. | 350 S. GRAND AVENUE, SUITE 3750 | LOS ANGELES | CA | 90071 | HOMETOWN BUFFET, INC. | $16,839.00 | $0.00 | | LEASE AGREEMENT | 0742 | 3041 WEST FLORIDA AVENUE | HEMET | CA | 92545 |
| GREENFIELD, L.P. | BONNIE MANAGEMENT CORP | 8430 W. BRYN MAWR AVENUE, SUITE 850 | CHICAGO | IL | 60631 | OCB RESTAURANT COMPANY, LLC | $37,303.81 | $0.00 | | LEASE AGREEMENT | 0016 | 4902 SOUTH 74TH STREET | GREENFIELD | WI | 53220 |
| INLAND AMERICAN CHICAGO LINCOLN, LLC | INLAND AMERICAN RETAIL MANAGEMENT LLC | 2901 BUTTERFIELD ROAD | OAK BROOK | IL | 60523 | OCB RESTAURANT COMPANY, LLC | $25,421.22 | $1,400.00 | | LEASE AGREEMENT | 0095 | 6125 NORTH LINCOLN AVENUE | CHICAGO | IL | 60659 |
| INLAND COMMERCIAL PROPERTY MANAGEMENT, INC. | | 2901 BUTTERFIELD ROAD | OAKBROOK | IL | 60523 | OCB RESTAURANT COMPANY, LLC | $13,022.18 | $1,400.00 | | LEASE AGREEMENT | 0299 | 2900 DEERFIELD DRIVE | JANESVILLE | WI | 53545 |
| INLAND COMMERCIAL PROPERTY MGMT. | | 2901 BUTTERFIELD ROAD | OAK BROOK | IL | 60523 | OCB RESTAURANT COMPANY, LLC | $0.00 | $1,400.00 | YES | LEASE AGREEMENT | 0033 | 16060 SOUTH HARLEM AVENUE | TINLEY PARK | IL | 60477 |
| INLAND RETAIL PROPERTIES | INLAND COMMERCIAL PROPERTY MANAGEMENT, INC. | 4575 PAYSPHERE CIRCLE | CHICAGO | IL | 60674 | OCB RESTAURANT COMPANY, LLC | $44,905.56 | $1,400.00 | | LEASE AGREEMENT | 0102 | 701 NORTH MILWAUKEE AVENUE | VERNON HILLS | IL | 60061 |
| INLAND SOUTHWEST MGT C/O THE GATEWAY | | 2901 BUTTERFIELD ROAD | OAK BROOKE | IL | 60523 | OCB RESTAURANT COMPANY, LLC | $58,987.85 | $1,400.00 | | LEASE AGREEMENT | 0110 | 5220 WADSWORTH BYPASS | ARVADA | CO | 80002 |
| INLAND WESTERN LAKEWOOD, LLC | INLAND US MANAGEMENT, LLC | 2901 BUTTERFIELD ROAD | OAKBROOK | IL | 60523 | OCB RESTAURANT COMPANY, LLC | $40,112.61 | $1,400.00 | | LEASE AGREEMENT | 0305 | 5815 LAKEWOOD TOWNE CENTER BLVD SW | TACOMA | WA | 98499 |
| KCH PROPERTIES, INC. | KIMCO REALTY CORPORATION | 1954 GREENSPRING DRIVE, SUITE 330 | TIMONIUM | MD | 21093 | OCB RESTAURANT COMPANY, LLC | $9,080.82 | $0.00 | | LEASE AGREEMENT | 0162 | 9608 FORT MEADE ROAD | LAUREL | MD | 20707 |

| | | LANDLORD ADDRESS | | | | | | | | | | | RESTAURANT ADDRESS | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LANDLORD | LANDLORD C/O | STREET ADDRESS | CITY | STATE | ZIP CODE | DEBTOR ENTITY ASSUMING THE LEASE | UNDISPUTED CURE AMOUNT | DISPUTED CURE AMOUNT | NEW AMENDMENT | AGREEMENT TYPE | STORE NUMBER | STREET ADDRESS | CITY | STATE | ZIP CODE |
| KIMCO ENGLEWOOD 683, INC. | KIMCO REALTY CORPORATION | 3333 NEW HYDE PARK ROAD, SUITE 100 | NEW HYDE PARK | NY | 11042 | OCB RESTAURANT COMPANY, LLC | $12,784.17 | $0.00 | | LEASE | 0161 | 301 ENGLEWOOD PARKWAY | ENGLEWOOD | CO | 80110 |
| KIMCO REALTY CORPORATION | | 23 MAUCHLY, SUITE 100-104 | IRVINE | CA | 92618 | HOMETOWN BUFFET, INC. | $22,640.50 | $0.00 | | LEASE AGREEMENT | 0803 | 390 MCKINLEY AVENUE | CORONA | CA | 92879 |
| KIR COVINA, L.P. | KIMCO REALTY CORPORATION | 23 MAUCHLY, SUITE 100-104 | IRVINE | CA | 92616 | HOMETOWN BUFFET, INC. | $13,533.51 | $0.00 | | LEASE AGREEMENT | 0743 | 1318 NORTH AZUSA AVENUE | COVINA | CA | 91722 |
| KIR SMOKETOWN STATION L.P. | KIMCO REALTY CORPORATION | 1954 GREENSPRING DRIVE, SUITE 330 | TIMONIUM | MD | 21093 | OCB RESTAURANT COMPANY, LLC | $28,295.37 | $0.00 | | LEASE AGREEMENT | 0211 | 2942 PRINCE WILLIAM PARKWAY | WOODBRIDGE | VA | 22192 |
| LA HABRA ASSOCIATES LLC | DJM CAPITAL PARTNERS | 60 SOUTH MARKET STREET #1120 | SAN JOSE | CA | 95113 | HOMETOWN BUFFET, INC. | $19,914.60 | $0.00 | | LEASE AGREEMENT | 0732 | 1901 WEST IMPERIAL HIGHWAY | LA HABRA | CA | 90631 |
| LABRADOR GROUP, LLC | | PO BOX 130534 | CARLSBAD | CA | 92013 | HOMETOWN BUFFET, INC. | $0.00 | $14,769.50 | YES | LEASE AGREEMENT | 0771 | 525 SOUTH PERRYVILLE ROAD | ROCKFORD | IL | 61108 |
| MACERICH LAKEWOOD, LLC | MACERICH | PO BOX 2188 | SANTA MONICA | CA | 90406 | HOMETOWN BUFFET, INC. | $25,988.38 | $8,141.92 | | LEASE AGREEMENT | 0796 | 4700 CANDLEWOOD STREET | LAKEWOOD | CA | 90712 |
| MACERICH PROPERTY MGMT CO, LLC | MACERICH | 401 WILSHIRE BLVD., SUITE 700 | SANTA MONICA | CA | 90401 | OCB RESTAURANT COMPANY, LLC | $18,233.00 | $7,436.62 | | LEASE AGREEMENT | 0146 | 840 NORTHRIDGE MALL | SALINAS | CA | 93906 |
| MACERICH PROPERTY MGMT CO, LLC | MACERICH | 401 WILSHIRE BLVD., SUITE 700 | SANTA MONICA | CA | 90401 | OCB RESTAURANT COMPANY, LLC | See Store 146 | $0.00 | | SATELLITE AGREEMENT | 0146-SAT | 840 NORTHRIDGE MALL | SALINAS | CA | 93906 |
| MACERICH REAL ESTATE COMPANY | MACERICH | 170 JENNIFER ROAD, SUITE 330 | ANNAPOLIS | MD | 21401 | OCB RESTAURANT COMPANY, LLC | $35,920.31 | $0.00 | | LEASE AGREEMENT | 0160 | 81-A FOREST DRIVE | ANNAPOLIS | MD | 21401 |
| Michael T. LaBarbera, Trustee of the Michael and Jennifer LaBarbera Revocable Trust dated December 16, 2008, as to an undivided 30.50% interest; Salvatore P. LaBarbera, Trustee of the Salvatore P. LaBarbera Revocable Trust dated February 11, 2011, as to an undivided 20.00% interest; Marie Hedges, an unmarried woman, as to an undivided 16.20% interest; Facchino Properties Inc., a California corporation, as to an undivided 17.70% interest; Robert Bernard Facchino and Valerie Ruby Facchino, Trustees of The Robert Bernard Facchino Family Trust dated October 22, 2009, as to an undivided 4.40% interest; Robert Bernard Facchino, II as Trustee of The Robert Bernard Facchino, II Separate Property Revocable Trust dated September 30, | TERRACOMMERCIAL REAL ESTATE CORPORATION | 873 BLOSSOM HILL ROAD | SAN JOSE | CA | 95123 | HOMETOWN BUFFET, INC. | $14,517.47 | $0.00 | | LEASE AGREEMENT | 0734 | 3065 MERIDIAN AVENUE | SAN JOSE | CA | 95124 |

LANDLORD ADDRESS        RESTAURANT ADDRESS

| LANDLORD | LANDLORD C/O | STREET ADDRESS | CITY | STATE | ZIP CODE | DEBTOR ENTITY ASSUMING THE LEASE | UNDISPUTED CURE AMOUNT | DISPUTED CURE AMOUNT | NEW AMENDMENT | AGREEMENT TYPE | STORE NUMBER | STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NMC ANAHEIM LLC, RLM FAMILY PROPERTIES LLC & ANAHEIM ISLAND PARTNERS LLC | NEWMARK MERRILL COMPANIES | 5850 CANOGA AVENUE, SUITE 650 | WOODLAND HILLS | CA | 91367 | HOMETOWN BUFFET, INC. | $18,285.49 | $0.00 | YES | LEASE AGREEMENT | 0730 | 2190 EAST LINCOLN | EAST ANAHEIM | CA | 92806 |
| NMC SANTA ANA, LLC | NEWMARK MERRILL COMPANIES | 5850 CANOGA AVENUE, SUITE 650 | WOODLAND HILLS | CA | 91367 | OCB RESTAURANT COMPANY, LLC | $19,766.89 | $0.00 | YES | LEASE AGREEMENT | 0285 | 2321 SOUTH BRISTOL | SANTA ANA | CA | 92704 |
| NMC STRATFORD, LLC | NEWMARK MERRILL COMPANIES | 142 SOUTH GARY AVENUE #101 | BLOOMINGDALE | IL | 60108 | HOMETOWN BUFFET, INC. | $18,373.49 | $0.00 | YES | LEASE AGREEMENT | 0780 | 154 SOUTH GARY AVENUE | BLOOMINGDALE | IL | 60108 |
| NMMS TWIN PEAKS, LLC | | 5850 CANOGA AVENUE | WOODLAND HILLS | CA | 91367 | OCB RESTAURANT COMPANY, LLC | $9,947.78 | $0.00 | YES | LEASE AGREEMENT | 0151 | 1250 SOUTH HOVER STREET, BUILDING 1 | LONGMONT | CO | 80501 |
| NORMAN C. JACK AS TRUSTEE | | 2870 BLOOMFIELD ROAD | SEBASTOPOL | CA | 95473 | OCB RESTAURANT COMPANY, LLC | $0.00 | $0.00 | YES | LEASE AGREEMENT | 0231 | 165 SLATER STREET | MANCHESTER | CT | 06040 |
| POINSETT, LLC | COMMUNITY BANK OF RAYMORE | 927 MILITARY | BAXTER SPRINGS | KS | 66713 | FIRE MOUNTAIN RESTAURANTS, LLC | $0.00 | $0.00 | YES | LEASE AGREEMENT | 2126 | 1501 WEST POINSETT | GREER | SC | 29650 |
| PRICE TENNESSEE PROPERTIES, L.P. | KIMCO REALTY CORPORATION | 3333 NEW HYDE PARK ROAD, SUITE 100 | NEW HYDE PARK | NY | 11042 | OCB RESTAURANT COMPANY, LLC | $14,226.50 | $0.00 | | LEASE AGREEMENT | 0083 | 2151 GALLATIN PIKE NORTH | MADISON | TN | 37115 |
| PRU/DESERT CROSSING 1, LLC | DESERT CROSSINGS SHOPPING CENTER C/O UCR ASSET SERVICES | 7001 PRESTON ROAD SUITE 215 | DALLAS | TX | 75205 | OCB RESTAURANT COMPANY, LLC | $20,090.02 | $8,116.33 | YES | LEASE AGREEMENT | 0226 | 72-513C HIGHWAY 111 | PALM DESERT | CA | 92260 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $10,416.67 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2108 | 2367 DAVE LYLE BLVD | ROCK HILL | SC | 29731 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $18,729.98 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2112 | 3034 PEACH ORCHARD BLVD. | AUGUSTA | GA | 30906 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $18,591.33 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2130 | 5338 BARDSTOWN RD | LOUISVILLE | KY | 40291 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $28,667.94 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2135 | 1808 UNIVERSITY DRIVE | HUNTSVILLE | AL | 35801 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $16,723.40 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2161 | 2227 Marion Mount Gilead Rd | MARION | OH | 43302 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $18,599.09 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2195 | 230 COLLINS RD | CEDAR RAPIDS | IA | 52402 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $11,099.90 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2212 | 34615 WARREN RD. | WESTLAND | MI | 48185 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $28,760.07 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2214 | 3024 N Macarthur Dr | ALEXANDRIA | LA | 71303 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | RYAN'S RESTAURANT GROUP, INC. | $21,584.24 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2218 | 10810 W. 75TH ST. | SHAWNEE | KS | 66214 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $19,015.73 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2235 | 1900 N.W. 86TH ST. | CLIVE | IA | 50325 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $22,881.16 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2254 | 1748 S.W. RAILROAD AVE | HAMMOND | LA | 70403 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $19,760.73 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2256 | 730 ELMWOOD RD. | LANSING | MI | 48917 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $14,016.86 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2267 | 730 Jake Alexander Blvd S | SALISBURY | NC | 28147 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $8,333.33 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2293 | 1202 NORTH MAIN ST. | SUFFOLK | VA | 23434 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $16,284.61 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2304 | 1201 HWY. 45 NORTH | COLUMBUS | MS | 39705 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $42,236.75 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2309 | 917 VALLEY CREEK DR. | FARMINGTON | MO | 63640 |

**EXHIBIT A**

**Leases to Be Assumed**

| LANDLORD | LANDLORD C/O | LANDLORD ADDRESS STREET ADDRESS | CITY | STATE | ZIP CODE | DEBTOR ENTITY ASSUMING THE LEASE | UNDISPUTED CURE AMOUNT | DISPUTED CURE AMOUNT | NEW AMENDMENT | AGREEMENT TYPE | STORE NUMBER | RESTAURANT ADDRESS STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $21,731.59 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2318 | 4302 N. BELT HWY | ST. JOSEPH | MO | 64506 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $52,700.39 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2320 | 6082 U S Highway 98 | HATTIESBURG | MS | 39402 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $16,865.47 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2321 | 130 VANTAGE DRIVE | CAPE GIRARDEAU | MO | 63701 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $18,840.77 | $2,000.00 | | LAND AND BUILDING LEASE | 2328 | 1101 N. SERVICE ROAD E. | RUSTON | LA | 71270 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $19,626.34 | $2,000.00 | | LAND AND BUILDING LEASE | 2331 | 207 SOUTH FRONTAGE ROAD | MERIDIAN | MS | 39301 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $17,352.10 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2333 | 5601 S. U.S. HIGHWAY 41 | TERRE HAUTE | IN | 47802 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $12,024.94 | $2,000.00 | | LAND AND BUILDING LEASE | 2334 | 3743 BURBANK ROAD | WOOSTER | OH | 44691 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $10,416.67 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2340 | 1500 Julian R Allsbrook Hwy | ROANOKE RAPIDS | NC | 27870 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $17,508.42 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2347 | 929 S Westwood Blvd | POPLAR BLUFF | MO | 63901 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $11,002.17 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2355 | 1918 W. FOXWOOD DRIVE | RAYMORE | MO | 64083 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $19,119.61 | $2,000.00 | | LAND AND BUILDING LEASE | 2356 | 535 COMMERCE DRIVE | BLUEFIELD | VA | 24605 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $6,250.00 | $2,000.00 | | LAND AND BUILDING LEASE | 2358 | 1485 COSHOCTON AVE. | MT. VERNON | OH | 43050 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $19,021.39 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2373 | 609 BOLL WEEVIL CIRCLE | ENTERPRISE | AL | 36330 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $38,076.97 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2380 | 2645 E ANDREW JOHNSON HWY | GREENEVILLE | TN | 37745 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $20,673.47 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2390 | 2019 COLBY TAYLOR ROAD | RICHMOND | KY | 40475 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $19,458.55 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2393 | 1238 NORTH 12TH STREET | MIDDLESBORO | KY | 40965 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $25,728.93 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2402 | 3832 MONROE HIGHWAY | PINEVILLE | LA | 71360 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $35,578.30 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2404 | 4131 FT. CAMPBELL BLVD. | HOPKINSVILLE | KY | 42240 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $20,811.68 | $2,000.00 | | LAND AND BUILDING LEASE | 2408 | 374 WALMART PLAZA | SYLVA | NC | 28779 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $18,412.62 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2412 | 1824 GLENN BLVD. | FORT PAYNE | AL | 35968 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $21,648.85 | $2,000.00 | | LAND AND BUILDING LEASE | 2419 | 2330 MEMORIAL DRIVE | WAYCROSS | GA | 31501 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $19,735.48 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2420 | 115 RYANS DRIVE | FOREST CITY | NC | 28043 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $18,910.65 | $2,000.00 | | LAND AND BUILDING LEASE | 2425 | 2810 EMERSON DRIVE | ELKHART | IN | 46514 |

# EXHIBIT A

## Leases to Be Assumed

LANDLORD ADDRESS      RESTAURANT ADDRESS

| LANDLORD | LANDLORD C/O | STREET ADDRESS | CITY | STATE | ZIP CODE | DEBTOR ENTITY ASSUMING THE LEASE | UNDISPUTED CURE AMOUNT | DISPUTED CURE AMOUNT | NEW AMENDMENT | AGREEMENT TYPE | STORE NUMBER | STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $48,440.01 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2428 | 331 NORTH CREEK DRIVE | FESTUS | MO | 63028 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $8,333.33 | $2,000.00 | | LAND AND BUILDING LEASE | 2430 | 801 WALMART DRIVE | MURRAY | KY | 42071 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $20,961.42 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2434 | 806 US Highway 80 E | STATESBORO | GA | 30458 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $19,022.56 | $2,000.00 | | LAND AND BUILDING LEASE | 2439 | 4461 S. FRANKLIN STREET | MICHIGAN CITY | IN | 46360 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $19,614.41 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2440 | 2210 HARPER ROAD | CORINTH | MS | 38834 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $18,643.07 | $2,000.00 | | LAND AND BUILDING LEASE | 2441 | 5309 MILAN ROAD | SANDUSKY | OH | 44870 |
| REALTY INCOME CORPORATION | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $40,396.87 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2448 | 225 ST. ROBERT BLVD. | ST. ROBERT | MO | 65584 |
| REALTY INCOME ILLINOIS PROPERTIES 4, LLC | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | RYAN'S RESTAURANT GROUP, INC. | $18,803.07 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2281 | 2706 WALTON WAY | MARION | IL | 62959 |
| REALTY INCOME ILLINOIS PROPERTIES 4, LLC | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | RYAN'S RESTAURANT GROUP, INC. | $12,423.49 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2287 | 1004 W. ANTHONY DRIVE | CHAMPAIGN | IL | 61821 |
| REALTY INCOME ILLINOIS PROPERTIES 4, LLC | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | RYAN'S RESTAURANT GROUP, INC. | $17,718.78 | $2,000.00 | | LAND AND BUILDING LEASE | 2345 | 1102 AVE. OF MID AMERICA | EFFINGHAM | IL | 62401 |
| REALTY INCOME ILLINOIS PROPERTIES 4, LLC | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | RYAN'S RESTAURANT GROUP, INC. | $17,662.43 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2391 | 3710 39th Avenue Drive | MOLINE | IL | 61265 |
| REALTY INCOME ILLINOIS PROPERTIES 4, LLC | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | RYAN'S RESTAURANT GROUP, INC. | $19,979.11 | $2,000.00 | | LAND AND BUILDING LEASE | 2436 | 4615 BROADWAY | MT VERNON | IL | 62864 |
| REALTY INCOME TEXAS PROPERTIES 1, LLC | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $8,333.33 | $2,000.00 | | LAND AND BUILDING LEASE | 2237 | 7211 HWY. 6 SOUTH | HOUSTON | TX | 77083 |
| REALTY INCOME TEXAS PROPERTIES 1, LLC | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $27,889.69 | $2,000.00 | YES | LAND AND BUILDING LEASE | 2292 | 301 EAST LOOP 281 | LONGVIEW | TX | 75605 |
| REALTY INCOME TEXAS PROPERTIES 1, LLC | REALTY INCOME CORPORATION | 600 La Terraza Blvd | Escondido | CA | 92025 | FIRE MOUNTAIN RESTAURANTS, LLC | $23,441.74 | $2,000.00 | | LAND AND BUILDING LEASE | 2474 | 1400 US HWY 77 NORTH | WAXAHACHIE | TX | 75165 |
| ROUSE PROPERTIES, INC. | GENERAL COUNSEL | 1114 AVENUE OF THE AMERICAS, SUITE 2800 | NEW YORK | NY | 10036-7703 | HOMETOWN BUFFET, INC. | $25,043.57 | $0.00 | | LEASE AGREEMENT | 0746 | 3000 GATEWAY STREET | SPRINGFIELD | OR | 97477 |
| SIMON PROPERTY GROUP, L.P. | SIMON PROPERTY GROUP | 225 WEST WASHINGTON STREET | INDIANAPOLIS | IN | 46204 | BUFFETS, INC. | $48,931.85 | $0.00 | | LEASE AGREEMENT | 0010 | 1600 MILLER TRUNK HIGHWAY | DULUTH | MN | 55811 |
| SIMON PROPERTY GROUP, L.P. | SIMON PROPERTY GROUP | 225 WEST WASHINGTON STREET | INDIANAPOLIS | IN | 46204 | BUFFETS, INC. | See Store 10 | $0.00 | | TRASH AGREEMENT | 0010-TRSH | 1600 MILLER TRUNK HIGHWAY | DULUTH | MN | 55811 |
| SOUTH BAY SPE, LLC | CAL-AMERICAN CORPORATION | 1109 WESTWOOD BLVD | LOS ANGELES | CA | 90024 | HOMETOWN BUFFET, INC. | $15,209.00 | $0.00 | | LEASE AGREEMENT | 0714 | 1135 HIGHLAND AVENUE | NATIONAL CITY | CA | 91950 |
| SOUTHLAND MALL LP | GENERAL GROWTH MANAGEMENT INC. | 110 NORTH WACKER DRIVE | CHICAGO | IL | 60606 | OCB RESTAURANT COMPANY, LLC | $17,641.60 | $0.00 | | LEASE AGREEMENT | 0339 | 704 SOUTHLAND MALL | HAYWARD | CA | 94545 |
| STOTHERT PROPERTIES, LLC | | 7 ASH MEADOWS | Washington Tyne & Wear | UK | NE38 9HN | FIRE MOUNTAIN RESTAURANTS, LLC | $0.00 | $0.00 | YES | LEASE AGREEMENT | 2382 | 5101 LAPALCO BOULEVARD | MARRERO | LA | 70072 |
| STRS OHIO CA REAL ESTATE INVESTMENTS II, LLC | CB RICHARD ELLIS | 9536 WILSHIRE BLVD., SUITE 210 | BEVERLY HILLS | CA | 90212 | OCB RESTAURANT COMPANY, LLC | $52,712.38 | $4,000.00 | | LEASE AGREEMENT | 0252 | 8629 SOUTH SEPULVEDA BOULEVARD | WESTCHESTER | CA | 90045 |
| SUMMIT TOWNE CENTRE INC. | BALDWIN BROTHERS | 2540 VILLAGE COMMON DRIVE | ERIE | PA | 16506 | OCB RESTAURANT COMPANY, LLC | $28,896.71 | $0.00 | | LEASE AGREEMENT | 0111 | 7200 PEACH STREET | ERIE | PA | 16509 |
| SUMMIT TOWNE CENTRE INC. | BALDWIN BROTHERS | 2540 VILLAGE COMMON DRIVE | ERIE | PA | 16506 | OCB RESTAURANT COMPANY, LLC | See Store 111 | $0.00 | | SIGN AGREEMENT | 0111-SIGN | 7200 PEACH STREET | ERIE | PA | 16509 |
| TRACY MALL PARTNERS, LP | ROUSE PROPERTIES, INC. | 1114 AVENUE OF THE AMERICAS, SUITE 2800 | NEW YORK | NY | 10036-7703 | HOMETOWN BUFFET, INC. | $750.00 | $0.00 | YES | LEASE AGREEMENT | 0760 | 3200 NAGLEE ROAD #600 | TRACY | CA | 95376 |
| TRACY MALL PARTNERS, LP | ROUSE PROPERTIES, INC. | 1114 AVENUE OF THE AMERICAS, SUITE 2800 | NEW YORK | NY | 10036-7703 | HOMETOWN BUFFET, INC. | See Store 760 | See Store 760 | | SATELLITE AGREEMENT | 0760-SAT | 3200 NAGLEE ROAD #600 | TRACY | CA | 95376 |
| WATERTOWN MALL ASSOCIATES, LP | | 550 ARSENAL STREET | WATERTOWN | MA | 02172 | OCB RESTAURANT COMPANY, LLC | $32,262.76 | $0.00 | | LEASE AGREEMENT | 0264 | 550 ARSENAL STREET | WATERTOWN | MA | 02472 |

| LANDLORD | LANDLORD C/O | STREET ADDRESS | CITY | STATE | ZIP CODE | DEBTOR ENTITY ASSUMING THE LEASE | UNDISPUTED CURE AMOUNT | DISPUTED CURE AMOUNT | NEW AMENDMENT | AGREEMENT TYPE | STORE NUMBER | STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WATERTOWN MALL MGMT. OFFICE | | 550 ARSENAL STREET | WATERTOWN | MA | 02172 | OCB RESTAURANT COMPANY, LLC | See Store 264 | $0.00 | | SATELLITE AGREEMENT | 0264-SAT | 550 ARSENAL STREET | WATERTOWN | MA | 02472 |
| WCP SOUTHGATE PLAZA, LLC | NEWMARK MERRILL COMPANIES | 5850 CANOGA AVENUE, SUITE 650 | WOODLAND HILLS | CA | 91367 | OCB RESTAURANT COMPANY, LLC | $5,770.46 | $0.00 | | LEASE AGREEMENT | 0242 | 4300 FLORIN ROAD | SACRAMENTO | CA | 95823 |
| WESTLAND SOUTH SHORE MALL L.P. | WESTFIELD SOUTH SHORE | 1701 SUNRISE HIGHWAY | BAY SHORE | NY | 11706 | OCB RESTAURANT COMPANY, LLC | $18,030.00 | $0.00 | | LEASE AGREEMENT | 0293 | 1701 SUNRISE HIGHWAY | BAY SHORE | NY | 11706 |
| WHITEMARK ASSOC. & PA REAL ESTATE INVESTMENT TRUST | SIMON PROPERTY GROUP | 225 WEST WASHINGTON STREET | INDIANAPOLIS | IN | 46204 | OCB RESTAURANT COMPANY, LLC | $28,830.12 | $0.00 | | LEASE AGREEMENT | 0214 | 1245 WHITEHALL MALL | WHITEHALL | PA | 18052 |
| WP EAST END ASSOCIATES, L.P. | WP REALTY, INC. | 940 HAVERFORD ROAD | BRYN MAWR | PA | 19010 | OCB RESTAURANT COMPANY, LLC | $13,218.78 | $0.00 | | LEASE AGREEMENT | 0162 | 26 EAST END CENTER | WILKES-BARRE | PA | 18702 |
| WRI GOLDEN STATE, LLC | WEINGARTEN REALTY MANAGEMENT COMPANY | PO BOX 924133 | HOUSTON | TX | 77292 | HOMETOWN BUFFET, INC. | $1,476.24 | $3,328.56 | | LEASE AGREEMENT | 0715 | 1380 CHURN CREEK ROAD | REDDING | CA | 96002 |
| WRI GREENHOUSE, LP | | PO BOX 924133 | HOUSTON | TX | 77292 | HOMETOWN BUFFET, INC. | $15,280.23 | $2,500.00 | | LEASE AGREEMENT | 0740 | 212 GREENHOUSE MARKETPLACE | SAN LEANDRO | CA | 94579 |
| WRI-URS CLACKAMAS, LLC | WEINGARTEN REALTY INVESTORS | PO BOX 924133 | HOUSTON | TX | 77292 | OCB RESTAURANT COMPANY, LLC | $32,471.50 | $2,500.00 | | LEASE AGREEMENT | 0302 | 11356 SE 82ND AVENUE | PORTLAND | OR | 97266 |
| CENTERCAP ASSOCIATES, LLC | | 105 FOULK ROAD | WILMINGTON | DE | 19803 | OCB RESTAURANT COMPANY, LLC | $1,576.28 | $0.00 | | GROUND LEASE | 0794-GRD | 1325 NEW CHURCHMAN ROAD | NEWARK | DE | 19713 |
| CRI EASTON SQUARE, LLC | CASTO | 191 W. NATIONWIDE BLVD SUITE 200 | COLUMBUS | OH | 43215 | OCB RESTAURANT COMPANY, LLC | $0.00 | $0.00 | | GROUND LEASE | 0777-GRD | 3874 MORSE ROAD | COLUMBUS | OH | 43219 |
| FR TOWER SHOPPES, LLC | FEDERAL REALTY INVESTMENT TRUST | 1626 EAST JEFFERSON STREET | ROCKVILLE | MD | 20852 | OCB RESTAURANT COMPANY, LLC | $750.00 | $0.00 | | GROUND LEASE | 0294-GRD | 2310 SOUTH UNIVERSITY DRIVE | DAVIE | FL | 33324 |
| VESTAR ARIZONA XXVI, LLC | VESTAR DEVELOPMENT CO | 2425 EAST CAMELBACK ROAD STE 750 | PHOENIX | AZ | 85016 | OCB RESTAURANT COMPANY, LLC | $11,994.55 | $0.00 | | GROUND LEASE | 0314-GRD | 1855 SOUTH STAPLEY DRIVE | MESA | AZ | 85204 |
| BIG DOLPHIN LLC | EDUARDO VALENCIA | 11930 VISTA DEL SOL #C | EL PASO | TX | 79936 | OCB RESTAURANT COMPANY, LLC | $0.00 | $37,550.95 | | GROUND LEASE | 0726-GRD | 9120 VISCOUNT BOULEVARD | EL PASO | TX | 79925 |
| COUNTRYSIDE PLAZA | BORELLI INVESTMENT COMPANY | 2051 JUNCTION AVENUE, SUITE 100 | SAN JOSE | CA | 95131 | OCB RESTAURANT COMPANY, LLC | $16,744.69 | $0.00 | | GROUND LEASE | 0298-GRD | 1665 COUNTRYSIDE DRIVE | TURLOCK | CA | 95382 |
| SPRUCE, LLC | COMMERCIAL MANAGEMENT SERVICES | 2037 WEST BULLARD, SUITE 348 | FRESNO | CA | 93711 | TAHOE JOE'S, INC. | $6,500.00 | $0.00 | | OFFICE LEASE | THJCorp | 1044 E. SPRUCE AVENUE SUITE 105 | FRESNO | CA | 93720 |
| WASHINGTON REAL ESTATE INVESTMENT TRUST | | 6110 Executive Blvd Suite 800 | Rockville | MD | 20852 | FIRE MOUNTAIN RESTAURANTS, LLC | $45,399.32 | 0 | | GROUND LEASE | 2426-GRD | 17830 GARLAND GROH BLVD. | HAGERSTOWN | MD | 21740 |